**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| JAMES DEREK MIZE and JONATHAN DANIEL GREGG, individually and on behalf of their minor child, S.M.-G., | : | |
| | : | |
| | : | |
| | : | |
| Plaintiffs, | : | |
| | : | Civ. No. 1:19-CV-03331-MLB |
| v. | : | |
| | : | |
| MICHAEL R. POMPEO, in his official capacity as Secretary of State, and THE U.S. DEPARTMENT OF STATE, | : | |
| | : | |
| | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM IN SUPPORT OF
<u>DEFENDANTS' MOTION TO DISMISS THE COMPLAINT</u>**

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

LEGAL BACKGROUND .....................................................................................1

   I.   Statutory Framework ................................................................2

   II.   Agency Interpretation .............................................................4

FACTUAL BACKGROUND ................................................................................7

LEGAL STANDARD...........................................................................................8

ANALYSIS...........................................................................................................9

   I.   Plaintiffs Fail To Allege A Plausible Equal Protection Claim. ............................9

   II.   Plaintiffs Fail To Allege A Plausible Due Process Claim. ...................................13

   III.   Plaintiffs Fail to State a Valid Administrative Procedure Act Claim. .................16

   IV.   Defendants Have Properly Interpreted § 1401 To Require A Biological Relationship And That Interpretation Compels The Conclusion That S.M.-G. Did Not Acquire Citizenship Automatically At Birth, Thereby Defeating Plaintiffs' § 1503 Claim. .....................................................................19

       A.   The Text And Context Of § 1401 Support The Department's Interpretation. ...................................................19

       B.   The Department's Interpretation Warrants *Skidmore* Deference. ............21

       C.   S.M.-G. Did Not Acquire U.S. Citizenship At Birth. ..............................25

CONCLUSION....................................................................................................25

# TABLE OF AUTHORITIES

**Cases**

*Alzokari v. Pompeo,*
    2019 WL 3805083 (E.D.N.Y. Aug. 13, 2019) ...................................................... 23

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ................................................................................... *passim*

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) .................................................................................. 8, 9, 10

*Bolling v. Sharpe,*
    347 U.S. 497 (1954) ............................................................................................ 9

*Bowen v. Massachusetts,*
    487 U.S. 879 (1988) ..................................................................................... 16, 18

*Browning v. Clinton,*
    292 F.3d 235 (D.C. Cir. 2002) ......................................................................... 16

*Buckner v. Fla. Habilitation Network, Inc.,*
    489 F.3d 1151 (11th Cir. 2007)......................................................................... 22

*Califano v. Yamasaki,*
    442 U.S. 682 (1979) ......................................................................................... 19

*Chavez v. Martinez,*
    538 U.S. 760 (2003) ......................................................................................... 14

*Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice,*
    846 F.3d 1235 (D.C. Cir. 2017) ....................................................................... 17

*Colaianni v. INS,*
    490 F.3d 185 (2d Cir. 2007)............................................................................. 20

*Collins v. City of Harker Heights,*
    503 U.S. 115 (1992) ......................................................................................... 14

*Comparelli v. Republica Bolivariana De Venezuela,*
    891 F.3d 1311 (11th Cir. 2018)........................................................................... 2

*Day v. Taylor*,
400 F.3d 1271 (11th Cir. 2005) .................................................................................. 9

*Doe v. Moore*,
410 F.3d 1337 (11th Cir. 2005) ......................................................................... 14, 15

*Dolan v. U.S. Postal Serv.*,
546 U.S. 481 (2006) ................................................................................................. 20

*Engquist v. Oregon Dept. of Agr.*,
553 U.S. 591 (2008) ................................................................................................. 13

*Federal Express Corp. v. Holowecki*,
552 U.S. 389 ............................................................................................................. 22

*Fiallo v. Bell*,
430 U.S. 787 (1977) ........................................................................................... 13, 23

*Gill v. Whitford*,
138 S.Ct. 1916 (2018) .............................................................................................. 19

*Heslop v. Attorney General of U.S.*,
594 F. App'x 580 (11th Cir. 2014) .......................................................................... 17

*Hinojosa v. Horn*,
896 F.3d 305 (5th Cir. 2018) ................................................................................... 17

*INS v. Pangilinan*,
486 U.S. 875 (1988) ................................................................................................. 18

*Jaen v. Sessions*,
899 F.3d 182 (2d Cir. 2018) .................................................................................... 20

*Kasten v. Saint-Gobain Performance Plastics Corp.*,
563 U.S. 1 (2011) ......................................................................................... 21, 22, 24

*Lujan v. Nat'l Wildlife Fed'n*,
497 U.S. 871 (1990) ................................................................................................. 19

*Madsen v. Women's Health Ctr., Inc.*,
512 U.S. 753 (1994) ................................................................................................. 19

*McDowell v. Shinseki,*
    23 Vet. App. 207 (2009) ........................................................................ 20

*McDowell v. Shinseki,*
    96 F. App'x 691 (Fed. Cir. 2010) ........................................................ 20

*Miller v. Albright,*
    523 U.S. 420 (1998) ................................................................ 2, 15, 21

*Nguyen v. INS,*
    533 U.S. 53 (2001) ........................................................................ 11, 17

*Papasan v. Allain,*
    478 U.S. 265 (1986) .............................................................................. 10

*Personnel Adm'r v. Feeney,*
    442 U.S. 256 (1979) .................................................................. 10, 11, 12

*Price v. Stevedoring Servs. of Am., Inc.,*
    697 F.3d 820 (9th Cir. 2012) ................................................................ 22

*Reno v. Flores,*
    507 U.S. 292 (1993) .............................................................................. 14

*Rogers v. Bellei,*
    401 U.S. 815 (1971) .......................................................................... 2, 15

*Sessions v. Morales-Santana,*
    132 S. Ct. 1678 (2017) ............................................................................ 5

*Skidmore v. Swift & Co.,*
    323 U.S. 134 (1944) .......................................................................... 21, 22

*Smith v. State of Ga.,*
    684 F.2d 729 (11th Cir. 1982) .............................................................. 10

*Tex. R. Co. v. United States,*
    632 F.2d 392 .......................................................................................... 23

*U.S. Army Corps of Eng'rs v. Hawkes Co., Inc.,*
    136 S. Ct. 1807 (2016) .......................................................................... 16

iv

*United States v. Castillo,*
   899 F.3d 1208 (11th Cir. 2018)...................................................................... 9

*United States v. Mead Corp.,*
   533 U.S. 218 (2001) ............................................................................ 21, 22, 23

*United States v. Windsor,*
   570 U.S. 744 (2013) ...................................................................................... 9

*Vacco v. Quill,*
   521 U.S. 793 (1997) ...................................................................................... 10

