IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

| | |
|---|---|
| JAMES DEREK MIZE, et al., | Civil Action No. 1:19-cv-3331-MLB |
| *Plaintiffs*, | |
| v. | |
| MICHAEL R. POMPEO, et al., | |
| *Defendants*. | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ...................................................................1

II.  SUMMARY OF FACTS ..........................................................1

III.  LEGAL STANDARD ..............................................................2

IV.  PLAINTIFFS HAVE STATED A CLAIM FOR A DECLARATION OF CITIZENSHIP PURSUANT TO 8 U.S.C § 1503(A)............................2

    A.  The State Department's Imposition of a Biological Requirement Is Contrary to the Plain Language of Section 301(c)..........................2

    B.  Defendants' Definitional Argument Is Unavailing. ............................6

    C.  Defendants' Policy Does Not Warrant Deference. ...............................9

V.  PLAINTIFFS HAVE STATED A DUE PROCESS CLAIM......................12

    A.  Defendants' Refusal To Recognize S.M.-G. As A Marital Child Infringes Mize and Gregg's Liberty Interests In Their Marriage. .....13

        1.  Birth citizenship under Section 301 is one of the "constellation of benefits" of marriage. ...................................13

        2.  Applying Section 309 and denying S.M.-G.'s birth citizenship disregards Mize and Gregg's marriage and Mize's parentage. ........................................................15

    B.  Defendants Infringed Upon All Plaintiffs' Liberty And Fundamental Rights To Create And Be A Family. ............................16

    C.  Defendants Fail to Identify a Compelling State Interest that the Challenged Policies Are Narrowly Tailored to Serve, and Defendants' May Not Re-Define Plaintiffs' Fundamental Rights Out of Existence................................................................17

VI.  PLAINTIFFS HAVE STATED AN EQUAL PROTECTION CLAIM.......19

    A.  Defendants Treat Marriages of Same-Sex Couples As Second-Class. ............................................................................19

    B.  Defendants' Policy Is Subject To Heightened Scrutiny.....................20

    C.  Plaintiffs Have Sufficiently Pleaded Discriminatory Intent. .............22

VII.  PLAINTIFFS HAVE STATED AN APA CLAIM......................................25

VIII.  CONCLUSION...................................................................25

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).................................................................2

*Bostic v. Schaefer*,
  760 F.3d 352 (4th Cir. 2014) ...............................................24

*Buckner v. Florida Habilitation Network, Inc.*,
  489 F.3d 1151 (11th Cir. 2007) ............................................9

*Colaianni v. I.N.S.*,
  490 F.3d 185 (2d Cir. 2007) .................................................8

*Custis v. United States*,
  511 U.S. 485 (1994)............................................................4, 5

*Dvash-Banks v. Pompeo*,
  2019 WL 911799 (C.D. Cal. Feb. 21, 2019) .............6, 10, 25

*Duke v. Cleland*,
  5 F.3d 1399 (11th Cir. 1993) .................................................2

*Haves v. City of Miami*,
  52 F.3d 918 (11th Cir. 1995) ...............................................20

*Heller v. Doe*,
  509 U.S. 312 (1993)..............................................................18

*I.L. v. Alabama*,
  739 F.3d 1273 (11th Cir. 2014) ...........................................24

*Jaen v. Sessions*,
  899 F.3d 182 (2d Cir. 2018) ...............................4, 5, 9, 15

*Latta v. Otter*,
  771 F.3d 456 (9th Cir. 2014) .........................................21, 24

# TABLE OF CONTENTS
## (continued)

**Page**

*Lofton v. Sec'y of Dep't of Children & Family Servs.*,
358 F.3d 804 (11th Cir. 2004) ...........................................21

*Loving v. Virginia*,
388 U.S. 1 (1967)...........................................................13

*Massachusetts Bd. of Retirement v. Murgia*,
427 U.S. 307 (1976)........................................................21

*Massachusetts v. U.S. Dep't of Health & Human Servs.*,
682 F.3d 1 (1st Cir. 2012)................................................22

*McDowell v. Shinseki*,
23 Vet. App. 207 (2009) ...................................................8

*Michael H. v. Gerald D.*,
491 U.S. 110 (1989)..........................................................8

*Miller v. Albright*,
523 U.S. 420, 436 (1998)...................................................9

*Morrissey v. United States*,
871 F.3d 1260 (11th Cir. 2017) .......................................21

*Nguyen v. I.N.S.*,
533 U.S. 53, 62 (2001).......................................................9

*Neder v. United States*,
527 U.S. 1 (1999)...............................................................8

*Obergefell v. Hodges*,
135 S. Ct. 2584 (2015)..............................................*passim*

*Pavan v. Smith*,
137 S. Ct. 2075 (2017)...........................................13, 14, 19

*Pers. Adm'r of Massachusetts v. Feeney*,
442 U.S. 256 (1979)........................................................22

## TABLE OF CONTENTS
(continued)

**Page**

*Planned Parenthood of Se. Pa. v. Casey*,
   505 U.S. 833 (1992)............................................................................17

*Retuya v. Sec'y Dep't of Homeland Sec.*,
   412 Fed. App'x 185 (11th Cir. 2010) ..................................................14

*Romer v. Evans*,
   517 U.S. 620 (1996)............................................................................18

*Russello v. United States*,
   464 U.S. 16 (1983)................................................................................4

*U.S. ex rel. Saldivar v. Fresenius Med. Care Holdings, Inc.*,
   906 F. Supp. 2d 1264 (N.D. Ga. 2012)..................................................2

*Scales v. INS*,
   232 F.3d 1159 (9th Cir. 2000) ....................................................4, 10, 15

*Sessions v. Morales-Santana*,
   137 S. Ct. 1678 (2017).................................................................3, 9, 13

*Skidmore v. Swift & Co.*,
   323 U.S. 134 (1944)............................................................................10

*SmithKline Beecham Corp. v. Abbott Labs.*,
   740 F.3d 471 (9th Cir. 2014) ..............................................................21

