# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| JAMES DEREK MIZE and JONATHAN DANIEL GREGG, individually and on behalf of their minor child, S.M.-G., | : : : : : | |
| Plaintiffs, | : : | |
| v. | : : | Civ. No. 1:19-CV-03331-MLB |
| MICHAEL R. POMPEO, in his official capacity as Secretary of State, and THE U.S. DEPARTMENT OF STATE, | : : : : : | |
| Defendants. | : | |

# DEFENDANTS' REPLY IN SUPPORT
# OF DEFENDANTS' MOTION TO DISMISS

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................1

ARGUMENT ....................................................................2

  I.   Plaintiffs Have Not Stated a Claim for a Declaration of Citizenship Pursuant to 8 U.S.C. § 1503(a). ........................................2

      A.   Section 1409(a)'s Explicit Biological-Relationship Requirement Does Not Imply Section 1401 Excludes Such a Requirement. ...........2

      B.   Defendants' Interpretation Is Reasonable. ...........................5

      C.   Defendants Interpretation Is Entitled to *Skidmore* Deference. . ...........9

  II.   Plaintiffs Fail to State a Cognizable Equal Protection Claim. ....................11

  III.   Plaintiffs Fail to State a Cognizable Due Process Claim. ...........................12

  IV.   Plaintiffs Fail to State a Cognizable APA Claim. .......................................15

CONCLUSION .................................................................15

# TABLE OF AUTHORITIES

## Cases

*Ablang v. Reno*,
   52 F.3d 801 (9th Cir. 1995) ................................................................................4

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...........................................................................................11

*Chavez v. Martinez*,
   538 U.S. 760 (2003) ...........................................................................................12

*Colaianni v. I.N.S.*,
   490 F.3d 185 (2d Cir. 2007) ............................................................................6, 7

*Doe v. Moore*,
   419 F.3d 1337 (11th Cir. 2005) .........................................................................13

*Gross v. FBL Fin. Servs., Inc.*,
   557 U.S. 167 (2009) .............................................................................................5

*Haves v. City of Miami*,
   52 F.3d 918 (11th Cir. 1995) .............................................................................12

*Jaen v. Sessions*,
   899 F.3d 182 (2d Cir. 2018) ............................................................................7, 8

*Lindh v. Murphy*,
   521 U.S. 320 (1997)..............................................................................................5

*Lujan v. Nat'l Wildlife Fed'n*,
   497 U.S. 871 (1990)............................................................................................15

*Madsen v. Women's Health Ctr., Inc.*,
   512 U.S. 753 (1994)...................................................................................15

*Michael H. v. Gerald D.*,
   491 U.S. 110 (1989).................................................................................8, 9

*Miller v. Albright*,
   523 U.S. 420 (1998)...............................................................................5, 14

*Neder v. United States*,
   527 U.S. 1 (1999).........................................................................................8

*Nguyen v. INS*,
   533 U.S. 53 (2001)......................................................................................14

*United States v. Marguet-Pillado*,
   560 F.3d 1078 (9th Cir. 2009) ...................................................................5

*United States v. Mead Corp.*,
   533 U.S. 218 (2001)...................................................................................10

*Washington v. Glucksberg*,
   521 U.S. 702 (1997)...................................................................................12

## **Statutes**

Immigration and Nationality Act, 66 Stat. 163 (1952)..............................3

INA Amendments of 1986
   Pub. L. No. 99-653, 100 Stat. 3655.........................................................4

8 U.S.C. § 1401 ................................................................................ *passim*

8 U.S.C. § 1401(c) ........................................................................... *passim*

8 U.S.C. § 1401(g) .................................................................... 2, 7, 8

8 U.S.C. § 1409(a) ......................................................................6

8 U.S.C. § 1431 .........................................................................13

8 U.S.C. § 1503 .........................................................................15

8 U.S.C. § 1503(a) ......................................................................2

## **Other Authorities**

8 FAM 304.3-1(b) ................................................................. 10, 11

# INTRODUCTION

Plaintiffs frame Defendants' interpretation of the Immigration and Nationality Act (INA) to require a biological relationship as the U.S. Department of State's discriminatory effort to disregard the equal dignity afforded same-sex couples under the law.  This contention is clearly wrong, in several respects.

