**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| JAMES DEREK MIZE and JONATHAN DANIEL GREGG, individually and on behalf of their minor child, S.M.-G., | : |
| | : |
| | : |
| | : |
| | : |
| Plaintiffs, | : |
| v. | : |
| | : Civ. No. 1:19-CV-03331-MLB |
| MICHAEL R. POMPEO, in his official capacity as Secretary of State, and THE U.S. DEPARTMENT OF STATE, | : |
| | : |
| | : |
| | : |
| | : |
| Defendants. | : |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT
AND CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................1

LEGAL BACKGROUND ....................................................................2

I.   Statutory Framework ...............................................................2

II.   Agency Interpretation ............................................................5

FACTUAL BACKGROUND................................................................9

LEGAL STANDARD........................................................................12

ARGUMENT ...................................................................................14

I.   The State Department Appropriately Interprets § 1401 To Require A
     Biological Relationship Between A Child And Her Legal Parents. ............14

     A. Section § 1409(a)'s Explicit Requirement Of A Biological
        Relationship Does Not Undermine § 1401's Implicit
        Requirement. ...................................................................14

     B. The Common Law Presumption Of Parentage Does Not Invalidate
        The Statutory Biological-Relationship Requirement. ........................19

     C. The Court Should Defer To The Department's Interpretation. ..........21

     D. Other Courts' Decisions Do Not Preclude Judgment In Defendants'
        Favor.................................................................................27

     E. The Department's Interpretation Does Not Raise Constitutional
        Concerns.............................................................................29

          1. Defendants' Interpretation Does Not Present A Due Process
             Concern. .................................................................30

2.  Defendants' Interpretation Does Not Present An Equal
    Protection Concern....................................................................34

CONCLUSION ...........................................................................................37

# TABLE OF AUTHORITIES

## Cases

*Ablang v. Reno*,
  52 F.3d 801 (9th Cir. 1995) ...................................................................15

*Alzokari v. Pompeo*,
  2019 WL 3805083 (E.D.N.Y. Aug. 13, 2019) ....................................24

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)...............................................................................13

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986)...............................................................................13

*Colaianni v. INS*,
  490 F.3d 185 (2d Cir. 2007) ................................................................28

*Commodity Futures Trading Comm'n v. Schor*,
  478 U.S. 833 (1986)...............................................................................18

*Comparelli v. Republica Bolivariana De Venezuela*,
  891 F.3d 1311 (11th Cir. 2018) .......................................................2, 3

*Dvash-Banks v. Dep't of State*,
  No. 2:18-cv-00523, 2019 WL 911799 (C.D. Cal. Feb. 21, 2019).......................29

*Engquist v. Or. Dep't of Agr.*,
  553 U.S. 591 (2008)...............................................................................36

*Federal Express Corp. v. Holowecki*,
  552 U.S. 389 (2008)...............................................................................22

*Fiallo v. Bell*,
  430 U.S. 787 (1977) .................................................................... 24, 36

*Fullman v. Graddick*,
  739 F.2d. 553 (11th Cir. 1984) ............................................................13

*Gross v. FBL Fin. Servs., Inc.*,
  557 U.S. 167 (2009) ...........................................................................16

*Heller v. Doe*,
  509 U.S. 312 (1993) .................................................................... 36, 37

*Jaen v. Sessions*,
  899 F.3d 182 (2d Cir. 2018) ........................................................ 27, 28

*Kasten v. Saint-Gobain Performance Plastics, Corp.*,
  563 U.S. 1 (2011) ........................................................................ 22, 26

*Lindh v. Murphy*,
  521 U.S. 320 (1997) ...........................................................................16

*Lofton v. Sec'y of Dep't of Children and Family Servs.*,
  358 F.3d 804 (11th Cir. 2004) ............................................................13

*Lorillard v. Pons*,
  434 U.S. 575 (1978) ...........................................................................17

*Martin v. Social Security Admin, Comm'r*,
  903 F.3d 1154 (11th Cir. 2018) .........................................................22

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986) ...........................................................................13

*Michael H. v. Gerald D.*,
  491 U.S. 110 (1989) ...........................................................................20

*Miller v. Albright,*
    523 U.S. 420 (1998)............................................................. 3, 16, 32, 33

*Nguyen v. INS,*
    533 U.S. 53 (2001)................................................................................33

*NLRB v. Bell Aerospace Co.,*
    416 U.S. 267 (1974)...................................................................... 18, 19

*Obergefell v. Hodges,*
    135 S. Ct. 2584 (2015)................................................................. 31, 33

*Pavan v. Smith,*
    137 S. Ct. 2075 (2017)................................................................. 31, 33

*Personnel Adm'r of Mass. v. Feeney,*
    442 U.S. 256 (1979)............................................................................36

*Rogers v. Bellei,*
    401 U.S. 815 (1971)........................................................................3, 32

*Scales v. INS,*
    232 F.3d 1159 (9th Cir. 2000) .................................................... 28, 29

*Sessions v. Morales-Santana,*
    132 S. Ct. 1678 (2017)..........................................................................4

*Skidmore v. Swift & Co.,*
    323 U.S. 134 (1944)...................................................................... 21, 22

*Solis-Espinoza v. Gonzales,*
    401 F.3d 1090 (9th Cir. 2005) .................................................... 28, 29

*Tex. R. Co. v. United States,*
    632 F.2d 392 (5th Cir. 1980) .............................................................25

*United States v. Marguet-Pillado*,
   560 F.3d 1078 (9th Cir. 2009) .............................................................16

*United States v. Mead Corp.*,
   533 U.S. 218 (2001)................................................................ 21, 22, 25

*United States v. Windsor*,
   570 U.S. 744 (2013).........................................................................31

*Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.*,
   429 U.S. 252 (1977).........................................................................35

*Walker v. Darby*,
   911 F.2d 1573 (11th Cir. 1990) .........................................................13

*Washington v. Glucksberg*,
   521 U.S. 702 (1997).........................................................................33

*Zivotofsky ex rel. Zivotofsky v. Kerry*,
   135 S. Ct. 2076 (2015).............................................................. *passim*

## Statutes

Immigration and Nationality Act (1952)
   66 Stat. 163..................................................................................14

Immigration and Nationality Act Amendments of 1986,
   Pub. L. No. 99-653, 100 Stat. 3566 ...................................................15

5 U.S.C. § 706..................................................................................12

8 U.S.C. § 1104(a) .............................................................................5

8 U.S.C. § 1401..............................................................................1, 3

8 U.S.C. § 1401(c) .................................................................... 1, 23, 28

8 U.S.C. § 1409(a) ................................................................................17

8 U.S.C. § 1503 ............................................................................ 11, 12

8 U.S.C. § 1503(a) ................................................................... 1, 2, 29

22 U.S.C. § 211a .................................................................................5

## **Regulations**

22 C.F.R. § 50.7 .................................................................................5

22 C.F.R. § 51.40 ...............................................................................20

22 C.F.R. §§ 51.21 .............................................................................5

## **INTRODUCTION**

In this lawsuit, Plaintiffs James Derek Mize and Jonathan Daniel Gregg, individually and on behalf of their minor child, S.M.-G. (collectively, Plaintiffs), challenge decisions by the U.S. Embassy in London—acting under the authority of the Department of State and the Secretary of State—to decline to issue a Consular Report of Birth Abroad (CRBA) and a U.S. passport to S.M.-G.  Plaintiffs claim Defendants' actions violated the equal protection and due process guarantees of the Fifth Amendment of the Constitution.  Plaintiffs also claim Defendants violated the Administrative Procedure Act (APA).  Finally, Plaintiffs seek a declaration of citizenship for S.M.-G. pursuant to the Immigration and Naturalization Act (INA), 8 U.S.C. § 1503(a).