*Washington v. Glucksberg,*
   521 U.S. 702 (1997) ...................................................................................... 14

*Williams v. Pryor,*
   240 F.3d 944 (11th Cir. 2001)........................................................................ 14

*Zivotofsky ex rel. Zivotofsky v. Kerry,*
   135 S. Ct. 2076 (2015) ............................................................................... 5, 6

## **Statutes**

5 U.S.C. § 704...................................................................................... 1, 16, 17

5 U.S.C. § 706............................................................................................ 8

5 U.S.C. § 706(2)(A)..................................................................................... 18

8 U.S.C. § 1104(a) ....................................................................................... 4

8 U.S.C. § 1401 ..................................................................................... *passim*

8 U.S.C. § 1401(c) ................................................................................... 20, 25

8 U.S.C. § 1401(g) ............................................................................... 3, 15, 24

8 U.S.C. § 1409 .......................................................................................... 12

8 U.S.C. § 1421(d) ...................................................................................... 18

8 U.S.C. § 1431 .......................................................................................... 15

8 U.S.C. § 1503..................................................................................... *passim*

8 U.S.C. § 1503(a) .......................................................................... 17, 18

22 U.S.C. § 211a ................................................................................... 4

U.S. Const., amend. XIV, § 1 ........................................................... 2, 9

**<u>Regulations</u>**

22 C.F.R. § 50.7 ................................................................................... 4

22 C.F.R. § 51.40 ............................................................................... 12

**<u>Other Authorities</u>**

Department of State's Foregin Affairs Manual (FAM)....................... *passim*

INTRODUCTION

Plaintiffs James Derek Mize and Jonathan Daniel Gregg, individually and on behalf of their minor child, S.M.-G. (collectively, Plaintiffs), challenge decisions by the U.S. Embassy in London—acting under the authority of the Department of State and the Secretary of State—to decline to issue a Consular Report of Birth Abroad (CRBA) and a U.S. passport to S.M.-G. Plaintiffs claim Defendants' actions violated the equal protection and due process guarantees of the Fifth Amendment of the Constitution.  Plaintiffs also claim Defendants violated the Administrative Procedure Act (APA).  Finally, Plaintiffs seek a declaration of citizenship for S.M.-G. pursuant to the Immigration and Naturalization Act (INA), 8 U.S.C. § 1503.

The Court should dismiss Plaintiffs' claims because they fail as a matter of law. Plaintiffs fail to plead any allegations of intentional discrimination for the purposes of their equal protection claim.  Plaintiffs also fail to identify a fundamental right that has been infringed upon or establish that Defendants' actions fail rational basis review for the purposes of their due process claim.  Plaintiffs' APA claim should be dismissed because the APA's general grant of judicial review precludes review of final agency action for which there is an "other adequate remedy in a court."  5 U.S.C. § 704.  Congress has provided a specific, separate avenue for Plaintiffs to obtain judicial review of their claims that they have been denied "a right or privilege as a national of the United States," namely the provisions of 8 U.S.C. § 1503.  Plaintiffs have raised a claim seeking relief pursuant to 8 U.S.C. § 1503, but cannot succeed on this claim because the Department's interpretation of the applicable statute is appropriate and entitled to deference.  This interpretation compels the conclusion that S.M.-G. did not acquire U.S. citizenship automatically at birth.

For these reasons, as explained more fully below, the Court should dismiss the Complaint.

LEGAL BACKGROUND

I.    <u>Statutory Framework</u>

There are two "universally accepted" ways to establish citizenship which reflect genuine links between the country and the individual—*jus soli* and *jus sanguinis*.  *See Comparelli v. Republica Bolivariana De Venezuela*, 891 F.3d 1311, 1322 (11th Cir. 2018).  *Jus soli* means "right of land or ground—conferral of nationality based on birth within the national territory." Aleinikoff et al., *Immigration and Citizenship: Process and Policy* 15 (6th ed. 2008).  *Jus sanguinis* literally means "right of blood—the conferral of nationality based on descent, irrespective of the place of birth."  *Id.*

The Fourteenth Amendment provides that "[a]ll persons born … in the United States, and subject to the jurisdiction thereof, are citizens of the United States[.]"  U.S. Const. amend. XIV, § 1.  Since the Amendment's enactment, "the transmission of American citizenship from parent to child, *jus sanguinis*, has played a role secondary to that of the transmission of citizenship by birthplace, *jus soli*."  *Miller v. Albright*, 523 U.S. 420, 478 (1998) (Breyer, J., dissenting) (citing *Rogers v. Bellei*, 401 U.S. 815, 828 (1971)).  While a foreign-born child's acquisition of citizenship through a U.S. citizen parent may be referred to colloquially as "birthright citizenship," *see, e.g.*, Compl. at ¶¶ 33, 84, 99 ( ECF No. 1), "the [Supreme] Court has specifically recognized the power of Congress *not* to grant a United States citizen the right to transmit citizenship by descent."  *Rogers*, 401 U.S. at 830 (emphasis added); *see also Miller*, 523 U.S. at 424 (1998) ("Persons not born in the United States acquire citizenship by birth only as provided by Acts of Congress.").

2

The general rules for acquiring United States citizenship are set forth in 8 U.S.C. § 1401, where the INA sets out the "rules for determining who 'shall be nationals and citizens of the United States at birth' by establishing a range of residency and physical-presence requirements calibrated primarily to the parents' nationality and the child's place of birth." *Sessions v. Morales-Santana*, 132 S. Ct. 1678, 1686 (2017). Sections 1401(c) and 1401(g) provide requirements for U.S. citizenship relevant to the claims raised in this lawsuit. Section 1401(c) provides for the citizenship of "a person born outside of the United States and its outlying possessions of parents both of whom are citizens of the United States and one of whom has had a residence in the United States or one of its outlying possessions, prior to the birth of such person." Section 8 U.S.C. § 1401(g), provides for the citizenship of

A person born outside the geographical limits of the United States and its outlying possessions of parents one of whom is an alien, and the other a citizen of the United States who, prior to the birth of such person, was physically present in the United States or its outlying possessions for a period or periods totaling not less than five years, at least two of which were after attaining the age of fourteen years[.]

Section 1409(a), addresses specifically "children born out of wedlock." Section 1409(a) states that "[t]he provisions of " § 1401(c) and (g)

shall apply as of the date of birth to a person born out of wedlock if—

(1) a blood relationship between the person and the father is established by clear and convincing evidence,

(2) the father had the nationality of the United States at the time of the person's birth,

(3) the father (unless deceased) has agreed in writing to provide financial support for the person until the person reaches the age of 18 years, and

(4) while the person is under the age of 18 years—

(A) the person is legitimated under the law of the person's residence or domicile,

3

     (B)  the father acknowledges paternity of the person in writing under oath, or

     (C)  the paternity of the person is established by adjudication of a competent court.