*Solis-Espinoza v. Gonzales*,
   401 F.3d 1090 (9th Cir. 2005) ........................................................5, 15

*U.S. Dep't of Agric. v. Moreno*,
   413 U.S. 528 (1973)............................................................................22

*United States v. Castillo*,
   899 F.3d 1208 (11th Cir. 2018) ..........................................................21

*United States v. Virginia*,
   518 U.S. 515 (1996)............................................................................21

## TABLE OF CONTENTS
### (continued)

**Page**

*United States v. Windsor*,
570 U.S. 744 (2013)..................................................................*passim*

*Washington v. Glucksberg*,
521 U.S. 702 (1997)............................................................17

*Weber v. Aetna Casualty & Surety Co.*,
406 U.S. 164 (1972)............................................................21

*Windsor v. United States*,
699 F.3d 169 (2d Cir. 2012) ............................................21

**Statutes & Rules**

5 U.S.C. § 706(2) ...............................................................25

8 U.S.C. § 1101 ..................................................................12

8 U.S.C. § 1401 (INA Section 301)..............................*passim*

8 U.S.C. § 1409 (INA Section 309)..............................*passim*

8 U.S.C § 1503(a) ..........................................................2, 25

Fed. R. Civ. P. 12(b)(6).........................................................2

**Other Authorities**

Adams, Jill, *Paternity testing: blood types and DNA* ............................11

BLACK'S LAW DICTIONARY (11th ed. 2019) .............................................9

Collins, Kristin A., *Illegitimate Borders: Jus Sanguinis Citizenship
and the Legal Construction of Family, Race, and Nation*, 123 Yale
L.J. 2134, 2235 (2014).....................................................9

Hong, Kari E., *Removing Citizens: Parenthood, Immigration Courts,
and Derivative Citizenship*, 28 Geo. Immigr. L.J. 277, 289 (2014).....................9

*Lexico*,
https://www.lexico.com/en/definition/of.................................................7

# TABLE OF CONTENTS
(continued)

**Page**

*Merriam-Webster Dictionary*,
   https://www.merriam-webster.com/dictionary/of ...............................................7

## I.    <u>INTRODUCTION</u>

Plaintiff S.M.-G. is the daughter of U.S. citizens James Derek Mize and Jonathan D. Gregg. Yet, Defendants refuse to recognize S.M.-G.'s citizenship at birth or Mize and Gregg's marriage because, in Defendants' misguided and discriminatory view, only biology—rather than legal, familial, and loving relationships—defines a family. S.M.-G. has been a U.S. citizen since birth, and she is entitled to a declaration to that effect. Defendants' injection of a biology requirement into the standards for establishing birth citizenship for marital children is contrary to the text of the Immigration and Nationality Act ("INA") and the decisions of every court that has considered the issue. It also demeans the Plaintiffs by treating them as legal strangers, in violation of the equality, dignity, and fundamental rights guaranteed by the Fifth Amendment. The premise of Defendants' Motion to Dismiss is that it was lawful for them to discriminate against the Mize-Gregg family. Defendants are wrong. This improper agency action should be rejected, and the Motion denied in its entirety.

## II.    <u>SUMMARY OF FACTS</u>

In addition to those identified in Defendants' Motion, Plaintiffs identify the following relevant facts: Defendants' Foreign Affairs Manual ("FAM") is a collection of State Department policies. Compl. ¶ 24. The FAM policies relevant to birthright citizenship include disregarding valid marriages unless there is a "biological" relationship between both married parents and their child and deeming any parent not

biologically related to the child as a legal stranger to the child. *Id.* ¶¶ 5, 8, 27, 33. Under these policies, the children of two men married to each other will always be deemed to have been born "out of wedlock." Compl. ¶¶ 4, 5, 28, 33. While Defendants claim to presume that "[c]hildren born in wedlock are . . . the issue of that marriage," they never extend that presumption to the families of married same-sex couples. Compl. ¶¶ 29-31.

## III.   LEGAL STANDARD

A complaint will survive a Rule 12(b)(6) motion if it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotes and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "In considering a Rule 12(b)(6) motion, the court construes the pleading in the non-movant's favor and accepts the allegations of facts therein as true." *U.S. ex rel. Saldivar v. Fresenius Med. Care Holdings*, *Inc.*, 906 F. Supp. 2d 1264, 1269 (N.D. Ga. 2012) (citing *Duke v. Cleland*, 5 F.3d 1399, 1402 (11th Cir. 1993)).

## IV.   PLAINTIFFS HAVE STATED A CLAIM FOR A DECLARATION OF CITIZENSHIP PURSUANT TO 8 U.S.C § 1503(a).

### A.   The State Department's Imposition Of A Biological Requirement Is Contrary To The Plain Language Of Section 301(c).

Section 301 of the INA provides that, "a person born outside of the United

States . . . of parents both of whom are citizens of the United States and one of whom has had a residence in the United States . . . prior to the birth of such person," "shall be [a] national[] and citizen[] of the United States at birth." 8 U.S.C. § 1401(c). Under the plain terms of this section, as a child born of her married parents, both of whom are U.S. citizens, S.M.-G. was a citizen at birth. *Id.*; *see also Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1686-87 (2017) (Section 301 is "[a]pplicable to married couples"). Defendants read into Section 301 a requirement—that children have a genetic or blood relationship to both of their parents in order to have their citizenship-at-birth recognized—that is simply not present.

Congress knew how to require a genetic or blood relationship between a parent and child within the INA. For example, the plain text of Section 309 specifies that "a person born out of wedlock" is a U.S. citizen only if several requirements are met, including that "a blood relationship between the person and the [U.S.-citizen] father is established by clear and convincing evidence." 8 U.S.C. § 1409(a)(1). Section 301 contains no such requirement for the children of married U.S. citizens like S.M.-G.