First, Plaintiffs are wrong to assert that Defendants refuse to recognize the Mize-Gregg marriage, Pls.' Br. at 1.  Defendants recognize the Mize-Gregg marriage as a marriage under law entitled to the same treatment as opposite-sex marriages. Plaintiffs also wrongly assert that Defendants disregarded the Mize-Gregg marriage in making a determination regarding S.M.-G.'s citizenship, treating them as "legal strangers," Pls.' Br. at 1-2, 12, 15.  Plaintiffs were subject to the same policies as all opposite-sex couples who do not meet the biological-relationship requirement— including those who rely on assisted reproductive technology (ART) to have children. The applicable citizenship law recognizes the legal relationship between S.M.-G. and both of her parents—a relationship that gives her an alternative path to citizenship. Finally, Plaintiffs are wrong in framing Defendants' interpretation of the INA as affording opposite-sex couples the benefit of a presumption of biological parentage and denying such benefit to same-sex couples, Pls.' Br. at 2, 5-9.  What matters is not just whether a couple are the "parents" of a child—which Defendants do not dispute

here—but whether the child was "born of" those parents, which is determined by biology for *all* couples.

Once the Complaint is stripped of the foregoing mischaracterizations, Plaintiffs have failed to state a plausible claim on all counts.   The Complaint should be dismissed accordingly.

## ARGUMENT

### I.   Plaintiffs Have Not Stated a Claim for a Declaration of Citizenship Pursuant to 8 U.S.C. § 1503(a).

#### A.   Section 1409(a)'s Explicit Biological-Relationship Requirement Does Not Imply Section 1401 Excludes Such a Requirement.

As set forth in Defendants' opening motion, the general rules for acquiring United States citizenship for persons born outside the United States, such as S.M.-G., are set forth in the INA.  Defs.' Br. at 2-4.  In sum, Plaintiffs contend that the Department unlawfully evaluated S.M.-G.'s Consular Report of Birth Abroad (CRBA) and passport applications under § 1401(g) and § 1409 of the INA (the latter of which concerns children born "out of wedlock"), instead of § 1401(c), which provides for the citizenship of "a person born outside of the United States and its outlying possessions of parents both of whom are citizens of the United States and one of whom has had a residence in the United States or one of its outlying possessions, prior to the birth of such person."  Plaintiffs specifically challenge the Department's

2

long-standing interpretation that §1401(c)'s reference to "born of … parents" requires a biological relationship between the child and both parents.  They cite § 1409(a)'s explicit biological-relationship requirements as a reason not to construe § 1401 as containing such requirement.  *See* Pls.' Br. at 2-7.  Plaintiffs' inference is unwarranted.

As an initial matter, when Congress passed the INA in 1952, § 1409(a)'s predecessor did not contain language explicitly requiring a biological relationship.  At that point, § 301(a)(3) and § 301(a)(7) of the statute—the predecessors to § 1401(c) and (g), respectively—both applied to children "born …of parents" where either both parents were U.S. citizens (§ 301(a)(3)) or one parent was a U.S. citizen and the other an alien (§ 301(a)(7)).  INA § 301(a)(3), (7), 66 Stat. 163, 235-36.  And § 309(a)—the predecessor to § 1409(a)—provided that § 301(a)(3) and (7) "shall apply as of the date of birth to a child born out of wedlock … , if the paternity of such child is established while such child is under the age of twenty-one years by legitimation."  *Id.* § 309(a), 66 Stat. at 238.

Thus, when the INA was enacted, the juxtaposition between the original versions of § 1401(c) and (g) and § 1409(a) did not suggest that Congress envisioned a biological connection as more (or less) necessary for children born outside of a marriage than for those born within a marriage.  To the contrary, § 301(a)(3) and (7)'s

3

conferral of citizenship on a child "born … of parents" remains the same requirement as in § 1401 today—and, for the reasons Defendants have explained, requires a biological relationship between the child and both parents.  But when a child is born outside a marriage, the child's parentage necessarily has to be "established" through some process.  *See, e.g.*, *Ablang v. Reno*, 52 F.3d 801, 805 (9th Cir. 1995).  In that context, § 309(a) served to determine who the child's "parents" were for the purpose of applying § 301(a)(3) and (7) to the child.