Plaintiffs now move for partial summary judgment on their claim under 8 U.S.C. § 1503(a), arguing that S.M.-G. acquired citizenship at birth pursuant to 8 U.S.C. § 1401(c).  Defendants oppose Plaintiffs' motion and hereby cross-move for partial summary judgment on the claim.  The Court should enter judgment in favor of Defendants here because the Department's interpretation of 8 U.S.C. § 1401 to require a biological relationship between a child born abroad and her U.S. citizenship-conferring parent(s) is reasonable and entitled to deference.  The Court should thus apply this interpretation when considering Plaintiffs' claim

pursuant to 8 U.S.C. § 1503(a).  In doing so, the Court should conclude that S.M.-G. did not acquire U.S. citizenship automatically at birth.

To acquire citizenship under § 1401(c) via Mr. Mize and Mr. Gregg, S.M.-G. would need to have a biological as well as a legal relationship with both parents. This has been the Department's consistent, longstanding interpretation of the operative statutory language.  This requirement is not met here.  Accordingly, § 1401(c) does not operate to confer citizenship upon S.M.-G.  Thus, Plaintiffs' claim pursuant to 8 U.S.C. § 1503(a) must fail.  The Court should deny Plaintiffs' motion for partial summary judgment on the claim and enter judgment in favor of Defendants accordingly.

## LEGAL BACKGROUND

### I.    Statutory Framework

There are two "universally accepted" ways to establish citizenship which reflect genuine links between the country and the individual—*jus soli* and *jus sanguinis*.  *See Comparelli v. Republica Bolivariana De Venezuela*, 891 F.3d 1311, 1322 (11th Cir. 2018).  *Jus soli* means "right of land or ground—conferral of nationality based on birth within the national territory." Aleinikoff et al., *Immigration and Citizenship: Process and Policy* 15 (6th ed. 2008).  *Jus sanguinis*

literally means "right of blood—the conferral of nationality based on descent, irrespective of the place of birth." *Id.*

The Fourteenth Amendment provides that "[a]ll persons born … in the United States, and subject to the jurisdiction thereof, are citizens of the United States[.]"  U.S. Const. amend. XIV, § 1.  Since the Amendment's enactment, "the transmission of American citizenship from parent to child, *jus sanguinis*, has played a role secondary to that of the transmission of citizenship by birthplace, *jus soli*." *Miller v. Albright*, 523 U.S. 420, 478 (1998) (Breyer, J., dissenting) (citing *Rogers v. Bellei*, 401 U.S. 815, 828 (1971)).  While a foreign-born child's acquisition of citizenship through a U.S. citizen parent may be referred to colloquially as "birthright citizenship," *see, e.g.*, Compl. at ¶¶ 33, 84, 99 ( ECF No. 1), "the [Supreme] Court has specifically recognized the power of Congress *not* to grant a United States citizen the right to transmit citizenship by descent." *Rogers*, 401 U.S. at 830 (emphasis added); *see also Miller*, 523 U.S. at 424 (1998) ("Persons not born in the United States acquire citizenship by birth only as provided by Acts of Congress.").

The general rules for children born abroad to acquire United States citizenship at birth are set forth in 8 U.S.C. § 1401, which "establish[es] a range of residency and physical-presence requirements calibrated primarily to the parents'

3

nationality and the child's place of birth." *Sessions v. Morales-Santana*, 132 S. Ct. 1678, 1686 (2017).  Sections 1401(c), 1401(g), and 1409(a) provide requirements for U.S. citizenship relevant to the claims raised in this lawsuit.  Section 1401(c) provides for the citizenship of "a person born outside of the United States and its outlying possessions of parents both of whom are citizens of the United States and one of whom has had a residence in the United States or one of its outlying possessions, prior to the birth of such person."  Section § 1401(g) provides for the citizenship of

> [a] person born outside the geographical limits of the United States and its outlying possessions of parents one of whom is an alien, and the other a citizen of the United States who, prior to the birth of such person, was physically present in the United States or its outlying possessions for a period or periods totaling not less than five years, at least two of which were after attaining the age of fourteen years[.]

Section 1409(a), addresses specifically "children born out of wedlock." Section 1409(a) states that "[t]he provisions of " § 1401(c) and (g) (as well as other provisions of § 1401 that are not relevant here)

> shall apply as of the date of birth to a person born out of wedlock if—
>
> (1) a blood relationship between the person and the father is established by clear and convincing evidence,

4

(2) the father had the nationality of the United States at the time of the person's birth,

(3) the father (unless deceased) has agreed in writing to provide financial support for the person until the person reaches the age of 18 years, and

(4) while the person is under the age of 18 years—

(A) the person is legitimated under the law of the person's residence or domicile,

(B) the father acknowledges paternity of the person in writing under oath, or

(C) the paternity of the person is established by adjudication of a competent court.

As discussed further below, the Department applies § 1409 when the child's biological parents are not married to each other at the time of the child's birth.

## II.   <u>Agency Interpretation</u>

The Secretary of State is "charged with" administering the INA to determine the "nationality of a person not in the United States."  8 U.S.C. § 1104(a).  When a child is born overseas, the child's parents may apply to one of the State Department's consulates for a CRBA that reflects the Department's determination that the child acquired citizenship at birth.  22 C.F.R. § 50.7.  The Secretary of State is also authorized to issue U.S. passports.  22 U.S.C. § 211a.  If applying for a passport domestically, applicants may appear before a designated passport agent in the United States for adjudication.  22 C.F.R. §§ 51.21, 51.28.  CRBAs and

passports "have the same force and effect as proof of United States citizenship as certificates of naturalization or of citizenship issued by the Attorney General or by a court having naturalization jurisdiction." *Id.* § 2705.