For the purpose of determining citizenship, the Department applies § 1409 when there is no biological connection between *both* parents and the child for whom citizenship is sought, regardless of the parents' legal marital status, sex, or sexual orientation. 8 FAM 304.1-2.  By incorporating the physical-presence requirements of § 1401 by reference, § 1409 allows a U.S. citizen father to transmit U.S. citizenship to a foreign-born child under the same terms as § 1401. Where, as here, the transmission of U.S. citizenship relies upon a biological connection to only one U.S. citizen parent, the Department applies the physical presence requirements of § 1401(g). Were both of the child's biological parents U.S. citizens, on the other hand, the Department would have applied § 1401(c).

## II.    <u>Agency Interpretation</u>

The Secretary of State is "charged with" administering the INA to determine the "nationality of a person not in the United States."  8 U.S.C. § 1104(a).  When a child is born overseas, the child's parents may apply to one of the State Department's consulates for a CRBA that reflects the Department's determination that the child acquired citizenship at birth. 22 C.F.R. § 50.7.  Consulates also issue U.S. passports.  22 U.S.C. § 211a.  CRBAs and passports "have the same force and effect as proof of United States citizenship as certificates of naturalization or of citizenship issued by the Attorney General or by a court having naturalization jurisdiction."  *Id.* § 2705.

To allow consular officers to apply the relevant statutory provisions in a consistent and evenhanded way, the State Department has interpreted the provisions in its Foreign Affairs

Manual (FAM).[1]  *Cf. Zivotofsky ex rel. Zivotofsky v. Kerry*, 135 S. Ct. 2076, 2082 (2015) (discussing the FAM as a reflection of State Department policy).  The FAM explains the Department's understanding that, "[s]ince 1790," "[a]t least one biological parent" of a child born abroad "must have been a U.S. citizen when the child was born" in order for that parent to "transmit[] U.S. citizenship at birth" to the child.  8 FAM § 301.4-1(B); *see also id.* § 301.4-1(D)(1)(a) ("The laws on acquisition of U.S. citizenship through a parent have always contemplated the existence of a blood relationship between the child and the parent(s) through whom citizenship is claimed.").  Genetic relationships are the usual form of biological relationship between parents and children.  8 FAM § 301.4-1(D)(1)(c).  The Department also recognizes gestation by a legal mother as a type of biological relationship, even without a genetic relationship.  *Id.*  The Department regards the citizenship of a surrogate who gestates a child as "irrelevant to the child's citizenship analysis."  8 FAM § 304.3-2.(a).

Although the law of the jurisdiction where a child is born may sometimes create a presumption that children born during the marriage of their legal parents are "the issue of that marriage," 8 FAM § 301.4-1(D)(1)(d), the FAM explains that any such "presumption is not determinative in citizenship cases, … because an actual biological relationship to a U.S. citizen parent is required."  *Id.*; *see also id.* § 301.4-1(D)(1)(a) ("It is not enough that the child is presumed to be the issue of the parents' marriage by the laws of the jurisdiction where the child was born.  Absent a blood relationship between the child and the parent on whose citizenship the child's own claim is based, U.S. citizenship is not acquired.").

---

[1] The current public version of the FAM is available at https://fam.state.gov/.

5

The FAM requires consular officers "to investigate carefully" whenever a "doubt arises that [a] U.S. citizen" through whom a child claims citizenship—including a legal parent of the child—"is biologically related to the child."  8 FAM § 301.4-1(D)(1)(d).  Such doubts may arise, for example, "when either of the alleged biological parents was married to another person during the relevant time period" or when "the child was conceived at a time when the alleged father had no physical access to the mother."  *Id.*  They also arise whenever a "child was born through surrogacy or other forms of assisted reproductive technology."  *Id.*

These rules apply to opposite-sex couples exactly as they do to same-sex couples.  Thus, "[a] child born abroad to a surrogate, whose genetic parents are a U.S. citizen mother and anonymous sperm donor," can acquire citizenship only under § 1409(c)—not under § 1401— "regardless of whether the woman is married and regardless of whether her spouse is the legal parent of the child at the time of birth."  8 FAM § 304.3-2(c).  Likewise, "[a] child born abroad to a surrogate, whose genetic parents are a U.S. citizen father and anonymous egg donor," can acquire citizenship only if the father satisfies the requirements of § 1409(a) and § 1401(g), "regardless of whether the man is married and regardless of whether his spouse is the legal parent of the child at the time of birth."  8 FAM § 304.3-2(f).

A same-sex couple's use of surrogacy or other forms of assisted reproductive technology (ART) may more readily be apparent to consular officers than an opposite-sex couple's use of ART.  To facilitate evenhanded application of the rules to all couples and not just those for whom a consular officer can readily ascertain that ART was used, the State Department's CRBA application form requires parents to indicate whether they were "married to the child's other biological parent when the child was born."  Attach. A (CRBA application form).

6

FACTUAL BACKGROUND

The following allegations in the Complaint are accepted as true for the purposes of this motion to dismiss.  Plaintiffs James Derek Mize and Daniel Gregg are United States citizens. Compl. (ECF No. 1) at ¶1.  Mr. Mize was born and raised in the United States.  Compl. at ¶10. Mr. Gregg was born in England to a mother who is a U.S. citizen and a father who is a citizen of the United Kingdom.  Compl. at ¶11.  Mr. Gregg was raised in the United Kingdom, though he has made frequent trips to the United States to visit.  Compl. at ¶11.  Plaintiffs Mize and Gregg met in 2014 in New York, where Mr. Mize was living at the time and Mr. Gregg was visiting. Compl. at ¶39.  Mr. Gregg moved to the United States later that year and, in 2015, Mr. Mize and Mr. Gregg were married in New York.  Compl. at ¶40.

Plaintiffs Mize and Gregg later had a child conceived via ART.  Compl. at ¶41.  In 2017, an embryo created using Mr. Gregg's sperm and an anonymous donor's egg was implanted successfully in a gestational surrogate in London.  Compl. at ¶42.  In the summer of 2018, Plaintiff S.M.-G. was born in the United Kingdom.  Compl. at ¶45.  The Central London Family Court issued a Parental Order declaring that S.M.-G. is to be treated in law as the child of the married parents, Mr. Mize and Mr. Gregg.  Compl. at ¶48.  The General Registrar Office issued a birth certificate shortly thereafter, identifying Mr. Mize and Mr. Gregg as the child's parents. Compl. at ¶49.