This difference is dispositive. "Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983) (quotes omitted). Here, "Congress clearly specified enhanced requirements for proof of parentage in the case

of children born out of wedlock" and "the 'textual distinction' between the sections regarding children of married parents and children of unmarried parents is strongly suggestive of a clear Congressional intent to treat the two categories differently on this point." *Jaen v. Sessions*, 899 F.3d 182, 189 (2d Cir. 2018); *see also Scales v. INS*, 232 F.3d 1159, 1165 (9th Cir. 2000).

Defendants' interpretation of "born . . . of parents" is directly contrary to the decisions of every court to consider whether Section 301 requires a biological relationship between a child and both married parents. In *Scales*, the Ninth Circuit found that a child born to a noncitizen mother married to a U.S. citizen man acquired derivative citizenship from his legal father even where it was undisputed that the U.S. citizen was not the child's biological father. "A straightforward reading" of the "born . . . of parents" language in Section 301 "indicates . . . that there is no requirement of a blood relationship." *Scales*, 232 F.3d at 1164. The court further explained that "[i]f Congress had wanted to ensure" that a person born of married parents only one of whom was a U.S. citizen "actually shares a blood relationship with an American citizen," "'it knew how to do so.'" *Id.* (quoting *Custis v. United States*, 511 U.S. 485, 492 (1994)). [1]

---

[1] In *Scales* and other precedent discussed in this section, the child's citizenship claim proceeded under Section 301(g) because one of their married parents was a U.S. citizen while the other was not. Here, S.M.-G.'s claim arises under Section 301(c)

4

The Ninth Circuit reaffirmed *Scales* in *Solis-Espinoza*, a case in which a child conceived during an extramarital affair between his father (a noncitizen) and woman (also a noncitizen) sought recognition of his birthright citizenship. *Solis-Espinoza v. Gonzales*, 401 F.3d 1090, 1091 (9th Cir. 2005). Stressing the INA's purpose of maintaining family integrity, the court held that Solis-Espinoza derived citizenship under Section 301 from his father's wife, the U.S. citizen who was "in every practical sense" the child's mother, notwithstanding the absence of a biological relationship between them. *Id*. at 1094. The blood relationship requirement "applied *only* to an illegitimate child" and did not apply to someone like petitioner "who was not born 'out of wedlock.'" *Id*. at 1093.

The Second Circuit reached the same conclusion in *Jaen*, holding that Section 301 imported the "common law meaning of 'parent' . . . [and] therefore incorporated the longstanding presumption of parentage based on marriage" such that the husband of Jaen's mother at the time of his birth was his parent for purposes of evaluating his citizenship even though he was not biologically related to Jaen. 899 F.3d at 188. The court contrasted Sections 301 and 309, noting that, "[t]here is no comparable additional requirement for the establishment of paternity in the section regarding

---

because both of her married parents are U.S. citizens. Both subsections use the same "born . . . of parents" formulation, and decisions interpreting the language in Section 301(g) are equally applicable to Section 301(c).

citizenship via *married* parents. Consistent with the common law presumption, paternity is simply assumed in the case of married parents." *Id*. at 189.

In an analogous case involving a child born to a married male same-sex couple through assisted reproductive technology ("ART"), the court held that "the word 'parents' as used in Section 301(g) is not limited to biological parents and that the presumption of legitimacy that applies when a child is born to married parents . . . cannot be rebutted by evidence that the child does not have a biological tie to a U.S. citizen parent." *Dvash-Banks v. Pompeo*, Case No. 2:18-cv-00523, 2019 WL 911799, *7 (C.D. Cal. Feb. 21, 2019).

### B.     Defendants' Definitional Argument Is Unavailing.

Finding no refuge in the ordinary rules of statutory construction or precedent, Defendants resort to a purportedly "textual" argument that defies the plain language of the statute through the use of curated dictionary definitions. More specifically, Defendants craft the following unsound syllogism: Because "born" is defined as "to be brought forth as offspring" and "of" refers to the origin of a person, to be "born of parents" must mean that the child "originates or derives" from the parents. As such, so the argument goes, Section 301's reference to children "born . . . of parents" necessarily means "biologically related" *to both parents* because a child cannot "originate or derive" from parents unless the child is biologically related to *both*. Defs.' Mem. at 20. This simply does not follow.

6

First, it is simply *not* the case that a child born using ART does not "originate" or "derive from" the parents who used that technology to bring her into the world, nor that a child cannot be "brought forth as offspring" unless two married individuals have contributed their genetic material to her. The *OED*—the same dictionary Defendants cite—also defines "born" as "to come into existence" (Def. I.A.), and it further states that "of" "[i]ndicat[es] the ***agent or doer***" (Def. IV.A.), thus supporting an interpretation of "born of . . . parents" as meaning *coming into existence* because of the parents. Defs.' Mem. at 19.

Second, the definition of "of" does not support Defendants' argument. Defendants define "of" as indicating the "person from . . . whom . . . is acquired or sought." Defs.' Mem. at 19. This is the very definition of intentional parenthood, as is the case here. Other dictionaries' definitions support this conclusion. *See*, *e.g*., Of, *Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/of (defining "of" as "used as a function word to indicate the cause, motive, or reason"); Of, *Lexico.com*, https://www.lexico.com/en/definition/of (defining "of" as "[i]ndicating an association between two entities, typically one of belonging, in which the first is the head of the phrase and the second is something associated with it").