Congress amended § 309(a) in 1986, adding the explicit "blood relationship" language and requiring that the relationship be "established by clear and convincing evidence."  INA Amendments of 1986, Pub. L. No. 99-653, § 13, 100 Stat. 3655, 3657.  In other words, as explained further below, it added a requirement for establishing parentage under that provision.[1]  But that amendment does nothing to suggest that § 1401 excludes a biological-relationship requirement.  That is true for two reasons.  First, Congress did not alter the operative "born … of parents" language of § 1401 when amending § 1409(a), nor has it done so since.  The Supreme Court has recognized that "'negative implications raised by disparate provisions are strongest' when the provisions were 'considered simultaneously when the language raising the

---

[1] As explained in Defendants' opening brief, the term "out of wedlock" in §1409 concerns the marital status of a child's biological parents, and its application is not a failure to recognize the validity of a same-sex marriage.  *See* Defs.' Br. at 12-13.

4

implication was inserted.'" *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175 (2009); *see also Lindh v. Murphy*, 521 U.S. 320, 330 (1997) (describing this as a "familiar rule"). Thus, to the extent § 1409(a) sheds light on the meaning of § 1401, the version of § 1409(a) that is most relevant is the one contemporaneously adopted in 1952—and that provision, like § 1401, states a biological-relationship requirement implicitly rather than explicitly.

Second, Congress's addition of the "blood relationship" language to § 1409(a) did not create a biological-relationship requirement where none existed before. It simply made that requirement more explicit in the circumstances addressed by that provision and required the relationship to be "established by clear and convincing evidence." The original § 309(a) already required a "blood (biological) relationship between the alleged father and the child at birth." *United States v. Marguet-Pillado*, 560 F.3d 1078, 1082 (9th Cir. 2009); *see also Miller v. Albright*, 523 U.S. 420, 435 (1998) (opinion of Stevens, J.). Thus, even if the contrast between modern-day § 1401 and modern-day § 1409(a) could shed light on what Congress meant when it enacted § 1401's operative language in the original INA, modern-day § 1409(a) does not imply—any more than the original § 309(a) did—that children born within a marriage may claim citizenship through parents to whom they are not biologically related. Section 1409(a) simply serves, as the original § 309(a) did, to identify the "parents"—

5

specifically the biological father—of a child born outside of a marriage, for the purpose of applying "[t]he provisions of [§ 1401]" to that child, 8 U.S.C. § 1409(a).

### B.   <u>Defendants' Interpretation Is Reasonable.</u>

Plaintiffs also contend that Defendants' "definitional argument" with respect to Defendants' interpretation of the phrase "born of parents" is unsound because the phrase can also be read to favor Plaintiffs' alternate interpretation.  *See* Pls.' Br. at 6-9.  Plaintiffs' discussion on this point demonstrates a fundamental point—a reasonable person could read the language either way.  The textual plausibility of Defendants' interpretation is sufficient to sustain Defendants' position on this point, particularly when other indicia of the statute's meaning bolster Defendants' interpretation.

Plaintiffs go on to mischaracterize Defendants' reading of the Second Circuit's decision in *Colaianni v. I.N.S.*, 490 F.3d 185 (2d Cir. 2007).  *See* Pls.' Br. at 8-9.  Defendants noted that other courts have interpreted the phrase "born … of parents" consistent with the State Department's construction.  Defs.' Br. at 20.  Plaintiffs argue summarily that the Second Circuit did not find a biological-relationship requirement in § 1401 in *Colaianni*.  Pls.' Br. at 8.  A fair reading of the case, however, renders Plaintiffs' challenge ineffective.

*Colaianni* squarely relies on *both* the "at birth" requirement *and* the biological-relationship requirement.  490 F.3d at 186-187.  The Second Circuit considered the

6

plaintiff's argument that Congress implied that there was no biological-relationship requirement for a person to claim citizenship under § 1401(c).  The Second Circuit ultimately rejected the argument, reasoning that the plaintiff's position "is contradicted by the plain language of the statue, which refers to persons 'born … *of* parents both of whom are citizens of the United States' and pertains only to the acquisition of citizenship 'at birth.'"  *Colaianni*, 490 F.3d at 187 (citations omitted) (emphasis in original).