To allow passport adjudicators and consular officers to apply the relevant statutory provisions in a consistent and evenhanded way, the State Department has interpreted the provisions in its Foreign Affairs Manual (FAM).[1] *Cf. Zivotofsky ex rel. Zivotofsky v. Kerry*, 135 S. Ct. 2076, 2082 (2015) (discussing the FAM as a reflection of State Department policy). The FAM explains the Department's understanding that, "[s]ince 1790," "[a]t least one biological parent" of a child born abroad "must have been a U.S. citizen when the child was born" in order for that parent to "transmit[] U.S. citizenship at birth" to the child. 8 FAM § 301.4-1(B); *see also id.* § 301.4-1(D)(1)(a) ("The laws on acquisition of U.S. citizenship through a parent have always contemplated the existence of a blood relationship between the child and the parent(s) through whom citizenship is claimed."). Genetic relationships are the usual form of biological relationship between parents and children. 8 FAM § 301.4-1(D)(1)(c). The Department also recognizes gestation by a legal mother as a type of biological relationship, even without a genetic relationship. *Id.* The Department regards the citizenship of a surrogate

---

[1] The current public version of the FAM is available at https://fam.state.gov/.

who gestates a child as "irrelevant to the child's citizenship analysis."  8 FAM
§ 304.3-2(a).

    For the purpose of determining citizenship, the Department applies § 1409
when there is no biological connection between *both* parents and the child for
whom citizenship is sought, regardless of the parents' legal marital status, sex, or
sexual orientation.  8 FAM 304.1-2.  By incorporating the physical-presence
requirements of § 1401 by reference, § 1409 allows a U.S. citizen father to transmit
U.S. citizenship to a foreign-born child under the same terms as § 1401.  Where, as
here, the transmission of U.S. citizenship relies upon a biological connection to
only one U.S. citizen parent, the Department applies the physical presence
requirements of § 1401(g).  Were both of the child's biological parents U.S.
citizens, on the other hand, the Department would have applied § 1401(c).

    Although the law of the jurisdiction where a child is born may sometimes
create a presumption that children born during the marriage of their legal parents
are "the issue of that marriage," 8 FAM § 301.4-1(D)(1)(d), the FAM explains that
any such "presumption is not determinative in citizenship cases, … because an
actual biological relationship to a U.S. citizen parent is required."  *Id.*; *see also id.*
§ 301.4-1(D)(1)(a) ("It is not enough that the child is presumed to be the issue of
the parents' marriage by the laws of the jurisdiction where the child was born.

7

Absent a blood relationship between the child and the parent on whose citizenship the child's own claim is based, U.S. citizenship is not acquired.").

The FAM requires agents "to investigate carefully" whenever a "doubt arises that [a] U.S. citizen" through whom a child claims citizenship—including a legal parent of the child—"is biologically related to the child." 8 FAM § 301.4-1(D)(1)(d). Such doubts may arise, for example, "when either of the alleged biological parents was married to another person during the relevant time period" or when "the child was conceived at a time when the alleged father had no physical access to the mother." *Id.* They also arise whenever a "child was born through surrogacy or other forms of assisted reproductive technology." *Id.*

These rules apply to opposite-sex couples exactly as they do to same-sex couples. Thus, "[a] child born abroad to a surrogate, whose genetic parents are a U.S. citizen mother and anonymous sperm donor," can acquire citizenship only under § 1409(c)—not under § 1401—"regardless of whether the woman is married and regardless of whether her spouse is the legal parent of the child at the time of birth." 8 FAM § 304.3-2(c). Likewise, "[a] child born abroad to a surrogate, whose genetic parents are a U.S. citizen father and anonymous egg donor," can acquire citizenship only if the father satisfies the requirements of § 1409(a) and

§ 1401(g), "regardless of whether the man is married and regardless of whether his spouse is the legal parent of the child at the time of birth."  8 FAM § 304.3-2(f). A same-sex couple's use of surrogacy or other forms of assisted reproductive technology (ART) may more readily be apparent to agents than an opposite-sex couple's use of ART.  But the State Department applies the rules to all couples evenhandedly—not just those for whom a passport adjudicator or consular officer can readily ascertain that ART was used.  For example, the State Department's CRBA application form requires parents to indicate whether they were married to the child's other biological parent when the child was born.  CRBA Application, Defs. Ex. A at 4.

## FACTUAL BACKGROUND

Plaintiffs James Derek Mize and Jonathan Daniel Gregg are United States citizens.  J. Mize Passport, Pls. Ex A (ECF No. 45-1); J. Gregg Passport, Pls. Ex. B (ECF No. 45-2).  Mr. Mize was born and raised in the United States.  Pls. Ex. A. Mr. Gregg was born in England to a mother who is a U.S. citizen and a father who is a citizen of the United Kingdom.  Decl. of J. Gregg (Gregg Decl.) at ¶ 3, 4 (ECF No. 46).  Mr. Gregg was raised in the United Kingdom, though he has made frequent trips to the United States to visit.  *Id.* at ¶ 3.  Plaintiffs Mize and Gregg met in 2014 in New York, where Mr. Mize was living at the time and Mr. Gregg

was visiting.  *Id.* at ¶ 5; Decl. of J. Mize (Mize Decl.) at ¶ 6 (ECF No. 45).  Mr.

Gregg moved to the United States later that year and, in 2015, Mr. Mize and Mr.

Gregg were married in New York.  Gregg Decl. at ¶ 5, 6; Mize Decl. at ¶ 6; Mize-

Gregg Marriage Certificate, Pls. Ex. E (ECF No. 45-5).

Plaintiffs Mize and Gregg later had a child conceived via ART.  Surrogacy

Consent Form, Pls. Ex. H (ECF No. 45-8); S.M.-G. Birth Certificate, Pls. Ex. I

(ECF No. 45-9).  In 2017, an embryo created using Mr. Gregg's sperm and an

anonymous donor's egg was implanted successfully in a gestational surrogate in

London.  Mize Decl. at ¶ 18, 19; Gregg Decl. at ¶ 12, 13.  In the summer of 2018,

Plaintiff S.M.-G. was born in the United Kingdom.  Pls. Ex. I.  The Central

London Family Court issued a Parental Order declaring that S.M.-G. is to be

treated in law as the child of the married parents, Mr. Mize and Mr. Gregg.

Central London Family Court Parental Or., Pls. Ex. K (ECF No. 45-11).  The

General Registrar Office issued a birth certificate shortly thereafter, identifying

Mr. Mize and Mr. Gregg as the child's legal parents.  Pls. Ex. I.

In the fall of 2018, Mr. Mize and Mr. Gregg returned to the United States

with S.M.-G.  Compl. at ¶47.  The family currently resides in Decatur, Georgia.