In the fall of 2018, Mr. Mize and Mr. Gregg returned to the United States with S.M.-G. Compl. at ¶47.  The family currently resides in Decatur, Georgia.  Compl. at ¶47.  In the spring of 2019, Mr. Mize applied to the Social Security Administration (SSA) for a Social Security card for S.M.-G. and the application was denied.  Compl. at ¶51.  SSA staff notified Mr. Mize that additional evidence of S.M.-G.'s U.S. citizenship was required.  Compl. at ¶51.

Mr. Mize and Mr. Gregg then appeared at the U.S. Embassy in London to apply for a CRBA and a U.S. passport for S.M.-G.  Compl. at ¶52.  Their applications on behalf of S.M.-G. were denied.  Compl. at ¶54.  The Department of State's denial letter stated that S.M.-G.'s application for a CRBA was denied because "[i]t has been determined that based upon the information provided . . . , the biological U.S. citizen parent was not physically present in the United States for five years prior to the child's birth, at least two years of which were after the parent reached the age of fourteen, as required under the provisions of section 301(g) of the [INA]."  Compl. at Ex. A.

On July 23, 2019, Plaintiffs filed this lawsuit, raising four claims.  Count I seeks declaration of citizenship for S.M.-G. under the INA, 8 U.S.C. § 1503.  Compl. at ¶¶ 62-69. Count II alleges that the Department's evaluation of S.M.-G.'s CRBA and passport applications under § 1401(g) and § 1409, instead of § 1401(c), violates the Due Process Clause of the Fifth Amendment.  Compl. at ¶¶70-81.  Count III alleges that the Department has a policy of routinely deeming children born abroad to same-sex married couples to be "born out of wedlock," in violation of the equal protection guarantees of the Fifth Amendment.  Compl. at ¶¶82-90.  Lastly, Count IV seeks judicial review under the APA, 5 U.S.C. § 706, of the Department's denial of the CRBA and passport applications.  Compl. at ¶¶91-101.  Defendants now move to dismiss.

<u>LEGAL STANDARD</u>

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint must contain "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This "plausibility" standard "asks for more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of

the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).  While the Court accepts well-pleaded factual allegations as true, "mere conclusory statements" and "legal conclusion[s] couched as . . . factual allegation[s]" are "disentitle[d] . . . to th[is] presumption of truth." *Id.* at 678, 681 (citation omitted).  The court may consider a document attached to a pleading or referenced therein without converting the motion into one for summary judgment, if the attached document is central to the plaintiff's claim and undisputed as to its authenticity.  *Day v. Taylor*, 400 F.3d 1271, 1276 (11th Cir. 2005).

<u>ANALYSIS</u>

I.       <u>Plaintiffs Fail To Allege A Plausible Equal Protection Claim.</u>

With respect to Plaintiffs' equal protection claims, they have failed to plausibly allege that the State Department's interpretation of provisions of the INA constitutes intentional discrimination against a protected class.

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o state shall … deny to any person within its jurisdiction the equal protection of the laws." U.S. Const., amend. XIV, § 1.  Although this clause expressly applies only to the States, the Supreme Court has found that its protections are encompassed by the Due Process Clause of the Fifth Amendment, and are therefore applicable to the federal government.  *Bolling v. Sharpe*, 347 U.S. 497 (1954).  The equal protection component of the Fifth Amendment's Due Process Clause "forbids the federal government from 'denying to any person the equal protection of the laws . . . .'"  *United States v. Castillo*, 899 F.3d 1208, 1213 (11th Cir. 2018) (citing *United States v. Windsor*, 570 U.S. 744, 774 (2013)).   To advance an equal protection claim, a plaintiff must assert facts that support the allegation that the government subjected him to disparate treatment

by virtue of purposeful or intentional discrimination.  *See Smith v. State of Ga.*, 684 F.2d 729, 736 (11th Cir. 1982).

Here, Plaintiffs seek a declaration that Defendants have violated the Due Process Clause's guarantee of equal protection by "excluding [the children of same-sex married couples] from the marital protections of § 1401 that would allow them to confer citizenship status on a child born abroad and treating them differently from married different-sex couples."  Compl. ¶ 87.  But their equal protection claim rests on "naked assertions, devoid of further factual enhancement," *see Iqbal*, 556 U.S. at 678, and legal conclusions couched as factual allegation, neither of which the Court is not bound to accept as true, *see Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986).  For example, Plaintiffs assert that the Department of State does not subject the children of opposite-sex married couples to the same "born out of wedlock" provisions, Compl. at ¶ 85, and denies the children of same-sex married couples access to citizenship at birth pursuant to § 1401 "because of the circumstances of their birth and because of their parents' sexual orientation, sex, and/or status as a same-sex married couple," *id.* ¶ 88.

These threadbare factual allegations are insufficient to state an equal protection violation. Plaintiffs fail to allege any set of facts to support a claim that the State Department's interpretation of the INA reflects invidious discrimination.  Discriminatory intent "implies more than intent as volition or intent as awareness of consequences."  *See Personnel Adm'r v. Feeney*, 442 U.S. 256, 279 (1979).  Instead, it requires "that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of' the law's differential treatment of a particular class of persons."  *Id.*; *see also Vacco v. Quill*, 521 U.S. 793, 803 (1997) (holding that "[t]he law has long used actors' intent or purpose to distinguish between two acts that may have the same result.").  Accordingly, a discriminatory effect against

10

a group or class does not run afoul of the Constitution unless it is also an intended consequence

of the government.  *Feeney*, 442 U.S. at 279.

Plaintiffs do not even attempt to suggest that the State Department's interpretation of the

INA as reflected in the FAM evidences purposeful discrimination.  Indeed, it is beyond dispute

that the Department's interpretation of the INA as reflected in the FAM is facially neutral, and

does not even reference sexual orientation.  To begin, the FAM explicitly recognizes that

children born abroad to a married same-sex female couple can be "born in wedlock" for INA

§ 1401 purposes.  For example, where one woman is a U.S. citizen and the other woman is an

alien, the child can acquire U.S. citizenship at birth if the U.S.-citizen wife is either "the genetic

mother (the woman whose egg was used in conception) or the gestational mother (the woman

who carried and delivered the baby)," so long as the law of the country where she resides also

recognizes her as a legal parent.  8 FAM 301.4-1(D)(1)(c).  Where both women are U.S. citizens,

and one is the legal, gestational mother and the other is the genetic mother of the child, the

Department of State adjudicates the child's citizenship claim under § 1401(c).  8 FAM 304.3-

1(b).