Defendants' next argument, that the statute's reference to "parents" (as plural) means biological relation to ***both*** parents, also fails. No law or case stands for that proposition, and the two cases Defendants cite are inapposite. Defendants misleadingly

7

assert the Second Circuit found a biological requirement in Section 301 in *Colaianni v.*
*I.N.S.*, 490 F.3d 185 (2d Cir. 2007). This is not true and ignores the Second Circuit's
central holding in *Jaen*. In *Colaianni*, the plaintiff was not only not biologically related
to either parent, neither of them were his legal or intended parents at the time of his
birth; instead, Colaianni was born outside the United States and was then *adopted* by a
married couple *after* he immigrated as a child. 490 F.3d at 186-87. The court reasoned
that Colaianni could not acquire citizenship "at birth" because when he was born
abroad, he was not the child of either parent, and that his subsequent adoption did not
retroactively confer citizenship upon birth. *Id.* at 187 Likewise, *McDowell v. Shinseki*
addresses an entirely different statutory scheme and text, concerning eligibility for
veterans benefits. Dicta about what it means to be "born of parents" in that context is
simply irrelevant to the Court's analysis of the INA. 23 Vet. App. 207, 211 (2009).

Finally, statutory language should be viewed against the background of the
common law. *See Neder v. United States*, 527 U.S. 1, 21 (1999) ("[W]here Congress
uses terms that have accumulated settled meaning under the common law, a court must
infer, unless the statute otherwise dictates, that Congress means to incorporate the
established meanings of these terms." (quotes and alterations omitted)). The common
law meaning of "parent" rests on the presumption that, where a child is born into a
marriage, the married individuals are the child's parents irrespective of their biological
relationship to the child. *See, e.g., Michael H. v. Gerald D.*, 491 U.S. 110, 124 (1989)

(describing the "presumption of legitimacy" as "a fundamental principle of the common law"); *Jaen*, 899 F.3d at 189 ("New York state—like many states—incorporates the common law presumption of parentage into its domestic relations law."); *see also* BLACK'S LAW DICTIONARY (11th ed. 2019) (defining the term "parent" as "[t]he lawful father or mother of someone").[2]

### C.    Defendants' Policy Does Not Warrant Deference.

The State Department's policy of requiring a biological relationship between a child and both married parents is not entitled to *Skidmore* deference. An agency's statutory interpretation lacking the force of law is entitled to *Skidmore* deference only

---

[2] Defendants' emphasis on the concept of *jus sanguinis* citizenship does not aid them. Although the original Latin literally refers to the "right of blood," *see* BLACK'S LAW DICTIONARY (11th ed. 2019), it is telling that only Section 309 refers to a required "blood relationship" while Section 301 does not. Instead of adopting this Roman concept, the INA created a distinct statutory framework for "derivative citizenship." *See* Kari E. Hong, *Removing Citizens: Parenthood*, *Immigration Courts*, *and Derivative Citizenship*, 28 Geo. Immigr. L.J. 277, 289 (2014) ("Derivative citizenship is the means by which U.S. citizenship is conferred to foreign-born children when certain conditions are met."); *see also*, *e.g.*, *Morales-Santana*, 137 S. Ct. at 1688 (speaking of "Morales–Santana's claim to *citizenship derived* from the U.S. citizenship of his father"); 8 FAM § 301.9-2 (discussing U.S. laws regarding "acquisition of derivative citizenship"). Although "[d]erivative citizenship for non-marital children of American fathers requires demonstration of a 'blood relationship,'" such "statutory requirement [] does not apply to marital children." Kristin A. Collins, *Illegitimate Borders: Jus Sanguinis Citizenship and the Legal Construction of Family*, *Race*, *and Nation*, 123 Yale L.J. 2134, 2235 n.353 (2014). The government's citation of *Miller* and *Nguyen* is misleading. Those cases concern the blood relationship requirement of Section 309, not derivative citizenship under Section 301. *See Miller v. Albright*, 523 U.S. 420, 436 (1998); *Nguyen v. I.N.S.*, 533 U.S. 53, 62 (2001).

to the extent it is persuasive. *Buckner v. Florida Habilitation Network, Inc.*, 489 F.3d 1151, 1155 (11th Cir. 2007) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). The State Department's policy is not a persuasive—or even permissible—interpretation of Section 301 for all of the reasons discussed above. Congress unambiguously omitted any biology requirement from Section 301, and Defendants cannot read one back in.

The government's arguments for *Skidmore* deference fail for several additional reasons. Defendants' claim that the FAM reflects a longstanding interpretation of Section 301 is baseless. The FAM itself does not purport to interpret Section 301, and provides no citation or explanation for its assertion that the law "always contemplated the existence of a blood relationship between the child and the parent(s) through whom citizenship is claimed." 8 FAM § 301.4-1(D)(1); *see Scales*, 232 F.3d at 1165-66. The State Department's shifting interpretations undercut any claim that the interpretation of Section 301 underlying the challenged policy is "longstanding." For example, the *Dvash-Banks* court noted that the State Department had changed its interpretation of Section 301 as recently as 2014 when it redefined born "in wedlock" and adopted a policy deeming certain birth mothers who are a legal but not genetic parent of a child nevertheless to be the child's "biological" parent. 2019 WL 911799 at *5.

Defendants' two remaining rationales for the policy do not survive scrutiny. First, there is no issue of fraud in this case. There is no doubt that S.M.-G. is the legal

child of Mize and Gregg, or that they brought her into the world through an ART process that used Gregg's genetic material and an anonymously donated egg. Compl. ¶¶ 41-42.

Defendants' assertion that documentation of a parent-child relationship is potentially subject to fraud is belied by the State Department's routine reliance on documentary evidence of parentage. The FAM lists birth certificates, marriage licenses, and affidavits—as well as "entry/exit stamps in passports, airline/hotel receipts, travel orders, etc."—as types of evidence that may be relevant to a showing of paternity, and only lists DNA tests last. 8 FAM § 304.1-4; *see also* 8 FAM § 304.2-1(c) (directing that due to "the expense, complexity, and logistical delays inherent in parentage testing, genetic testing should be used only if other credible proof does not establish" parentage). In any case, reliable DNA testing was not available when the INA was passed in 1952,[3] or when Defendants settled on their allegedly "longstanding interpretation" of Section 301.[4] Whatever the value of genetic testing may be in some cases where a parent/child relationship is in genuine doubt, a blanket

---

[3] *See*, *e.g*., Jill Adams, *Paternity testing: blood types and DNA*, NATURE EDUCATION 1(1):146 (2008) ("The process of DNA fingerprinting was developed by Alec Jeffreys in 1984, and it first became available for paternity testing in 1988.").