Also contrary to Plaintiffs' assertion, Defendants do not "ignore" the Second Circuit's holding in *Jaen v. Sessions*, 899 F.3d 182 (2d Cir. 2018).  Indeed, we noted in our opening brief that "[t]he Second Circuit has also interpreted the phase 'born of parents' in the INA to include the common law meaning of 'parents' and, thus, 'the longstanding presumption of parentage based on marriage.'"  Defs.' Br. at 20, n. 2 (citing *Jaen*, 899 F.3d at 188).  More importantly, *Colaianni* and *Jaen* are not inconsistent with one another because the Second Circuit's analysis in *Jaen* did not address the meaning of "born of."

In *Jaen*, the Second Circuit considered whether the plaintiff acquired U.S. citizenship, under a predecessor to § 1401(g), by virtue of his mother's marriage to a U.S. citizen at the time of his birth abroad.  899 F.3d at 184.  The court ignored the statute's "born of" language.  Instead, it believed "the sole question" was whether the

7

husband of the plaintiff's mother was the child's "parent" at the time of birth, even

though he was undisputedly not the plaintiff's biological father.  *Id.* at 185.   In

answering that question, the court reasoned that "'where Congress uses terms that have

accumulated settled meaning under the common law, a court must infer, unless the

statute otherwise dictates, that Congress means to incorporate the established meaning

of these terms.'"  *Id.* at 187-188 (quoting *Neder v. United States*, 527 U.S. 1, 21

(1999)).  The court accordingly concluded that the INA's reference to "parents" should

be read to "incorporate[] the common law meaning of" that term and thus "the

longstanding presumption of parentage based on marriage."  *Id.* at 188.  Applying that

presumption, the court held that the man who was married to the plaintiff's mother at

the time of his birth should be treated as his "parent" for purposes of § 1401(g).  *Id.*

Plaintiffs' reliance on *Jaen* is, therefore, misplaced.  Defendants recognized Mr.

Mize and Mr. Gregg as S.M.-G.'s parents.  But the INA does not confer citizenship on

every child with a legal parent who meets the other statutory requirements.  Rather,

§ 1401 confers citizenship only on children "born …*of* parents" who meet the

statutory requirements.

The traditional presumption of legitimacy has no bearing on that question,

because—as the Supreme Court explained in *Michael H. v. Gerald D.*, 491 U.S. 110

(1989)—the presumption is not a rule of evidence concerning the determination of a

child's biological father.  Rather, it is "a substantive rule of law' providing that,

"except in limited circumstances, [it is] *irrelevant* … whether a child conceived

during, and born into, an existing marriage was begotten by someone other than the

husband."  *Id.* at 119 (plurality opinion).  Whether or not that common-law rule is

relevant to determining who is a child's legal "parents" are for purposes of applying

§ 1401, it is emphatically irrelevant to determining whether the child was "born … of"

his legal parents, since that determination turns on precisely those biological facts that

the presumption renders irrelevant.

### C.    Defendants' Interpretation Is Entitled to *Skidmore* Deference.

Plaintiffs attempt to dispense with Defendants' *Skidmore* deference argument

by asserting that the State Department's interpretation is not a persuasive

interpretation of § 1401.  *See* Pls.' Br. at 10.  But, as discussed in our motion and

above, Defendants' interpretation is a reasonable reading of the statute.  Because

Defendants reasonably construe the statute and have done so consistently over time,

Defendants' interpretation is entitled to deference.

Plaintiffs go on to assert that the State Department's "shifting interpretations"

of the operative language undermine Defendants' position now.  *See* Pls.' Br. at 10.  It

is true that the State Department reconsidered what kinds of relationships may be

considered to have a biological connection; but the interpretation being challenged—

the necessity of a biological relationship—has remained consistent over time. Specifically, Plaintiffs reference the State Department's 2014 policy change, set forth in what is now 8 FAM 304.3-1(b).  *See* Pls.' Br. at 10.  Contrary to Plaintiffs' characterization, this change did not "redefine[] born 'in wedlock.'"  It simply recognized that gestation is a form of biological relationship.  And, in so doing, the State Department continued to observe the statute's longstanding biological-relationship requirement.