Compl. at ¶47.  In the spring of 2019, Mr. Mize applied to the Social Security

Administration (SSA) for a Social Security card for S.M.-G. and the application

was denied.  Mize Decl. at ¶¶ 32, 33.  SSA staff notified Mr. Mize that additional evidence of S.M.-G.'s U.S. citizenship was required.  *Id.*

Mr. Mize and Mr. Gregg then appeared at the U.S. Embassy in London to apply for a CRBA and a U.S. passport for S.M.-G.  Mize Decl. at ¶ 35; Gregg Decl. at ¶ 24.  Their applications on behalf of S.M.-G. were denied.  Ltr. from Dep't of State (Apr. 24, 2019), Ex. L (ECF No. 45-12).  The Department of State's denial letter stated that S.M.-G.'s application for a CRBA was denied because "[i]t has been determined that based upon the information provided . . . , the biological U.S. citizen parent was not physically present in the United States for five years prior to the child's birth, at least two years of which were after the parent reached the age of fourteen, as required under the provisions of section 301(g) of the [INA]."  *Id.*

On July 23, 2019, Plaintiffs filed this lawsuit, raising four claims.  Count I seeks a declaration of citizenship for S.M.-G. under the INA, 8 U.S.C. § 1503.  Compl. at ¶¶ 62-69.  Count II alleges that the Department's evaluation of S.M.-G.'s CRBA and passport applications under § 1401(g) and § 1409, instead of § 1401(c), violates the Due Process Clause of the Fifth Amendment.  Compl. at ¶¶70-81.  Count III alleges that the Department has a policy of routinely deeming children born abroad to same-sex married couples to be "born out of wedlock," in

violation of the equal protection guarantees of the Fifth Amendment.  Compl. at

¶¶82-90.  Lastly, Count IV seeks judicial review under the APA, 5 U.S.C. § 706, of

the Department's denial of the CRBA and passport applications.  Compl. at ¶¶91-

101.

On November 4, 2019, Defendants filed a motion to dismiss the Complaint

in its entirety for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  Defs.

Mot. to Dismiss (ECF No. 32).  The motion to dismiss has been fully briefed and is

currently pending before the Court.  *See id.*, Pls. Opp. to Mot. to Dismiss (ECF No.

35); Defs. Reply in Supp. of Mot. to Dismiss (ECF No. 42).

On January 17, 2020, Plaintiffs filed a motion for partial summary judgment

on Count I of the Complaint, seeking a declaration of citizenship for S.M.-G.

pursuant to 8 U.S.C. § 1503.  Defendants come now in response to Plaintiffs'

motion for partial summary judgment and cross-move for summary judgment on

the claim.

## **LEGAL STANDARD**

Summary judgment is proper "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is

entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A fact is material

when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Lofton v. Sec'y of Dep't of Children and Family Servs.*, 358 F.3d 804, 809 (11th Cir. 2004).  A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248. The purpose of summary judgment is to pierce the pleadings and to assess the proof in order to determine whether there is a genuine need for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see also Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

A party's reliance upon the allegations or denials in the pleadings is insufficient to withstand a motion for summary judgment.  *Walker v. Darby*, 911 F.2d 1573, 1576-77 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 242).  Rather, the party must set forth specific facts showing there is a genuine issue for trial.  *Id.* "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice . . . ."  *Id.* at 1577.  Conclusory, vague, and general allegations about violations of law based on a party's subjective beliefs are likewise insufficient. *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984).  Absent such a showing of specific facts, judgment shall be entered against the non-moving party.  Fed. R. Civ. P. 56(e).

## ARGUMENT

### I.   The State Department Appropriately Interprets § 1401 To Require A Biological Relationship Between A Child And Her Legal Parents.

#### A.   Section § 1409(a)'s Explicit Requirement Of A Biological Relationship Does Not Undermine § 1401's Implicit Requirement.

Plaintiffs assert that Congress necessarily intended to exclude a biological relationship requirement from § 1401 because the current version of § 1409(a) expressly creates such a requirement. Pls. Mot. for Partial Summ. J. at 11-12. The explicit biological-relationship requirement of § 1409(a) does not provide a sound basis to construe § 1401 as lacking such a requirement. Thus, Plaintiffs' inference is unwarranted.

As an initial matter, when Congress passed the INA in 1952, § 1409(a)'s predecessor did not contain language explicitly requiring a biological relationship. At that point, § 301(a)(3) and § 301(a)(7) of the statute—the predecessors to § 1401(c) and (g), respectively—both applied to children "born . . . of parents" where either both parents were U.S. citizens (§ 301(a)(3)) or one parent was a U.S. citizen and the other an alien (§ 301(a)(7)). INA § 301(a)(3), (7), 66 Stat. 163, 235-36. And § 309(a)—the predecessor to § 1409(a)—provided that § 301(a)(3) and (7) "shall apply as of the date of birth to a child born out of wedlock … , if the

14

paternity of such child is established while such child is under the age of twenty-one years by legitimation." *Id.* § 309(a), 66 Stat. at 238.

Thus, when the INA was enacted, the juxtaposition between the original versions of § 1401(c) and (g) on the one hand and § 1409(a) on the other did not suggest that Congress envisioned a biological connection as more (or less) necessary for children born outside of a marriage than for those born within a marriage. To the contrary, § 301(a)(3) and (7)'s conferral of citizenship on a child "born . . . of parents" remains the same requirement as in § 1401 today—and, for the reasons Defendants have explained, requires a biological relationship between the child and the parents. But when a child is born outside a marriage, the child's parentage necessarily has to be "established" through some process. *See, e.g.*, *Ablang v. Reno*, 52 F.3d 801, 805 (9th Cir. 1995). In that context, § 309(a) served to determine who the child's "parents" were for the purpose of applying § 301(a)(3) or (7) to the child.

Congress amended § 309(a) in 1986, adding the explicit "blood relationship" language and requiring that the relationship be "established by clear and convincing evidence." INA Amendments of 1986, Pub. L. No. 99-653, § 13, 100 Stat. 3655, 3657. By this amendment, Congress elaborated on the framework for establishing biological paternity and heightened the relevant evidentiary burden.

15

But that amendment does nothing to suggest that § 1401 excludes a biological-relationship requirement.  That is true for two reasons.  First, Congress did not alter the operative "born . . . of parents" language of § 1401 when amending § 1409(a), nor has it done so since.  The Supreme Court has recognized that "'negative implications raised by disparate provisions are strongest' when the provisions were 'considered simultaneously when the language raising the implication was inserted.'" *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175 (2009); *see also Lindh v. Murphy*, 521 U.S. 320, 330 (1997) (describing this as a "familiar rule").  Thus, to the extent § 1409(a) sheds light on the meaning of § 1401, the version of § 1409(a) that is most relevant is the one contemporaneously adopted in 1952—and that provision, like § 1401, states a biological-relationship requirement implicitly rather than explicitly.

Second, Congress's addition of the "blood relationship" language to § 1409(a) did not create a biological-relationship requirement where none existed before.  It simply made that requirement more explicit in the circumstances addressed by that provision and required the relationship to be "established by clear and convincing evidence."  The original § 309(a) already required a "blood (biological) relationship between the alleged father and the child at birth."  *United States v. Marguet-Pillado*, 560 F.3d 1078, 1082 (9th Cir. 2009); *see also Miller v.*

16

*Albright*, 523 U.S. 420, 435 (1998) (opinion of Stevens, J.).  Thus, even if the contrast between modern-day § 1401 and modern-day § 1409(a) could shed light on what Congress meant when it enacted § 1401's operative language in the original INA, modern-day § 1409(a) does not imply—any more than the original § 309(a) did—that children born within a marriage may claim citizenship through parents to whom they are not biologically related.  Section 1409(a) simply serves, as the original § 309(a) did, to identify the child's male "parent" for the purpose of applying "[t]he provisions of [§ 1401]" to that child, 8 U.S.C. § 1409(a).