Moreover, the Department requires a child claiming acquisition of citizenship at birth to

establish both a legal relationship and a biological connection with a U.S. citizen parent in all

cases, *regardless* of the sex or sexual orientation of the U.S. citizen parent.  As the FAM

explains:

> The laws on acquisition of U.S. citizenship through a parent have always
> contemplated the existence of a blood relationship between the child and the
> parent(s) through whom citizenship is claimed. It is not enough that the child is
> presumed to be the issue of the parents' marriage by the laws of the jurisdiction
> where the child was born. Absent a blood relationship between the child and the
> parent on whose citizenship the child's own claim is based, U.S. citizenship is not
> acquired. The burden of proving a claim to U.S. citizenship, including blood

relationship and legal relationship, where applicable, is on the person making such claim.

8 FAM 301.4-1(D)(1).  While it is true that a child born during a marriage may generally be "presumed" to be the issue of that marriage, *see id.*; *see also* Compl. ¶ 20, the Department of State considers such presumption insufficient for determining citizenship regardless of the sex or sexual identity of the married couple.  8 FAM 301.4-1(D)(1).  *All* applicants are required to prove claims to U.S. citizenship, including documentation concerning ART, where applicable. *See* 22 C.F.R. § 51.40; *see also* 8 FAM 304.3-4; *see also id.* ¶ a.

Plaintiffs highlight a reference to 8 U.S.C. § 1409 in the Embassy's letter dated April 24, 2019.  Compl. at ¶ 54.  That provision applies to "[c]hildren born out of wedlock."  *See* 8 U.S.C. § 1409.  Plaintiffs question why the Department considered § 1409 applicable to their situation rather than 8 U.S.C. § 1401, which makes no explicit reference to "wedlock," but generally covers children whose biological parents are married.  *See* Compl. at ¶ 55.  Plaintiffs then infer that the Department "failed to acknowledge the validity of Mr. Mize and Mr. Gregg's marriage." *Id.* at ¶ 4.  But the Court should not accept as true this "legal conclusion couched as a factual allegation."  *See Iqbal*, 556 U.S. at 678.  Nor do Plaintiffs' well-pleaded factual allegations support such inference.  *See id.*  As explained below, Plaintiffs mistakenly conflate recognition of marriage with § 1401's applicability.

The FAM explains that persons in legally valid and recognized marriages (including marriages of opposite-sex couples) may still have a child considered "born out of wedlock" for § 1409 purposes.  *See, e.g.*, 8 FAM 304.3-2.  The Department applies this policy equally to same-sex marriages and opposite-sex marriages.  *See id.*; *see also* 7 FAM Ex. 1454.  Thus, the

term "out of wedlock" concerns the marital status of a child's biological parents, and its application is not a failure to recognize the validity of a same-sex marriage.

Equally fatal to Plaintiffs' equal protection claim is the inability to identify any similarly situated protected group that the Department treated differently.  The Complaint describes Plaintiffs' experience applying for a CRBA and passport for S.M.-G., *see, e.g.*, Compl. ¶¶ 52–55, but it lacks any factual allegations that similarly situated persons were treated differently.  For example, other than a naked allegation, *see id.* at ¶ 85, Plaintiffs do not allege that a similarly situated opposite-sex married couple who used ART to conceive a child has been treated differently by the Department.

Because the Complaint lacks well-pleaded factual allegations that Plaintiffs have been treated differently than other similarly situated persons, the Court need not reach the question of whether the Departments' actions in denying a CRBA and U.S. passport to S.M.-G. survive rational basis review, *see, e.g., Engquist v. Oregon Dept. of Agr.*, 553 U.S. 591, 602 (2008); or whether a lower standard of review applies, *see Fiallo v. Bell*, 430 U.S. 787, 794–95 (1977).

Because Plaintiffs fail as a matter of law to allege a plausible equal protection claim, this claim should be dismissed.

II.     Plaintiffs Fail To Allege A Plausible Due Process Claim.

The Court should likewise dismiss Plaintiffs' due process claim.  Plaintiffs assert that Defendants are violating their substantive due process rights by "excluding the children of same-sex spouses from the scope of [§ 1401]."  Compl. at ¶ 78; *see also id.* at ¶ 79.  Because Plaintiffs fail to identify a fundamental right that Defendants have infringed upon, their substantive due process claim must be evaluated under rational basis review.  Defendants' actions easily survive such review.

13

The Supreme Court has established that the Fifth Amendment guarantee of due process includes "a substantive component, which forbids the government from infringing certain fundamental liberty interests at all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." *Reno v. Flores*, 507 U.S. 292, 301–02 (1993).  But the Court has "always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992).  The Court has observed that the protections of substantive due process are limited to those rights that rank as "fundamental"—that is, both "objectively, deeply rooted in this Nation's history and tradition" and "implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997) (citation omitted).  The Supreme Court has also made clear that a plaintiff must provide "a 'careful description' of the asserted fundamental liberty interest" when raising such a claim. *Chavez v. Martinez*, 538 U.S. 760, 775–76 (2003).  Where the asserted interest is not a fundamental right, the Court must ask whether the challenged statute is "rationally related to legitimate government interests." *Doe v. Moore*, 410 F.3d 1337, 1345 (11th Cir. 2005) (internal citation and quotation omitted).  "The rational basis standard is 'highly deferential' and [the Court] hold[s] legislative acts unconstitutional under a rational basis standard in only the most exceptional circumstances." *Id.* (citing *Williams v. Pryor*, 240 F.3d 944, 948 (11th Cir. 2001).

Here, in the case of a family that has made the choice to have children outside the United States, Plaintiffs' asserted right to transmission of citizenship via § 1401, Compl. at ¶ 78, is too broad to comply with *Glucksberg*.  Under the Department's interpretation of § 1401, S.M.-G. could have acquired U.S. citizenship through Mr. Mize had they had a biological, rather than just

14

legal, relationship.  8 U.S.C. §§ 1401(g), 1409(a).  Going forward, the family retains the option

of pursuing S.M.-G.'s naturalization pursuant to the Child Citizenship Act of 2000, 8 U.S.C.

§ 1431, which provides for citizenship for children born abroad in certain other circumstances.

       Thus, Plaintiffs' asserted interest is better described as an individual's right to

successfully apply for a CRBA or a U.S. passport on behalf of a child who is born abroad and is

not the citizenship-conferring individual's biological child.  This asserted right—which Plaintiffs

do not even characterize as a liberty or property interest—cannot be considered fundamental

under substantive due process jurisprudence because there is no such right deeply rooted in this

Nation's history, tradition, and practices.  As a threshold matter, the extension of citizenship to

foreign-born children is not a constitutionally enshrined right for either the U.S. citizen or the

child seeking to acquire citizenship; rather, it is a right granted by Congress.  *Rogers*, 401 U.S. at

827; *see also Miller*, 523 U.S. at 453 (Scalia, J., concurring).  Further, the Supreme Court has

underscored the importance of a biological connection between the child seeking to acquire

citizenship and the U.S. citizen seeking to confer citizenship.  *See, e.g.*, *Miller*, 523 U.S. at 438;

*Nguyen v. INS*, 533 U.S. 53, 62 (2001).  Therefore, Plaintiffs fail to establish a fundamental right

at issue in this case.