[4] Although Congress has amended the INA numerous times, the language of Section 301(c) is identical to Section 301(a)(3) as originally adopted in 1952. *See* Immigration and Nationality Act, Pub. L. No. 82-414, § 301(a)(3), 66 Stat. 163 (1952); *see also* Pub. L. No. 95-432, sec. 3, 92 Stat 1046 (1978).

rule requiring all same-sex couples to be biologically related to their own children is neither lawful nor required to prevent fraud.

Second, Defendants' purported concern about having to rely on a multitude of foreign parentage laws goes nowhere. The INA recognizes the validity of parent-child relationships established under foreign law. For example, Congress specifically defined "child" for purposes of the same Title that includes Sections 301 and 309 as including a child whose parentage was established under the law of either the child's or the father's residence or domicile "whether in the United States or elsewhere." 8 U.S.C. § 1101(c)(1); *see also* 8 U.S.C. § 1101(b)(1)(C) (also recognizing parentage established under foreign law). Defendants suggestion that recognition of legal but non-biological parent-child relationships is a radical, foreign idea ignores not just the INA, but the presumption of legitimacy found in both the common law and the law of every state.

## V.    PLAINTIFFS HAVE STATED A DUE PROCESS CLAIM.

Defendants ignored Mize and Gregg's marriage, deemed S.M.-G. not to be a marital child, and treated Mize and S.M.-G. as legal strangers. In short, Defendants treated the Mize-Gregg family as if it were not a family at all. Defendants' conduct demeaned Plaintiffs, violated Mize and Gregg's fundamental right to marry, and violated all Plaintiffs' fundamental rights to be recognized as a family, including the rights to family privacy, integrity, and association. In alleging Defendants' improper

conduct, Plaintiffs have sufficiently pled that Defendants violated Plaintiffs' Fifth Amendment due process rights.

### A. Defendants' Refusal To Recognize S.M.-G. As A Marital Child Infringes Mize And Gregg's Liberty Interests In Their Marriage.

The right to marry is a fundamental right protected under constitutional due process guarantees. *See*, *e.g.*, *Obergefell v. Hodges*, 135 S. Ct. 2584, 2601-02 (2015); *United States v. Windsor*, 570 U.S. 744, 769-70 (2013); *Loving v. Virginia*, 388 U.S. 1, 12 (1967). Any federal law, regulation, or policy that treats the marriages of same-sex couples as "second-class marriages . . . raises a most serious question under the Constitution's Fifth Amendment." *Windsor*, 570 U.S. at 771. Government conduct that deprives married same-sex couples and their children of the "constellation of benefits" tied to marriage demeans, stigmatizes, and denies liberty and equality to those families. *Obergefell*, 135 S. Ct. at 2601-02; *Pavan v. Smith*, 137 S. Ct. 2075, 2078 (2017).

### 1. Birth citizenship under Section 301 is one of the "constellation of benefits" of marriage.

Congress specifically created separate requirements for the acquisition of U.S. citizenship at birth for children born to married people and unmarried people. Section 301 applies to marital children and Section 309 applies to non-marital children. *See Morales-Santana*, 137 S. Ct. at 1686-87; *Retuya v. Sec'y Dep't of Homeland Sec.*, 412 Fed. App'x 185, 187 (11th Cir. 2010) (contrasting Sections 301 and 309).

Citizenship under Section 301, *without the added burdens imposed by Section*

13

*309*, is indisputably part of the "constellation of benefits" Congress associated with marriage. *Obergefell*, 135 S. Ct. at 2601; *Pavan*, 137 S. Ct. 2078. Under the statutory scheme, all children born abroad to married, U.S.-citizen parents one of whom "has had a residence in the United States or one of its outlying possessions[] prior to the birth of [the child]" are treated alike—they all are citizens at birth. 8 U.S.C. § 1401(c). Only when a child is born to unmarried parents does the INA direct any investigation of a biological relationship between a parent and a child. 8 U.S.C. § 1409(a)(1). No such investigation of a child's biological history is required for marital children.

It would be unconstitutional for the government to expressly exclude married same-sex couples and their children from the benefits of Section 301. *Obergefell*, 135 S. Ct. at 2601; *Pavan*, 137 S. Ct. 2078. So too is it unconstitutional for the government to bring the same exclusion in through the backdoor by requiring both married parents to have a biological relationship to the child—a requirement that Plaintiffs and families like theirs can never satisfy. *Id*.

But that is exactly what Defendants have tried to do. Defendants' policy ignores the carefully drawn lines reflecting Congress's determination that, when a child's parents are married prior to the child's birth, no further investigation of parentage is required. Defendants' policy improperly targets the children of married same-sex couples, and in particular the children of male same-sex couples, who, under the policy, can never qualify for citizenship under Section 301. Compl. ¶ 28.

14

Defendants cite only to sections of the FAM, a collection of their own policies, to support their misinterpretation and misapplication of Sections 301 and 309. The only two courts of appeals to have considered Defendants' interpretation have rejected it. *See Jaen*, 899 F.3d at 184; *Solis-Espinoza*, 401 F.3d at 1091; *Scales*, 232 F.3d at 1161. The Court should reject Defendants' circular attempt to justify dismissal of a challenge to their unconstitutional policy by referencing the very policy in question. Defendants' policy "impose[s] restrictions and disabilities" on same-sex couples' valid marriages, instructing them and their children "that their marriage is less worthy than the marriages of others." *Windsor*, 570 U.S. at 768, 775. It is therefore unconstitutional. *Id.*

### 2. Applying Section 309 and denying S.M.-G.'s birth citizenship disregards Mize and Gregg's marriage and Mize's parentage.