Plaintiffs next seek to minimize the State Department's mission to stem citizenship fraud as a basis for maintaining a biological-relationship requirement in § 1401(c).  *See* Pls.' Br. at 10-11.  Plaintiffs effectively seek to substitute their own judgment as to how to best address fraud concerns for that of the agency.  Plaintiffs do not contest that the State Department has "specialized experience" in this area.  Nor are they in a position to challenge the agency's need for uniformity in addressing its fraud concerns.  Concerns with citizenship fraud in this specific context cannot reasonably be disputed.  Thus, Defendants' specialized experience and desire for a uniform approach to addressing these concerns is entitled to deference.  *See United States v. Mead Corp.*, 533 U.S. 218, 234 (2001).

## II.   Plaintiffs Fail to State a Cognizable Equal Protection Claim.

Plaintiffs' equal protection claim that Defendants engage in differential treatment of same-sex couples and opposite-sex couples, Pls.' Br. at 19-20, is meritless on its face.  The Complaint presents unfounded speculation that the State Department's biological-relationship requirement does not apply to opposite-sex couples.  Plaintiffs allege no facts to ground this conclusory allegation, and fail to provide any meaningful response to Defendants' point that the CRBA application form requires *all* couples to identify whether they are biologically related to the child. Plaintiffs suggest that they have witnessed opposite-sex couples "receiving CRBAs and passports after only a perfunctory review," Pls.' Br. at 23, but the "obvious alternative explanation," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), for this may very well be that those couples indicated on the CRBA application form that both parents were biologically related to the child.  Plaintiffs cannot sustain their claim on the "sheer possibility that [Defendants] have acted unlawfully." *Id.*

Plaintiffs also fail to provide any meaningful response to Defendants' point that the State Department's policy, 8 FAM 304.3-1(b), explicitly provides for citizenship at birth to children born abroad to same-sex female couples under § 1401.  Particularly in light of this, Plaintiffs cannot plausibly claim the State Department's policy of requiring a biological relationship is intended to discriminate against same-sex

11

couples.  Categorically, the State Department requires a biological relationship be

established between the U.S. citizen parent(s) conferring citizenship and the child,

*regardless* of the legal parents' sexual orientation.  Defendants' policy makes no

"suspect classifications" and is, therefore, not subject to heightened scrutiny.  *See*

*Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995).

## III.  Plaintiffs Fail to State a Cognizable Due Process Claim.

Plaintiffs also fail to state a cognizable due process claim because they fail to

identify a fundamental right allegedly infringed upon by Defendants.  Plaintiffs assert

that the right to marry is a fundamental constitutional right entitling them to the

"constellation of benefits" of marriage, including the ability to confer citizenship at

birth under § 1401.  Pls.' Br. at 13-16.  But, as discussed above, the State Department

recognizes same-sex marriages, just as it does opposite-sex marriages.  The Complaint

alleges no plausible facts establishing that the State Department's policy treats same-

sex couples or their children differently in CRBA or passport determinations.

Moreover, as Defendants have explained, the law requires a much more specific

description of the claimed right at issue, which here would be to successfully apply for

a CRBA or U.S. passport on behalf of a child who is born abroad and is not the

citizenship-conferring parent's biological child.  Defs.' Br. at 13-16 (discussing

*Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997) and *Chavez v. Martinez*, 538

U.S. 760, 775–76 (2003)).  Plaintiffs do not cite to any authority finding such an asserted liberty interest to be a fundamental constitutional right.  Furthermore, even if the Court were to construe the asserted liberty interest as the right to a presumption of biological parentage, for the reasons discussed above, any such presumption would not be dispositive in the context of CRBA and U.S. passport determinations.