There is accordingly no basis to infer that Congress intended to include a biological-relationship requirement only in §1409(a).  The Department has long interpreted § 1401 to require a biological relationship, and Congress was presumably aware of that interpretation when it amended § 1401 and § 1409 in 1986.  *See, e.g.*, *Lorillard v. Pons*, 434 U.S. 575, 580-81 (1978) ("Congress is presumed to be aware of administrative . . . interpretation of a statute and to adopt that interpretation when it reenacts a statute without change.").  If Congress wished to eliminate § 1401's existing biological-relationship requirement and abrogate the Department's practice, it would have done so not through implied repeal by negative inference but by an express amendment.  In other words, Congress would have taken the opportunity—while amending an unrelated part of § 1401—to

17

clarify that legal parentage was sufficient to convey citizenship under that provision.  "It is well established that when Congress revisits a statute giving rise to a longstanding administrative interpretation without pertinent change, the 'congressional failure to revise or repeal the agency's interpretation is persuasive evidence that the interpretation is the one intended by Congress.'"  *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 846 (1986) (quoting *NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 274-75 (1974)).

Finally, Plaintiffs are likewise incorrect to argue that the Department's interpretation is "inconsistent with the design and structure of the INA."  Pls. Mot. for Partial Summ. J. at 13-14.  Plaintiffs challenge the Department's interpretation as "superfluous" and "redundant."  *Id.*  However, as discussed above, § 1409(a) requires unmarried fathers not only to prove a biological relationship with their children, but to do so by clear and convincing evidence.  Section 1401's biological-relationship requirement, by contrast, can be satisfied by a preponderance of the evidence.  8 FAM § 301.4-1(D)(1)(b)(2).  Thus, although both provisions require a biological relationship, there is a meaningful distinction between the two.

The statutory text thus supports the Department's view that a child can acquire citizenship under § 1401 only if she is biologically related to her parents.

**B.     The Common Law Presumption Of Parentage Does Not Invalidate The Statutory Biological-Relationship Requirement.**

Plaintiffs maintain that the general common law spousal presumption of parentage is incorporated in § 1401.  Pls. Mot. for Partial Summ. J. at 15-18. Plaintiffs assert that "[n]othing in the text or context of the INA suggests that Congress intended to overthrow this centuries-old understanding that marital children are the legal children of both spouses" and that parentage "does not turn solely on biology."  *Id.* at 18.  Plaintiffs' acknowledgement of common law presumptions of parentage does not undermine the biological foundation of *jus sanguinis* citizenship.

Although the law of the jurisdiction where a child is born may sometimes create a presumption that children born during the marriage of their legal parents are "the issue of that marriage," 8 FAM § 301.4-1(D)(1)(d), the FAM explains that any such "presumption is not determinative in citizenship cases, … because an actual biological relationship to a U.S. citizen parent is required."  *Id.*; *see also id.* § 301.4-1(D)(1)(a) ("It is not enough that the child is presumed to be the issue of the parents' marriage by the laws of the jurisdiction where the child was born. Absent a blood relationship between the child and the parent on whose citizenship the child's own claim is based, U.S. citizenship is not acquired.").  Thus, the common law presumption of legitimacy may affect the determination of a child's

19

legal "parents" for purposes of §1401, but the presumption has no bearing on whether a child was "born . . . of" his legal parents, as required by the provision.

Stated differently, the common law presumption is irrelevant to whether a child is "born  . . . of" his parents for purposes of § 1401, even if it may sometimes remain relevant to determining a child's legal "parents."  That is because the presumption is not a rule of evidence concerning the determination of a child's actual biological father.  It is instead the opposite: "a substantive rule of law" providing that it is "*irrelevant . . .* whether a child conceived during, and born into, an existing marriage was begotten by someone other than the husband." *Michael H. v. Gerald D.*, 491 U.S. 110, 119 (1989) (plurality opinion).   In effect, the presumption supplies a legal fiction that paternity exists, irrespective of a biological relationship.  But in enacting § 1401, Congress made a specific choice about the relevance of an actual biological relationship.  The determination whether a child is "born . . . of " his  parents turns on exactly the biological facts that the presumption treats as irrelevant.  *All* applicants are required to prove claims to U.S. citizenship, including documentation concerning ART, where applicable.  *See* 22 C.F.R. § 51.40; *see also* 8 FAM 304.3-4; *see also id.* ¶ a.

Nor does the presumption undercut the Department's view that biology was historically central to *jus sanguinis* citizenship.  Insofar as the historical citizenship

laws allowed children to acquire citizenship from their mothers' husbands without any consideration of biological paternity, they treated "marriage as a proxy for a blood relationship."  Abrams & Piacenti, *Immigration's Family Values*, 100 Va. L. Rev. 629, 658 (2014).  That is no basis to conclude, as Plaintiffs suggest, that biological relationships are unimportant to *jus sanguinis* citizenship.  To the contrary, it highlights the importance of biological relationships: When they did not exist, it was considered better to presume that they existed than to eliminate the requirement that they exist.

### C.  <u>The Court Should Defer To The Department's Interpretation.</u>

To the extent § 1401 remains ambiguous notwithstanding the textual and contextual factors favoring the State Department's interpretation, a tiebreaking factor is the deference owed to that interpretation under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944).  *Skidmore* and its progeny recognize that agency interpretations lacking the force of law may nonetheless warrant deference "given the 'specialized experience and broader investigations and information' available to the agency, and given the value of uniformity in its administrative and judicial understandings of what a national law requires."  *United States v. Mead Corp.*, 533 U.S. 218, 234 (2001) (citation omitted; quoting *Skidmore*, 323 U.S. at 139, 140). Such interpretations are entitled to some deference based upon their power to

persuade. *Martin v. Social Security Admin, Comm'r*, 903 F.3d 1154, 1159 (11th Cir. 2018).  The deference afforded the agency's interpretation depends upon the "thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade . . . ."  *Skidmore*, 323 U.S. at 140.  Other decisions reflect a similar approach.  *See, e.g.*, *Kasten v. Saint-Gobain Performance Plastics, Corp.*, 563 U.S. 1, 15-16 (2011); *Federal Express Corp. v. Holowecki*, 552 U.S. 389, 401-02 (2008) ("The agency's interpretive position . . . provides a reasonable alternative that is consistent with the statutory framework.  No clearer alternatives are within our authority or expertise to adopt; and so deference to the agency is appropriate under *Skidmore*.")