       Because Plaintiffs' asserted right is not fundamental, their claim "is subject only to

rational basis scrutiny."  *Doe*, 410 F.3d at 1345.  This claim can be disposed of on a motion to

dismiss, because Plaintiffs' pleadings evidence the rational basis of the challenged

determination.  Simply put, the Complaint is bereft of allegations that Defendants' interpretation

of § 1409 and § 1401 to require a biological relationship between the qualified U.S. citizen and

child for the child to receive a CRBA or a U.S. passport despite being born abroad is irrational.

Plaintiffs contend that there is no rational basis to limit the application of § 1401 to the children of opposite-sex couples. *See* Compl. ¶¶ 80, 89, 97. But there is no such policy, and the claim fails at the pleading stage because Plaintiffs fail to even allege that Defendants limit the application of § 1401 to the children of such couples. *See Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). The FAM contains no language that treats same-sex couples differently from opposite-sex married couples in requiring a biological connection between the child seeking to acquire U.S. citizenship and the relevant U.S. citizen parent under 8 U.S.C. § 1401. *See, e.g.*, 8 FAM 301.4 (*passim*).

Therefore, Plaintiffs fail to sufficiently allege that the Department's requirements for citizenship bear no rational relationship to a legitimate state interest, and Plaintiffs' equal protection claim must be dismissed accordingly.

III.   <u>Plaintiffs Fail To State A Valid Administrative Procedure Act Claim.</u>

Plaintiffs' APA claim is barred because Plaintiffs have an adequate remedy at law. Plaintiffs bring a claim under § 706(2) of the APA, asserting that Defendants' denial of S.M.-G.'s CRBA and passport applications—and more broadly an alleged exclusion of children born abroad in same-sex marriages from the category of children who qualify for citizenship at birth—"lacks a rational basis, is arbitrary, and is contrary to law." *See* Compl. ¶¶ 93-94. APA review, however, is not available for Plaintiffs. The APA limits judicial review to "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704; *U.S. Army Corps of Eng'rs v. Hawkes Co., Inc.*, 136 S. Ct. 1807, 1813 (2016). Section 704 is interpreted by the Supreme Court as precluding APA review where Congress has otherwise provided a special and adequate review procedure. *Bowen v. Massachusetts*, 487 U.S. 879, 901 (1988).

Here, there exists an "adequate remedy at law," *see* 5 U.S.C. § 704, precluding Plaintiffs' APA claim—S.M.-G. can challenge the State Department's denials of the CRBA application filed on her behalf under 8 U.S.C. § 1503, which provides a path by which S.M.-G. may assert a claim that she is a U.S. national.  Section 1503 provides for *de novo* review of the issue of whether an individual is a U.S. national.  8 U.S.C. § 1503(a).  "The APA does not authorize judicial review 'that adds to the sweeping *de novo* review' that the INA provides."  *Heslop v. Attorney General of U.S.*, 594 F. App'x 580, 584 (11th Cir. 2014) (citation omitted).

Plaintiffs appear to concede that by bringing a claim under 8 U.S.C. § 1503 in this lawsuit, such a claim provides an adequate remedy at law.  Indeed, the Fifth Circuit has recently affirmed that § 1503 is an adequate alternative to APA review of an agency determination that an individual is not a U.S. citizen.  *Hinojosa v. Horn*, 896 F.3d 305, 312 (5th Cir. 2018), *cert. denied*, 139 S. Ct. 1319 (2019).  As the court noted, § 1503 provides a "direct and guaranteed path to judicial review" under § 1503.  *Id.*  "Moreover, the provision comprises 'both agency obligations and a mechanism for judicial enforcement,'" *id.* (quoting *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 846 F.3d 1235, 1245 (D.C. Cir. 2017)), which suggests that the statute "strikes the balance between statutory duties and judicial enforcement that Congress desired," *Citizens for Responsibility*, 846 F.3d at 1245.  The Fifth Circuit concluded that "[p]ermitting a cause of action under the APA would provide a duplicative remedy, authorizing an end-run around that process."  *Hinojosa*, 896 F.3d at 312.  The Fifth Circuit's reasoning is persuasive, and should be adopted here.

That Plaintiffs may seek injunctive and declaratory relief under the APA but can obtain declaratory relief only under § 1503(a) does not render § 1503's remedies inadequate here. Section 706(2)(A) of the APA allows the courts to "hold unlawful and set aside agency action"

17

that does not comport with the applicable laws and procedures.  5 U.S.C. § 706(2)(A).  Section 1503, for its part, accords an individual "judgment declaring him to be a national of the United States," 8 U.S.C. § 1503(a).

There is no significant gap between the relief that § 1503 affords and that which is available to Plaintiffs under the APA.  *Cf. Bowen*, 487 U.S. at 905.  Indeed, all § 706(2)(A) of the APA can provide is an order vacating or remanding the Department's denials of S.M.-G.'s CRBA and passport applications.  *See id.*  These remedies do not encompass an affirmative declaration that S.M.-G. is a U.S. citizen, which is Plaintiffs' second request for relief, *see supra*. Section 1503 instead provides Plaintiffs with a mechanism to obtain a declaration that S.M.-G. was a citizen at birth.  As the Supreme Court has recognized, "the power to make someone a citizen of the United States has not been conferred upon the federal courts . . . as one of their generally applicable equitable powers."  *INS v. Pangilinan*, 486 U.S. 875, 883–84 (1988). "Rather, it has been given to them as a specific function to be performed in strict compliance with the terms of an authorizing statute which says that '[a] person may be naturalized ... in the manner and under the conditions prescribed in this subchapter, and not otherwise.'"  *Id.* at 884 (quoting 8 U.S.C. § 1421(d)).  Thus, even if the Court were to find that Defendants violated the APA by not granting a CRBA or a passport to S.M.-G., any declaratory or injunctive relief the Court might order under the APA could not grant or guarantee citizenship for S.M.-G.  The Court lacks authority to convey citizenship to specific individuals outside of the procedures required by the INA.  *See Pangilinan*, 486 U.S. at 884.

And Plaintiffs' other, sweeping requests for judgment on the Department of State's policies as a whole and for a permanent, universal injunction are unavailable under the APA and, in any event, must be rejected as improper.  First, the APA does not allow Plaintiffs to seek

18

"*wholesale* improvement of [a] program by court decree." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990).  Second, it is a black-letter rule that injunctions "should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)); *see also Gill v. Whitford*, 138 S.Ct. 1916, 1933 (2018) ("The Court's constitutionally prescribed role is to vindicate the individual rights of the people appearing before it.").  Indeed, § 706(2)'s inability to provide Plaintiffs with *any* of their requested relief is an independent basis on which to dismiss this claim.