By refusing to apply Section 301 and treating S.M.-G. as a non-marital child, Defendants refuse to recognize Mize and Gregg as a married couple and the parentage rights and protections that flow from their marriage. Compl. ¶¶ 1, 4, 8, 42, 51-55, 60, 75-78. Plaintiffs' Complaint outlines in more than sufficient detail the ways in which Defendants infringed upon Mize and Gregg's fundamental rights by treating them as "unmarried for the purpose of federal law, thus diminishing the stability and predictability of basic personal relations the State has found it proper to acknowledge and protect." *Windsor*, 570 U.S. at 772; *see*, *e.g.*, Compl. ¶¶ 52-55.

Moreover, Defendants ignore S.M.-G.'s legal relationship with one of her two

parents. Mize and Gregg intentionally brought S.M.-G. into this world, and they are not only her legal parents, but also the only parents she has ever known. Compl. ¶¶ 41, 45, 48-50, 57-58. S.M.-G.'s married parents are U.S. citizens, and as the child of their marriage, her citizenship at birth flows from each of them. *See* Compl. ¶¶ 40, 48-50, 57. Defendants' myopic focus on her biological relationship with Gregg undermines both the law and reality of this married family.

**B.    Defendants Infringed Upon All Plaintiffs' Liberty And Fundamental Rights To Create And Be A Family.**

In addition to pleading violations of Mize and Gregg's fundamental right to marry, Plaintiffs have sufficiently pled that Defendants' policies and unlawful conduct infringe on their fundamental rights to form and be a family. "[C]hoices concerning . . . family relationships, procreation, and childrearing," are "among the most intimate that an individual can make." *Obergefell*, 135 S. Ct. at 2599. These rights are intertwined with the right to marry to make "a unified whole: The right to 'marry, establish a home and bring up children.'" *Obergefell*, 135 S. Ct. at 2600 (quotes and alteration omitted). This collective set of fundamental rights is violated by laws, regulations, and policies that "humiliate[] . . . children . . . being raised by same-sex couples and . . . make[] it even more difficult for the children to understand the integrity and closeness of their own family." *Windsor*, 570 U.S. at 772. Defendants' insertion of a biology requirement into Section 301 to deny birth citizenship to children like S.M.-G. violates the

16

fundamental right to form a family of married same-sex parents and their children.

The Complaint further details how Defendants have standardized the invasion of protected liberty interests of Plaintiffs' family and other families like them in violation of the Fifth Amendment. The fundamental right to decisional privacy protects both parents' and children's interests in keeping private the intimate decisions about procreation that helped to create the family. *See Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 851 (1992). Congress directs Defendants to respect the decisional privacy of all families with married U.S.-citizen parents by applying Section 301(c) to any person whose parents were lawfully married when the person was born. Defendants ignore Congress's direction. While Defendants claim to presume that "[c]hildren born in wedlock are . . . the issue of that marriage," they do not extend that presumption to families like Plaintiffs' family. Compl. ¶¶ 29-31.

### C. Defendants Fail To Identify A Compelling State Interest That The Challenged Policies Are Narrowly Tailored To Serve, And Defendants' May Not Re-Define Plaintiffs' Fundamental Rights Out Of Existence.

Substantive due process "forbids the government to infringe . . . 'fundamental' liberty interests *at all*, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling interest." *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997). At this stage, Plaintiffs' plausible allegations that Defendants have violated their fundamental rights will withstand challenge unless a compelling state

interest is clear from the face of the Complaint. No such interest exists.

Instead, Defendants try to redefine Plaintiffs' fundamental rights out of existence. Nominally proceeding under *Glucksberg*, Defendants argue that Plaintiffs' claims should be recharacterized as asserting only "an individual's right to successfully apply for a CRBA or a U.S. passport on behalf of a child who is born abroad and is not the citizenship-conferring individual's biological child." Defs.' Mem. at 14-15. Defendants' efforts to narrow and mischaracterize the well-established rights at issue are improper, and a tactic previously rejected by the Supreme Court "with respect to the right to marry and the rights of gays and lesbians." *Obergefell*, 135 S. Ct. at 2602.

Plaintiffs have properly pled facts that show a violation of Mize and Gregg's liberty interests in their marriage, Compl. ¶ 73, "security in their parent-child bonds," *id*. ¶ 72, and in "mak[ing] decisions about how to bring children into their family and concerning the care, custody, and control of their child," *id*. ¶ 74. Plaintiffs have identified additional protected liberty interests that Defendants have invaded including "family privacy, integrity, and association," *id*. ¶ 72, "parental autonomy," *id*. ¶ 74, and "decisional privacy as it pertains to their right to form a family and parent children," *id*. ¶ 75. Defendants' attempts to dismiss Plaintiffs' due process claims and their alternative argument to apply only rational basis review both fail. And in any case, Defendants have failed to articulate a sufficiently legitimate interest to survive even rational basis scrutiny. *See Romer v. Evans*, 517 U.S. 620, 632 (1996); *Heller v.*

*Doe*, 509 U.S. 312, 321 (1993).

## VI.   PLAINTIFFS HAVE STATED AN EQUAL PROTECTION CLAIM.

### A.   Defendants Treat Marriages Of Same-Sex Couples As Second-Class.

Defendants violate the Fifth Amendment's equal protection guarantee by routinely misclassifying the children of married same-sex couples as non-marital children and ignoring non-biological parents when evaluating the birthright citizenship of such couples' children. Because Defendants' policies "identify a subset of state-sanctioned marriages and make them unequal," *Windsor*, 570 U.S. at 772, Defendants denied Plaintiffs equal protection. As with the now-stricken Defense of Marriage Act, Defendants' policies "deprive same-sex couples of the benefits and responsibilities that come with the federal recognition of their marriages . . . impos[ing] a disadvantage, a separate status, and so a stigma upon all who enter into same-sex marriages made lawful by the unquestioned authority of the States." *Id*. at 770.