In addition, under the INA and State Department policy, same-sex couples have available to them the same paths to citizenship for their children born abroad as do opposite-sex couples using ART.  There are circumstances in which a same-sex couple can meet the biological-relationship requirements of § 1401 to confer citizenship upon their children.  For example, had Mr. Gregg met the residency requirement, or had Mr. Mize met the biological-relationship requirement, S.M.-G. would have met § 1401's requirements.  Further, there is an alternative path to citizenship for children of *all* couples whose parents do not meet the applicable biological-relationship requirement under the Child Citizenship Act of 2000, 8 U.S.C. § 1431.  These paths to citizenship foster, rather than foreclose, Plaintiffs' "rights to create and be a family," Pls.' Br. at 16.

Because Plaintiffs have failed to identify any fundamental liberty interest, the State Department's biological-relationship requirement is subject to the "highly deferential" rational basis review.  *Doe v. Moore*, 419 F.3d 1337, 1345 (11th Cir.

13

2005).  Without further discussion or analysis, Plaintiffs conclude that "Defendants have failed to articulate a sufficiently legitimate interest to survive even rational basis scrutiny."  Pls.' Br. at 18.  But Plaintiffs merely allege that there is no rational basis to limit the application of § 1401 to the children of opposite-sex couples, when no such policy even exists.  Defs.' Br. at 16.  Beyond this, Defendants' detailed discussion of the statutory requirements and history firmly support the rational basis of its long-standing biological-relationship requirement for U.S. citizenship.  *See* Defs. Br. at 1-6, 14.  Plaintiffs do not even dispute that the "governmental interest" in "assuring that a biological parent-child relationship exists" is an interest duly recognized by the Supreme Court.  Defs.' Br. at 21 (citing *Nguyen v. INS*, 533 U.S. 53, 62 (2001); *Miller*, 523 U.S. at 436).  Indeed, even if the Court were to find that Plaintiffs have identified a fundamental liberty interest at stake, Defendants' long-standing policy is narrowly tailored to serve compelling governmental interests in ensuring that requirements for U.S. citizenship are met.

IV.   **Plaintiffs Fail to State a Cognizable APA Claim.**

Plaintiffs assert that their APA claim should stand because they seek relief beyond that provided by § 1503(a).  Pls.' Br. at 25.  Specifically, Plaintiffs seek a sweeping, universal injunction under the APA addressing the State Department's policy as a whole.  *Id.* (citing Compl. at 32 (Prayer for Relief ¶¶ C, D)).  As

demonstrated in our motion to dismiss, Defs.' Br. at 18-19, such a remedy is unavailable as a matter of law due to its legally overbroad aim at "wholesale improvement" of the agency's policy, *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990), and the fact that it exceeds the scope necessary to provide relief to Plaintiffs, *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994).  Plaintiffs do not address these limits on injunctive relief under the APA or explain why they should not apply in this instance.  Moreover, exclusive relief to address Plaintiffs' alleged injury—denial of a right or privilege of U.S. citizenship—is available under 8 U.S.C. § 1503.  Plaintiffs' APA claim must be dismissed accordingly.

## **CONCLUSION**

For the foregoing reasons, and those set forth in Defendants' memorandum in support of Defendants' motion to dismiss, the Court should dismiss the Complaint in its entirety.

Dated: December 20, 2019          Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

ANTHONY J. COPPOLINO
Deputy Director

/s/ Alexis J. Echols
ALEXIS J. ECHOLS
United States Department of Justice
Civil Division, Federal Programs
Branch
1100 L Street NW, Room 11304
Washington, D.C. 20005
Telephone: (202) 305-8613
Facsimile: (202) 616-8460
E-mail: alexis.j.echols@usdoj.gov

*Attorneys for Defendants*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| JAMES DEREK MIZE and JONATHAN DANIEL GREGG, individually and on behalf of their minor child, S.M.-G.,                         Plaintiffs,<br><br>v.<br><br>MICHAEL R. POMPEO, in his official capacity as Secretary of State, and THE U.S. DEPARTMENT OF STATE,<br><br>                Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:    Civ. No. 1:19-CV-03331-MLB |

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that the documents to which this certificate is attached have been prepared with one of the font and point selections approved by the Court in LR 5.1B for documents prepared by computer.

<u>/s/ Alexis J. Echols</u>
ALEXIS J. ECHOLS
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW, Room 11304
Washington, D.C. 20005
Telephone: (202) 305-8613
Facsimile: (202) 616-8460
E-mail: alexis.j.echols@usdoj.gov