The State Department's longstanding interpretation of § 1401, § 1409, and related provisions is exactly the sort of interpretation that warrants *Skidmore* deference.  To begin, the interpretation reflects the Department's "'specialized experience'" and its appreciation of the need for "uniformity," *Mead*, 533 U.S. at 234.  The Department has long been concerned about the phenomenon of individuals fraudulently claiming citizenship on behalf of a child born abroad who is not actually theirs.  Memo. From Asst. Sec'y of State for Consular Affairs (Feb. 13, 2012), Defs. Ex. B; Excerpts from P. Peek Dep., Defs. Ex. C; s*ee, e.g.*,

22

8 FAM § 301.4-1(E) (concerning suspected fraud or falsehood in citizenship claims).

Of course, citizenship fraud is not limited to the context of assisted reproduction, and a biological-relationship requirement is not a failsafe means of preventing it.  But because biological relationships can easily and objectively be verified through DNA testing, such a requirement is a powerful way to address concerns about fraud.  Without it, citizenship claims could be supported merely by documents purporting to show legal relationships between parents and child, and it can be extremely difficult (especially in certain countries) to verify that such documents are genuine and accurate.  *See, e.g.*, Joint Statement of USCIS and the Dep't of State, *U.S. Suspends Processing New Nepal Adoption Cases Based on Abandonment* (Aug. 6, 2010), Ex. D (explaining that, in Nepal, "[c]ivil documents, such as … birth certificates[,] often include data that has been changed or fabricated").

A case pending in the District Court for the District of Columbia—*Sabra v. Pompeo*, No. 19-cv-2090 (D.D.C.)—illustrates the problem.  It concerns a child born in Gaza whose alleged biological parents are both U.S. citizens.  The plaintiff, the child's putative father, asserts that the child acquired citizenship under 8 U.S.C. § 1401(c).  Based on a number of factors—including the advanced age of the

23

child's putative mother, her claim to have received no prenatal care, the child's alleged birth in a private home unattended by medical professionals, and the embassy's inability to directly view and assess the child—the U.S. embassy requested additional evidence to establish the child's biological parentage, such as prenatal or post-natal medical records, photographs taken during the putative pregnancy, or DNA testing.  The putative parents refused to provide such evidence. They provided only a birth certificate issued by the Hamas-controlled Interior Ministry in Gaza, which identified them as the child's legal parents.  If § 1401(c)'s "born … of parents" language were interpreted to require only legal, not biological, parentage, then the State Department would be required to undertake a complex investigation into the genuineness and accuracy of the birth certificate, rather than relying on far more straightforward evidence of biological parentage. Similar fraud concerns arise in many circumstances.  *See, e.g.*, *Alzokari v. Pompeo*, 2019 WL 3805083 (E.D.N.Y. Aug. 13, 2019) (challenge to passport revocation resulting from fraud concerns regarding plaintiff 's parentage claim for a child he later admitted was his grandson), *appeal filed*, No. 19-3133 (2d Cir. Oct. 1, 2019).

The State Department's assessment of fraud concerns is a strong reason for the Court to defer to the Department's interpretation of the INA.  *Cf. Fiallo v. Bell*, 430 U.S. 787, 799 n.8 (1977) (explaining that, in adopting a provision not at issue

24

here, "Congress may well have given substantial weight" to the "difficulty" of parentage determinations "and the potential for fraudulent visa applications that would have resulted from a more generous drawing of the line").  The Department's interpretation reflects its "'specialized experience'" in adjudicating thousands of applications for citizenship documents, as well as its appreciation of the need for standards that can be applied "uniform[ly]" in countries around the world, including those where legal documents may be falsified or inaccurate. *Mead*, 533 U.S. at 234.  And the interpretation accounts for the Department's predictive judgment that eliminating a biological-relationship requirement would increase citizenship fraud.  *Cf. Mo.-Kan.-Tex. R. Co. v. United States*, 632 F.2d 392, 406 (5th Cir. 1980) ("In making a predictive judgment, the expertise of the [agency] supplements, and may supplant, the projections placed in the record by the parties.").

        Nor is fraud the only relevant concern.  If a child could acquire citizenship through a legal parent regardless of whether he is biologically related to that parent, then the conferral of U.S. citizenship on children born overseas would depend on the legal parentage laws of more than two hundred countries, some of which recognize forms of parentage inconsistent with Congress's intent or this country's traditions of *jus sanguinis* citizenship.  For example, the law of Ontario,

Canada, currently affords automatic recognition to up to four intended parents designated in a surrogacy agreement, and allows courts to recognize more than four. Children's Law Reform Act, R.S.O. 1990, c. C.12, §§ 10, 11, *available at* https://www.ontario.ca/laws/statute/90c12.

In addition, the State Department's position is consistent and longstanding. As the Foreign Affairs Manual explains, a biological relationship with a U.S. citizen parent has been a prerequisite to citizenship for a child born abroad "[s]ince 1790." 8 FAM § 301.4-1(B). And to facilitate the evenhanded application of the requirement to people claiming citizenship under a wide range of circumstances, the State Department's application form for a CRBA—as noted above—asks parents to indicate whether they were married to the child's other biological parent when the child was born. There is no basis to suggest that the interpretation at issue in this case reflects "'*post hoc* rationalizatio[n],'" as opposed to the kind of "careful consideration" that warrants *Skidmore* deference, *Kasten*, 563 U.S. at 15-16.

The State Department's position is also eminently reasonable as a construction of the INA, even assuming alternative constructions could also be regarded as reasonable. As discussed above, § 1401's use of the phrase "born of" supports the Department's interpretation of that provision to entail a biological-

relationship requirement.  That interpretation is further corroborated by the statutory context, including the historical understanding of *jus sanguinis* citizenship.  And it serves important governmental objectives, including the prevention of citizenship fraud.  A contrary interpretation, even if plausible, is not so clearly correct as to foreclose the State Department's view.

### D.     Other Courts' Decisions Do Not Preclude Judgment In Defendants' Favor.

Plaintiffs cite decisions from other courts in an effort to demonstrate that the Department's interpretation has been or should be rejected.  Pls. Mot. for Partial Summ. J. at 18-21.  Of course, this Court is not bound by the decision of any other court relied upon by Plaintiffs.  And, for the reasons set forth herein, a closer examination of the law favors Defendants' position.

Plaintiffs discuss in particular cases from the Second and Ninth Circuits. Pls. Mot. for Partial Summ. J. at 18-21.  Plaintiffs turn to the Second Circuit's decision in *Jaen v. Sessions*, 899 F.3d 182 (2d Cir. 2018), to demonstrate the term "parents," as used in § 1401, "is not limited to biological parents."  Pls. Mot. for Partial Summ. J. at 21.  In *Jaen*, the Second Circuit held that the husband of a child's biological mother was the child's "parent' at the time of his birth for purposes of § 1401(g).  *Jaen*, 899 F.3d at 184-88.  But *Jaen* ignored the statute's "born . . . of" language; the Court wrongly believed that the "sole question" was

27

whether the husband was the child's "parent," *id.* at 185.  Thus, contrary to Plaintiffs' contention, *Jaen* is not a "directly-on-point" decision rejecting the Department interpretation of § 1401 at issue in this case.