Therefore, Plaintiffs' APA claims should be dismissed due to § 1503's adequate alternative review procedures.

IV.    Defendants Have Properly Interpreted § 1401 To Require A Biological Relationship And That Interpretation Compels The Conclusion That S.M.-G. Did Not Acquire Citizenship Automatically At Birth, Thereby Defeating Plaintiffs' §1503 Claim.

A.    The Text And Context Of § 1401 Support The Department's Interpretation.

Even if Plaintiffs could pursue an APA claim, that claim fails as a matter of law because the Department's interpretation of the INA is reasonable.  *See Iqbal*, 556 U.S. at 678. Section 1401 confers citizenship on individuals "born … of parents" who meet the statutory requirements.  To be "born," of course, is "[t]o be brought forth as offspring, to come into the world."  *Oxford English Dictionary*, https://oed.com (definition I.1 of "born, *adj.*").  And "of," in this context, "[i]ndicat[es] the thing, place, or person from which or whom something originates, comes, or is acquired or sought."  *Id.* (definition III of "of, *prep.*"); *see also, e.g.*, *American Heritage Dictionary* 1221 (5th ed. 2016) ("[d]erived or coming from").  For a child to be "born of parents," then, means that he originates or derives from those parents.  That is true if the child is biologically related to the parents.  It is not true if the child lacks such a relationship.

19

Section 1401's plural reference to "parents" further supports the inference that it requires a biological relationship.  The statute does not refer to a child "born of a marriage" in which one parent is a U.S. citizen and the other is not.  Rather, it refers to a child "born … of parents," bolstering the conclusion that *each* parent have a biological relationship to the child.

Other courts have interpreted the phrase "born of parents" in a manner consistent with the State Department's construction.  The Second Circuit, for example, has interpreted the language of 8 U.S.C. § 1401(c)—conferring citizenship "at birth" on "a person born outside of the United States … of parents both of whom are citizens of the United States"—as requiring a biological relationship between the child and the parents.[2]  *Colaianni v. INS*, 490 F.3d 185, 187 (2d Cir. 2007).  And the Court of Appeals for Veterans Claims, in construing the phrase "illegitimate child" to mean a child "'born of parents not married to each other,'" explained that "'[b]orn of parents' indicates a biological connection between the parents and the child."  *McDowell v. Shinseki*, 23 Vet. App. 207, 210-212 (2009), *aff'd*, 396 F. App'x 691 (Fed. Cir. 2010).

The Department's interpretation of § 1401's text is further supported by its context: the conferral of *jus sanguinis* citizenship.  *See, e.g., Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 486 (2006) ("Interpretation of a word or phrase depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis.").  *Jus sanguinis* literally means the "right of blood—the conferral of nationality based on descent, irrespective of the place of birth."  Aleinikoff et al., Immigration and Citizenship: Process and Policy 15 (6th ed. 2008).  Consistent with that historical

---

[2] The Second Circuit has also interpreted "born of parents" in the INA to include the common law meaning of "parents" and, thus, "the longstanding presumption of parentage based on marriage."  *Jaen v. Sessions*, 899 F.3d 182, 188 (2d Cir. 2018).

understanding of the doctrine, the Supreme Court has repeatedly emphasized the importance of the government's interest in "assuring that a biological . . . relationship exists" between a child and a parent through whom the child claims citizenship.  *Nguyen*, 533 U.S. at 62; *see also Miller*, 523 U.S. at 436.

That traditional understanding of *jus sanguinis* citizenship provides a strong reason to pause before concluding that Congress meant to confer citizenship at birth on children born abroad who lack any biological connection to a U.S. citizen by whom citizenship is intended to be transmitted.  To be sure, if the text of § 1401 unambiguously extended citizenship without a biological relationship, then the text would govern.  But § 1401's text favors a biological relationship requirement for the reasons discussed above.  That implication is bolstered by the traditional understanding of *jus sanguinis* citizenship—the context in which Congress enacted § 1401.  *See, e.g., Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 7 (2011) ("[T]he language of the provision, considered in isolation, may be open to competing interpretations.  But considering the provision in conjunction with the purpose and context leads us to conclude that only one interpretation is permissible.").

B.    The Department's Interpretation Warrants *Skidmore* Deference.

To the extent § 1401 remains ambiguous notwithstanding the textual and contextual factors favoring the State Department's interpretation, a tiebreaking factor is the deference owed to that interpretation under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944).  *Skidmore* and its progeny recognize that agency interpretations lacking the force of law may nonetheless warrant deference "given the 'specialized experience and broader investigations and information' available to the agency, and given the value of uniformity in its administrative and judicial understandings of what a national law requires."  *United States v. Mead Corp.*, 533 U.S. 218,

234 (2001) (citation omitted; quoting *Skidmore*, 323 U.S. at 139, 140).  Such interpretations are entitled to some deference based upon its power to persuade.  *Buckner v. Fla. Habilitation Network, Inc.,* 489 F.3d 1151, 1155 (11th Cir. 2007).  The proportional deference afforded the agency's interpretation depends upon the "thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade . . . ."  *Id.* (quoting *Skidmore*, 323 U.S. at 140).  Other decisions reflect a similar approach.  *See, e.g.*, *Kasten*, 563 U.S. at 15-16; *Federal Express Corp. v. Holowecki*, 552 U.S. 389, 401-402 (2008; *Price v. Stevedoring Servs. of Am., Inc.*, 697 F.3d 820, 839 (9th Cir. 2012) (en banc).

The State Department's longstanding interpretation of § 1401, § 1409, and related provisions is exactly the sort of interpretation that warrants *Skidmore* deference.  To begin, the interpretation reflects the Department's "'specialized experience'" and its appreciation of the need for "uniformity," *Mead*, 533 U.S. at 234.  The Department has long been concerned about the phenomenon of individuals fraudulently claiming citizenship on behalf of a child born abroad who is not actually theirs.  *See, e.g.*, 8 FAM § 301.4-1(E) (concerning suspected fraud or falsehood in citizenship claims).