The Supreme Court's decision in *Pavan v. Smith* is instructive. Under Arkansas law, a woman's different-sex spouse would be named as a parent on her child's birth certificate, even when the spouse had no biological relationship to the child; but a woman's same-sex spouse would *not* be named on a child's birth certificate. *Pavan*, 137 S. Ct. at 2076-77. This "differential treatment infringes *Obergefell*'s commitment to provide same-sex couples 'the constellation of benefits that the States have linked to marriage.'" *Id*. at 2077 (quoting *Obergefell*, 135 S. Ct at 2601). Because birth

19

certificates were "use[d] . . . to give married parents a form of legal recognition that is not available to unmarried parents," the disparate treatment of same-sex couples was unconstitutional. *Id.* at 2078-79.

Defendants' insertion of a biology requirement into Section 301 similarly favors the marriages of different-sex couples, presuming valid marital and parental relationships between the couple and their children, while presuming the invalidity of those same relationships between same-sex couples and their children. Defendants subject every married same-sex couple to an invasive inquiry about how their children came into the world, and each of their children begins the process of establishing their citizenship at a disadvantage due to the circumstances of their birth; the same is not true for the children of different-sex couples. Compl. ¶¶ 31-32, 85-86.[5] This differential treatment cannot be justified by any governmental interest. The Complaint therefore states a claim that Defendants have denied Plaintiffs equal protection.

## B. Defendants' Policy Is Subject To Heightened Scrutiny.

Defendants' policy discriminates against Plaintiffs Mize and Gregg on the basis of sexual orientation and sex, both of which are "suspect classifications," and against all Plaintiffs with regards to their exercise of fundamental rights and protected liberty

---

[5] Attachment A to the Motion should be disregarded as not properly before the Court, but even considered, it does not disprove Plaintiffs' equal protection allegations.

interests. *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995). It also discriminates against S.M.-G. because of the circumstances of her birth and her parents' sexual orientation and sex. Defendants' policy is therefore subject to heightened scrutiny. *See United States v. Castillo*, 899 F.3d 1208, 1213 (11th Cir. 2018) ("When the classification infringes fundamental rights or concerns a suspect class, we apply heightened scrutiny." (citation omitted)); *see also Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 312 (1976). Classifications based on sexual orientation are subject to heightened scrutiny. *See SmithKline Beecham Corp. v. Abbott Labs.*, 740 F.3d 471, 484 (9th Cir. 2014); *Windsor v. United States*, 699 F.3d 169, 185 (2d Cir. 2012), *aff'd*, 570 U.S. 744 (2013).[6] Likewise, classifications based on sex are subject to heightened scrutiny. *See United States v. Virginia*, 518 U.S. 515, 524 (1996); *Latta v. Otter*, 771 F.3d 456, 479-90 (9th Cir. 2014) (Berzon, J., concurring). Moreover, penalizing children for the circumstances of their birth by denying them important rights and protections is "illogical and unjust" and subject to heightened scrutiny. *Weber v. Aetna Casualty & Surety Co.*, 406 U.S. 164, 175-76 (1972).

---

[6] The level of scrutiny applicable to sexual orientation discrimination is an open question in this Circuit. *See Morrissey v. United States*, 871 F.3d 1260, 1270 (11th Cir. 2017). The Eleventh Circuit previously observed that other circuits had declined to apply heightened scrutiny, *see Lofton v. Sec'y of Dep't of Children & Family Servs.*, 358 F.3d 804, 818 (11th Cir. 2004), but that occurred before *Obergefell* and *Windsor*, which require that heightened scrutiny be applied to classifications based on sexual orientation. *See SmithKline*, 740 F.3d at 484.

### C.    Plaintiffs Have Sufficiently Pleaded Discriminatory Intent.

Defendants' policy discriminates against married same-sex couples and their children on the bases of sexual orientation, sex, and the circumstances of their children's birth. That is enough to conclude that Plaintiffs have alleged a plausible equal protection claim. "Certain classifications . . . in themselves supply a reason to infer antipathy." *Pers*. *Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 272 (1979); *see also Obergefell*, 135 S. Ct. at 2604 (teaching that the "long history of disapproval" of same-sex relationships creates a background norm that state actions that deny "same-sex couples . . . all the benefits afforded to opposite-sex couples" likely violate constitutional equal protection principles); *U.S. Dep't of Agric. v. Moreno*, 413 U.S. 528, 537 (1973). This includes classifications based on sex, *Feeney*, 442 U.S. at 273, and sexual orientation, *Massachusetts v. U.S. Dep't of Health & Human Servs*., 682 F.3d 1, 11 (1st Cir. 2012).

Moreover, Plaintiffs have plausibly pled intentional discrimination by alleging, on information and belief, that "the children of married different-sex parents are not routinely classified as non-marital children and subjected to the citizenship requirements of Section 309, even when those children are not, in fact, biologically related to both parents." Compl. ¶¶ 32, 85 (same); *accord id*. ¶ 29 ("only the children of different-sex couples benefit from [the] presumption [of legitimacy]"). These allegations are even more plausible in light of (a) consular officers' unfettered

22

discretion to decide whether "doubt [has] arise[n] that the U.S. citizen 'parent' is biologically related to the child," (b) consular officer's reluctance "to ask different-sex parents who are identified as legal parents (e.g., on a birth certificate) if their child is, in fact, biologically related to both legal parents," and (c) Plaintiffs' own observations of different-sex couples receiving CRBAs and passports after only a perfunctory review. *Id*. ¶¶ 30, 31, 53; 8 FAM § 301.4-1(D)(1)(d).