Moreover, Plaintiffs disregard the Second Circuit's analysis of the operative language in *Colaianni v. INS*, 490 F.3d 185 (2d Cir. 2007), which supports the Department's interpretation.  The petitioner in that case claimed citizenship under a predecessor to 8 U.S.C. § 1401(c).  *Colaianni*, 490 F.3d at 187.   One reason the petitioner's claim failed was that § 1401(c) "pertains only to the acquisition of citizenship 'at birth,'" and the petitioner had been adopted by his U.S. citizen parents only after his birth.  490 F.3d at 187; *see id.* at 186.   But the Second Circuit did not base its ruling solely on that ground.   The court also rejected the petitioner's argument that by following the word "born" with "the preposition 'of,' rather than 'to,' Congress implied that biological parentage is not necessary for a person to claim citizenship under" § 1401(c).  490 F.3d at 187.  It found that argument "contradicted by the plain language of the statute, which refers to persons 'born . . . *of* parents both of whom are citizens of the United States'" as well as "pertain[ing] only to the acquisition of citizenship 'at birth.'"   *Id.* (emphasis in original).

With respect to the Ninth Circuit, Plaintiffs cite *Scales v. INS*, 232 F.3d 1159 (9th Cir. 2000), and *Solis-Espinoza v. Gonzales*, 401 F.3d 1090 (9th Cir. 2005).

Pls. Mot. for Partial Summ. J. at 18-21.  Both cases held that § 1401 does not

include a biological-relationship requirement.  *Scales*, 232 F.3d at 1164; *Solis-*

*Espinoza*, 401 F.3d at 1091.  In a recent case, *Dvash-Banks v. Dep't of State*, No.

2:18-cv-00523, 2019 WL 911799, *7 (C.D. Cal. Feb. 21, 2019), the district court

of the Central District of California, reached a similar conclusion, applying *Scales*

and *Solis-Espinoza* to issue a declaration of U.S. citizenship pursuant to 8 U.S.C.

§ 1503(a).  Defendants in *Dvash-Banks* have appealed the district court's decision,

and argue that *Scales* and *Solis-Espinoza* were wrongly decided for reasons similar

to those submitted for this Court's consideration here.  *Dvash-Banks v. Dep't of*

*State*, No. 19-55517 (9th Cir.).  The *Dvash-Banks* appeal is currently pending, with

the matter having been fully briefed.  Simply put, the legal questions at hand

remain unresolved and the way is open for this Court to adopt what Defendants

submit is the correct view—that § 1401, properly construed, encompasses a

biological relationship requirement.

### E.    The Department's Interpretation Does Not Raise Constitutional Concerns.

Plaintiffs argue that, if there is any ambiguity as to whether a biological

relationship is required by the statute, the canon of constitutional avoidance

disfavors the Department's interpretation.  Pls. Mot. for Partial Summ. J. at 27-38.

That is incorrect.  Plaintiffs assert that adopting the Defendants' interpretation

29

would raise three constitutional questions: whether the biological-relationship requirement "violates (1) same-sex couples' fundamental right to marry and attendant, protected liberty interest in their marriage; (2) the fundamental rights of families headed by same-sex couples to be recognized as a family, including the rights to family privacy, integrity, and association; and, (3) the right to equal protection for same-sex couples and their children." *Id.* at 30.  Plaintiffs argue that the implication of these Fifth Amendment questions counsels against construing the statute as the Department has for decades.  *Id.* at 27.  Yet, the Department's interpretation raises no constitutional concerns.

### 1.     Defendants' Interpretation Does Not Present A Due Process Concern.

Plaintiffs are simply wrong to state that the Department "ignores," "disregards," or "refus[es] to recognize" the lawful marriages of same-sex couples, including Plaintiffs, Pls. Mot. for Partial Summ. J. at 29-31.  Defendants have not treated Mr. Mize and Mr. Gregg as "legal strangers" or the Mize-Gregg family "as if they were not family at all," *id.* at 29.  Rather, Defendants applied a facially neutral policy, which implements the statutory requirement that the citizenship-conferring parent have a biological relationship with the child—regardless of the sexual orientation of the child's legal parents.  Plaintiffs do not allege that the Department refused to accept the documents reflecting the couple's legal marriage

30

as sufficient proof thereof—nor have they made such a showing on their motion.

Furthermore, Defendants did not, nor do they now, dispute that S.M.-G. is the

"marital child" of Mr. Mize and Mr. Gregg.  Rather, the pertinent question is

whether S.M.-G. is "born . . . of" her parents.  The mere existence of a biological-

relationship requirement or that the circumstances here do not meet the

requirement do not compel the conclusion that Plaintiffs have been denied due

process.

Contrary to Plaintiffs' assertion, Pls. Mot. for Partial Summ. J. at 21-22,

Defendants are not, therefore, in violation of the Supreme Court's decisions in

*United States v. Windsor*, 570 U.S. 744 (2013), *Obergefell v. Hodges*, 135 S. Ct.

2584 (2015), and *Pavan v. Smith*, 137 S. Ct. 2075 (2017), requiring the equal

treatment of same-sex marriages, including equal access to the full "constellation

of benefits" attendant to marriage, *Obergefell*, 135 S. Ct. at 2601.

Plaintiffs allege that the Department's interpretation infringes upon the

fundamental right of same-sex couples "to form and be a family" by denying birth

citizenship to children like S.M.-G.  Pls. Mot. for Partial Summ. J. at 32-33.

Conspicuously absent from Plaintiffs' conclusory analysis is any explanation as to

*how* a biological-relationship requirement constrains the ability to create families

for same-sex couples.  Plaintiffs have not pointed to anything in the Department's

31

interpretation of § 1401 to require a biological relationship that impedes Plaintiffs' ability—or any other couples' ability—to enter into a lawful marriage, have that marriage recognized under the law, or establish families.  To the extent that couples using ART to create families may be required to provide evidence of a qualifying biological relationship to meet the requirement of the statute, *see* Pls. Mot. for Partial Summ. J. at 33-34, such evidence may be required of *all* couples seeking citizenship for their children pursuant to § 1401.

Plaintiffs' analysis also fails to set forth the basis for their conclusion that there is a fundamental right to citizenship at birth for children lacking a biological relationship to a qualifying U.S. citizen parent, regardless of whether that parent is in a same- or opposite-sex couple.  The extension of citizenship to foreign-born children is not a constitutionally enshrined right for either the U.S. citizen or the child seeking to acquire citizenship; rather, it is a right granted by Congress. *Rogers*, 401 U.S. at 827; *see also Miller*, 523 U.S. at 453 (Scalia, J., concurring) ("Petitioner, having been born outside the territory of the United States, is an alien as far as the Constitution is concerned, and can only become a citizen by being naturalized, either by treaty, . . . or by authority of Congress.") (internal citation and quotation marks omitted).  Further, the Supreme Court has underscored the importance of a biological connection between the child seeking to acquire

32

citizenship and the U.S. citizen seeking to confer citizenship.  *See, e.g.*, *Miller*, 523

U.S. at 438 ("There is no doubt that ensuring reliable proof of a biological

relationship between the potential citizen and its citizen parent is an important

governmental objective.") (plurality op.); *Nguyen v. INS*, 533 U.S. 53, 62 (2001)

(acknowledging "the importance of assuring that a biological parent-child

relationship exists" for the purposes of a U.S. citizen father conferring citizenship

on a child born abroad).