Of course, citizenship fraud is not limited to the context of assisted reproduction, and a biological-relationship requirement is not a failsafe means of preventing it.  But because biological relationships can easily and objectively be verified through DNA testing, such a requirement is a powerful way to address concerns about fraud.  Without it, citizenship claims could be supported merely by documents purporting to show legal relationships between parents and child, and it can be extremely difficult (especially in certain countries) to verify that such documents are genuine and accurate.  *See, e.g.*, Joint Statement of USCIS and the Department of

22

State, *U.S. Suspends Processing New Nepal Adoption Cases Based on Abandonment* (Aug. 6, 2010), https://go.usa.gov/xVpWZ (explaining that, in Nepal, "[c]ivil documents, such as … birth certificates[,] often include data that has been changed or fabricated"). If § 1401(c)'s "born … of parents" language were interpreted to require only legal, not biological, parentage, then the State Department could be required to undertake a complex investigation into the genuineness and accuracy of a child's birth certificate, rather than relying on far more straightforward evidence of biological parentage. Similar fraud concerns arise in many circumstances. *See, e.g.*, *Alzokari v. Pompeo*, 2019 WL 3805083 (E.D.N.Y. Aug. 13, 2019) (challenge to passport revocation resulting from fraud concerns regarding plaintiff 's parentage claim for a child he later admitted was his grandson), *appeal filed*, No. 19-3113 (2d Cir. Oct. 1, 2019).

The State Department's assessment of fraud concerns is a strong reason for the Court to defer to the Department's interpretation of the INA. *Cf. Fiallo v. Bell*, 430 U.S. 787, 799 n.8 (1977) (explaining that, in adopting a provision not at issue here, "Congress may well have given substantial weight" to the "difficulty" of parentage determinations "and the potential for fraudulent visa applications that would have resulted from a more generous drawing of the line"). The Department's interpretation reflects its "'specialized experience'" in adjudicating thousands of applications for citizenship documents, as well as its appreciation of the need for standards that can be applied "uniform[ly]" in countries around the world, including those where legal documents may be falsified or inaccurate. *Mead*, 533 U.S. at 234. And the interpretation accounts for the Department's predictive judgment that eliminating a biological-relationship requirement would increase citizenship fraud. *Cf. Mo.-Kan.-Tex. R. Co. v. United States*, 632 F.2d 392, 406 ("In making a predictive judgment, the expertise of the [agency] supplements, and may supplant, the projections placed in the record by the parties.").

23

Nor is fraud the only relevant concern.  If a child could acquire citizenship through a legal parent regardless of whether he is biologically related to that parent, then the conferral of U.S. citizenship on children born overseas would depend on the legal parentage laws of more than two hundred countries, some of which recognize forms of parentage inconceivable to the Congress that enacted the INA.  For example, the law of Ontario, Canada, currently affords automatic recognition to up to four intended parents designated in a surrogacy agreement, and allows courts to recognize more than four.  Children's Law Reform Act, R.S.O. 1990, c. C.12, §§ 10, 11, *available at* https://www.ontario.ca/laws/statute/90c12.

In addition, the State Department's position is consistent and longstanding.  As the Foreign Affairs Manual explains, a biological relationship with a U.S. citizen parent has been a prerequisite to citizenship for a child born abroad "[s]ince 1790."  8 FAM § 301.4-1(B).  And to facilitate the evenhanded application of the requirement to people claiming citizenship under a wide range of circumstances, the State Department's application form for a CRBA—as noted above—asks parents to indicate whether they were "married to the child's other biological parent when the child was born."  Attach. A.  There is no basis to suggest that the interpretation at issue in this case reflects "'*post hoc* rationalizatio[n],'" as opposed to the kind of "careful consideration" that warrants *Skidmore* deference, *Kasten*, 563 U.S. at 15-16.

The State Department's position is also eminently reasonable as a construction of the INA, even assuming alternative constructions could also be regarded as reasonable.  As discussed above, § 1401's use of the phrase "born of" supports the Department's interpretation of that provision to entail a biological-relationship requirement.  That interpretation is further corroborated by the statutory context, including the historical understanding of *jus sanguinis* citizenship.  And it serves important governmental objectives, including the prevention of

24

citizenship fraud.  A contrary interpretation, even if plausible, is not so clearly correct as to foreclose the State Department's view.

      C.      <u>S.M.-G. Did Not Acquire U.S. Citizenship Automatically At Birth.</u>

As discussed above, the Department's interpretation of the applicable statute is reasonable and appropriate.  The Court should apply this interpretation when considering Plaintiffs' claim pursuant to 8 U.S.C. § 1503.  In doing so, the Court should conclude that Plaintiffs have failed to state a claim upon which S.M.-G. may be determined to be a U.S. citizen by operation of § 1401(c), or § 1401(g) for that matter.  Section 1401(c) provides for automatic citizenship at birth for a foreign-born person if that person is "born . . . of parents both of whom are citizens of the United States and one of whom has had a residence in the United States or one of its outlying possessions, prior to the birth of such person."  8 U.S.C. § 1401(c).  Both Mr. Mize and Mr. Gregg must have a biological relationship, not just a legal relationship, with S.M.-G. in order for her to acquire U.S. citizenship at birth under § 1401(c).  Accordingly, § 1401(c) does not operate to confer citizenship here.  Furthermore, Plaintiffs do not dispute that Mr. Gregg, the U.S. citizen parent with whom S.M.-G. has a biological relationship, did not meet the five-year physical presence requirement of § 1401(g).  Section 1401(g), therefore, also fails to confer U.S. citizenship to S.M.-G.  Thus, Plaintiffs' claim pursuant to 8 U.S.C. § 1503 is unavailing.

<u>CONCLUSION</u>

For the foregoing reasons, the Court should dismiss the Complaint with prejudice.

25

Dated: November 4, 2019

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

ANTHONY J. COPPOLINO
Deputy Director

/s/ Alexis J. Echols
ALEXIS J. ECHOLS
Trial Attorney

VINITA B. ANDRAPALLIYAL
Trial Attorney

United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW, Room 11304
Washington, D.C. 20005
Telephone: (202) 305-8613
Facsimile: (202) 616-8460
E-mail: alexis.j.echols@usdoj.gov

*Attorneys for Defendants*

**IN THE UNITED STATES DISTRCIT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| JAMES DEREK MIZE and JONATHAN DANIEL GREGG, individually and on behalf of their minor child, S.M.-G., | : <br> : <br> : <br> : |
| Plaintiffs, | : |
| v. | : <br> : |
| MICHAEL R. POMPEO, in his official capacity as Secretary of State, and THE U.S. DEPARTMENT OF STATE, | : <br> : <br> : |
| Defendants. | : <br> : |

Civ. No. 1:19-CV-03331-MLB

## CERTIFICATE OF COMPLIANCE

I certify that the documents to which this certificate is attached have been prepared with one of the font and point selections approved by the Court in LR 5.1B for documents prepared by computer.

/s/ Alexis J. Echols
ALEXIS J. ECHOLS
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW, Room 11304
Washington, D.C. 20005
Telephone: (202) 305-8613
Facsimile: (202) 616-8460
E-mail: alexis.j.echols@usdoj.gov