Although Defendants repeatedly assert that the biological requirement is applied to same-sex and different-sex couples in the same way, this assertion mischaracterizes the discrimination complained of here. First, the requirement that a child be biologically related to both married parents necessarily excludes the children of same-sex couples.[7] Defendants cannot brush aside that categorical exclusion. Defendants' insertion of a biology requirement ties the marital protection of birth citizenship to a couple's ability to procreate biologically. Yet court after court has made clear that procreative capacity cannot be used to justify differential treatment between same-sex

---

[7] Although the FAM makes an exception in the relatively rare case of a non-genetic gestational surrogate who is also a legal parent and declares her to be a "biological" parent, that exception does not change the analysis. The FAM accepts a woman who gives birth to her spouse's genetic child as that child's mother by redefining "biological" in a unique way to include such relationships—an admission that eligibility under Section 301 can be based on a legal and *de facto* parent-child relationship that is not genetic. The FAM's inconsistent treatment of genetic and non-genetic parents is another reason why it is arbitrary and unlawful, not a reason to dismiss Plaintiffs' challenge at the pleading stage.

couples and different-sex couples. *See*, *e.g.*, *Latta*, 771 F.3d at 472-73 ("In extending the benefits of marriage only to people who have the capacity to procreate, while denying those same benefits to people who already have children, [the states] materially harm and demean same-sex couples and their children."); *Bostic v. Schaefer*, 760 F.3d 352, 381-83 (4th Cir. 2014). Second, Defendants cannot ignore the well-pleaded factual allegations that in practice the policy is applied differently to same-sex couples than to different-sex couples. *See*, *e.g.*, Compl. ¶¶ 32, 85. Defendants' disagreement at most creates a factual issue to be resolved on the merits.

Finally, Defendants' claim that the FAM is "facially neutral," Defs.' Mem. at 11, does not justify dismissal of Plaintiffs' equal protection claims. As discussed *supra*, Defendants' injection of a biology requirement into Section 301 inherently subjects married same-sex couples to less favorable treatment and is not facially neutral. Even if the Court nonetheless evaluated the challenged provisions of the FAM as if they were facially neutral, they would "violate[] the Equal Protection Clause if discrimination was a substantial or motivating factor in the government's enactment of the law, and if the government cannot show that the law would have been enacted in the absence of any discriminatory motive." *I.L. v. Alabama*, 739 F.3d 1273, 1278 (11th Cir. 2014). Plaintiffs have sufficiently pled that discrimination against married, same-sex couples (male couples in particular), was just such a factor here. Compl. ¶¶ 26-33. The challenge to Plaintiffs' equal protection claims at the pleading stage thus fails.

## VII.   PLAINTIFFS HAVE STATED AN APA CLAIM.

The INA empowers this Court to issue a *de novo* declaration that S.M.-G. is a U.S. citizen, *see Dvash-Banks*, 2019 WL 911799, at *8, and in accordance with that declaration, to require Defendants to issue her a U.S. passport. However, because Plaintiffs seek additional relief beyond that provided by § 1503(a), Defendants' request to dismiss Plaintiffs' APA claims should be denied.

The APA empowers this Court to "hold unlawful and set aside" improper agency action. 5 U.S.C. § 706(2). The Court may exercise that authority to issue a judgment declaring the State Department's policy and practice of classifying the children of married same-sex couples as "born out of wedlock" to be contrary to the INA, and may enjoin the State Department from denying the children of married same-sex couples citizenship under Section 301 on that basis. *See* Compl. at 32 (Prayer for Relief ¶¶ C, D). Defendants assertion that such relief would be unwarranted is both incorrect and, at this stage, beside the point. Plaintiffs' entitlement to this type of judgment and declaratory relief in addition to § 1503(a) relief is a merits issue.

## VIII.  CONCLUSION

Plaintiffs' Complaint properly states claims for a declaration of citizenship pursuant to 8 U.S.C. § 1503, for violation of Plaintiffs' due process and equal protection rights, and for relief under the APA. Defendants' Motion should be denied in its entirety. Plaintiffs request leave to amend if any aspect of the Motion is granted.

Dated: November 25, 2019

**Susan Baker Manning***
**Eleanor Pelta***
MORGAN LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone: (202) 739-3000
susan.manning@morganlewis.com
eleanor.pelta@morganlewis.com

**John A. Polito***
**Christie P. Bahna***
MORGAN LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco, California 94105
Telephone: (415) 442-1000
john.polito@morganlewis.com
christie.bahna@morganlewis.com

**Jacquelynne M. Hamilton***
MORGAN LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, Pennsylvania 19103
Telephone: (215) 963-5000
jacquelynne.hamilton@
    morganlewis.com

*Admitted *pro hac vice*

Respectfully submitted,

By: /s/ Tara Borelli
**Tara Borelli**
Attorney Bar No. 265084
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
Southern Regional Office
730 Peachtree Street NE, Suite 640
Atlanta, Georgia 30308
Telephone: (404) 897-1880
tborelli@lambdalegal.org

**Karen L. Loewy***
**Omar Gonzalez-Pagan***
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
120 Wall Street, 19th Floor
New York, New York 10005
Telephone: (212) 809-8585
Facsimile: (212) 809-0055
kloewy@lambdalegal.org
ogonzalez-pagan@lambdalegal.org

**Aaron C. Morris***
IMMIGRATION EQUALITY
40 Exchange Place, Suite 1300
New York, New York 10005-2744
Telephone: (212) 714-2904
amorris@immigrationequality.org

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

| | |
|---|---|
| JAMES DEREK MIZE, et al., | Civil Action No. 1:19-cv-3331-MLB |
| *Plaintiffs*, | |
| v. | |
| MICHAEL R. POMPEO, et al., | |
| *Defendants*. | |

## CERTIFICATE OF COMPLIANCE

I certify that the Memorandum in support of Plaintiffs' Opposition to Defendants' Motion to Dismiss the Complaint has been prepared in compliance with LR 5.1 because it is typed in Times New Roman (14 point) font, and its top margin is not less than one and one-half (1½) inches and left margin is not less than one (1) inch.

By: /s/ Tara Borelli
**Tara Borelli**
Attorney Bar No. 265084
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
Southern Regional Office
730 Peachtree Street NE, Suite 640
Atlanta, Georgia 30308
Telephone: (404) 897-1880
tborelli@lambdalegal.org