Plaintiffs are thus wrong to suggest that the transmission of citizenship to a

non-biological child is among "'the constellation of benefits . . . linked to

marriage,'" *Pavan v. Smith*, 137 S. Ct. 2075, 2077 (2017) (per curiam) (quoting

*Obergefell v. Hodges*, 135 S. Ct. 2584, 2601 (2015)).  Nor is the asserted right to

transmit citizenship to a non-biological child "'deeply rooted in this Nation's

history and tradition,'" as would be necessary for the Due Process Clause to

protect it, *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997).  No married

couple—whether same- or opposite-sex—has a right to transmit citizenship under

§ 1401 to a child who is not biologically related to both parents.

Lastly, Plaintiffs fail to establish how the Department's interpretation

disregards legal parent-child relationships.  *See* Pls. Mot. for Partial Summ. J. at

32-33.  As discussed above, the status of the parent-child legal relationship is

recognized and important to other determinations made by the Department, but is simply irrelevant to § 1401's requirement that a child be "born . . . of" her parents. The question of citizenship here turns on the biological relationship, not the legal one.

There is, therefore, no cognizable Fifth Amendment due process concern with the Department's interpretation.

### 2. Defendants' Interpretation Does Not Present An Equal Protection Concern.

Plaintiffs are also wrong to suggest that the Department's interpretation would "treat the marriages of same-sex couples as second class, discriminate against those couples on account of their sexual orientation and sex, and discriminate against their children." Pls. Mot. for Summ. J. at 34-35.  The Department's interpretation of § 1401 treats the children of married same-sex couples exactly as it treats the children of married opposite-sex couples.  When children are biologically related to both parents, they are "born . . . of" their parents and eligible to acquire citizenship under § 1401(c) or (g), if the other statutory requirements are satisfied.  When children are not biologically related to both parents, they are not "born . . .  of " their parents and thus cannot acquire citizenship under § 1401(c) or (g).  Instead, they may acquire citizenship through a

U.S. citizen father under § 1409(a) or through a U.S. citizen mother under

§ 1409(c).

Additionally, the Department's relevant policies require *all* parents to

indicate on the CRBA application form whether they were married to the child's

other biological parent when the child was born.  Defs. Ex. A at 4.  Plaintiffs fail to

point to any policy or allegations of fact to establish that the Department applies its

policies in a manner that treats same-sex and opposite-sex couples differently.

A facially neutral policy does not raise equal protection concerns simply

because it may have a disproportionate effect on one group.  *See, e.g.*, *Village of*

*Arlington Heights v. Metropolitan Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977).

Many children of opposite-sex couples lack a biological relationship with both

parents,[2] and some children of  same-sex couples have a biological relationship

with both parents.[3]  It is not legally relevant that the children of opposite-sex

couples more often have a biological relationship with both parents than the

---

[2] Infertility affects more than one in ten couples (Office of Population Affairs, xpM2r), and clinics in the United States perform nearly 300,000 ART cycles each year (CDC, Dep't of  Health & Human Servs., *ART Success Rates* (Nov. 15, 2019), https://go.usa.gov/xpM2Y).

[3] Two women who are married to each other may both have a biological relationship with their child if one spouse contributes the egg and the other gestates the fetus. *See* 8 FAM § 301.4-1(D)(1)(c); *id.* § 304.3-1(b).

35

children of same-sex couples.  Plaintiffs have not suggested—nor could they—that the Department adopted or reaffirmed the challenged policy "at least in part 'because of,'" rather than "merely 'in spite of,'" any disproportionate effect on the children of same-sex couples, *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979).

Even if there were binding authority in this Circuit requiring heightened scrutiny for classifications based upon sexual orientation, which there is not, Defendants' policy is not subject to any heightened scrutiny because the policy does not present any classification resulting in discrimination against a protected class.  Furthermore, because Plaintiffs have failed to establish that they have been treated differently than other similarly situated persons, the Court need not even reach the question of whether the Department's interpretation survives rational basis review, *see, e.g., Engquist v. Or. Dep't of Agr.*, 553 U.S. 591, 602 (2008); or whether a lower standard of review applies*, see Fiallo v. Bell*, 430 U.S. 787, 794-95 (1977).

This notwithstanding, as established above, the Department's interpretation is "rationally related to legitimate government interests," *Heller v. Doe*, 509 U.S. 312, 318-19 (1993), like the prevention of fraud.  The rational basis standard entitles Defendants interpretation to a "strong presumption of validity," and the

36

interpretation must be sustained if "there is any reasonably conceivable state of facts that could provide a rational basis." *Id*. at 319-20 (internal citations omitted). The burden is on Plaintiffs to show there is no conceivable basis for Defendants' position. *Id.* at 320.   Plaintiffs have failed to do so here.

## **<u>CONCLUSION</u>**

For the foregoing reasons, the Court should deny Plaintiffs' motion for partial summary judgment and enter judgment in favor of Defendants on Count I of the Complaint.

Dated: February 14, 2020

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

ANTHONY J. COPPOLINO
Deputy Director

/s/ Alexis J. Echols
ALEXIS J. ECHOLS
Trial Attorney

VINITA B. ANDRAPALLIYAL
Trial Attorney

United States Department of Justice
Civil Division, Federal Programs
Branch
1100 L Street NW, Room 11304
Washington, D.C. 20005
Telephone: (202) 305-8613
Facsimile: (202) 616-8460
E-mail: alexis.j.echols@usdoj.gov

*Attorneys for Defendants*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| JAMES DEREK MIZE and JONATHAN DANIEL GREGG, individually and on behalf of their minor child, S.M.-G., <br><br> Plaintiffs, <br><br> v. <br><br> MICHAEL R. POMPEO, in his official capacity as Secretary of State, and THE U.S. DEPARTMENT OF STATE, <br><br> Defendants. | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> :     Civ. No. 1:19-CV-03331-MLB |

## CERTIFICATE OF COMPLIANCE

I certify that the documents to which this certificate is attached have been prepared with one of the font and point selections approved by the Court in LR 5.1B for documents prepared by computer.

/s/ Alexis J. Echols
ALEXIS J. ECHOLS
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW, Room 11304
Washington, D.C. 20005
Telephone: (202) 305-8613
Facsimile: (202) 616-8460
E-mail: alexis.j.echols@usdoj.gov