# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| JAMES DEREK MIZE, et al., | |
| *Plaintiffs,* | |
| v. | Civil Action No. 1:19-cv-3331-MLB |
| MICHAEL R. POMPEO, et al., | |
| *Defendants.* | |

## PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANTS' CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION .........................................................................................1

II.    THE COURT SHOULD GRANT PLAINTIFFS' MOTION FOR
PARTIAL SUMMARY JUDGMENT .........................................................3

    A.    Defendants' Interpretation of Section 301(c) Is Wrong.......................3

    B.    Defendants' Interpretation Does Not Warrant Deference.................12

    C.    Constitutional Avoidance Counsels Against Adopting
Defendants' Constitutionally Problematic Interpretation of
Section 301(c).....................................................................................17

III.   THE COURT SHOULD DENY DEFENDANTS' CROSS-MOTION
FOR PARTIAL SUMMARY JUDGMENT ................................................23

IV.   CONCLUSION............................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Am. Civil Liberties Union v. Clapper*,
   785 F.3d 787 (2d Cir. 2015) ...............................................................7

*Ashwander v. Tenn. Valley Auth.*,
   297 U.S. 288 (1936)...........................................................................17

*Bernardo ex rel. M & K Eng'g, Inc. v. Johnson*,
   814 F.3d 481 (1st Cir. 2016)................................................................7

*Buckner v. Florida Habilitation Network, Inc.*,
   489 F.3d 1151 (11th Cir. 2007) .........................................................13

*Colaianni v. INS*,
   490 F.3d 185 (2d. Cir. 2007) .......................................................11, 12

*Dvash-Banks v. Dep't of State*,
   No. 2:18-cv-00523, 2019 WL 911799 (C.D. Cal. Feb. 21, 2019)...............11, 14

*Henderson v. Box*,
   947 F.3d 482 (7th Cir. 2020) ............................................................19

*In re Under Seal*,
   749 F.3d 276 (4th Cir. 2014) ............................................................18

*Jaen v. Sessions*,
   899 F.3d 182 (2d Cir. 2018) ........................................................11, 12

*Jennings v. Rodriguez*,
   138 S. Ct. 830 (2018)........................................................................18

*Legal Envtl. Assistance Found., Inc. v. U.S. E.P.A.*,
   118 F.3d 1467 (11th Cir. 1997) ...........................................................7

*Lorillard v. Pons*,
   434 U.S. 575 (1978)............................................................................7

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Obergefell v. Hodges,*
    135 S. Ct. 2584 (2015)................................................................................18, 19

*Pavan v. Smith,*
    137 S. Ct. 2075 (2017)................................................................................18, 19

*Russello v. United States,*
    464 U.S. 16 (1983)...........................................................................................4

*Rust v. Sullivan,*
    500 U.S. 173 (1991).......................................................................................17

*Sabra v. Pompeo,*
    Case No. 19-cv-2990 (D.D.C.) ....................................................................16

*Scales v. INS,*
    232 F.3d 1159 (9th Cir. 2000) .................................................................11, 14

*Skidmore v. Swift & Co.,*
    323 U.S. 134 (1944).............................................................................12, 13, 14

*Solis-Espinoza v. Gonzales,*
    401 F.3d 1090 (9th Cir. 2005) .....................................................................11

*TRW Inc. v. Andrews,*
    534 U.S. 19 (2001)...........................................................................................8

*United States v. Marguet-Pillado,*
    560 F.3d 1078 (9th Cir. 2009) .....................................................................10

*United States v. Velez,*
    586 F.3d 875 (11th Cir. 2009) ......................................................................8

*United States v. Windsor,*
    570 U.S. 744 (2013).............................................................................18, 19, 20

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

STATUTES

8 U.S.C. § 1101(b)(1)(C) ..........................................................................16

8 U.S.C. § 1101(c)(1)................................................................................16

Immigration and Nationality Act, Pub. L. No. 82-414, § 301(a)(3), 66
Stat. 163 (1952).................................................................................15

Immigration and Nationality Act, Section 301 (8 U.S.C. § 1401) ..................*passim*

Immigration and Nationality Act, Section 309 (8 U.S.C. § 1409) ..................*passim*

OTHER AUTHORITIES

Jill Adams, *Paternity testing: blood types and DNA,* Nature Education
1(1):146 (2008) ...............................................................................15

## I.      INTRODUCTION

Defendants ask this Court to defer to a tortured reading of the Immigration and Nationality Act ("INA") that would unlawfully and unconstitutionally deny U.S. citizenship at birth to S.M.-G and other children of married, U.S.-citizen same-sex couples. Defendants ignore both the applicable law and undisputed facts, relying instead on circular reasoning, *ipse dixit*, and a policy preference contrary to the clear text of INA Section 301.

The undisputed material facts support granting summary judgment in Plaintiffs' favor. Defendants do not dispute that S.M.-G was born abroad and is the marital child of two U.S. citizens who resided within the United States before she was born. *See* Defs.' Opp. to Pls.' Mot. for Part. Summ. J. and Cross-Mot. for Partial Summ. J. (ECF No. 50) ("Opp." or "Cross-MSJ") at 10, 31. Nor do Defendants dispute that the government refused to issue S.M.-G a U.S. passport based on its policy that a child can derive citizenship from her U.S.-citizen parents under Section 301(c) only if she can establish a biological or "blood relationship" with both of them. Opp. at 11. These facts alone establish that Defendants acted unlawfully in denying U.S. citizenship at birth to S.M.-G.

Defendants do not—and cannot—claim that the plain language of Section 301(c) expressly sets out a biological or "blood relationship" requirement. To the

1

contrary, Defendants admit that such a requirement is, at most, somehow "implicit" in Section 301. *See* Opp. or at 16. But strained implications cannot overcome the straightforward statutory text.

Nor can Defendants dispute that all relevant case law squarely supports Plaintiffs' motion, and refutes Defendants' cross-motion. *Every* court to consider the argument that Section 301 includes a biological or "blood relationship" requirement has rejected it. Defendants nevertheless ask this Court to disregard this uniform, directly relevant authority and instead look to ancillary case law that examines *other* provisions of the INA, even where subsequent authority from the same court directly contradicts Defendants' arguments.

Finally, despite their efforts to recast the nature of the constitutional deprivations at issue, Defendants simply cannot overcome that their injection of a biological-relationship requirement into Section 301 carves Plaintiffs and other families formed by married same-sex couples out of a significant protection attendant to marriage—the ability to establish citizenship at birth for their children. Defendants' interpretation of the statute thus raises grave constitutional concerns under the Fifth Amendment's liberty and equality guarantees and should be rejected under the doctrine of constitutional avoidance.

Properly construed, the requirements for U.S. citizenship at birth under

Section 301 are straightforward, and the undisputed facts establish that S.M.-G has met those requirements. Plaintiffs therefore respectfully request that the Court grant Plaintiffs' Motion for Partial Summary Judgment (ECF No. 44, "MSJ"), deny Defendants' Cross-Motion for Partial Summary Judgment (ECF No. 50, "Opp."), declare S.M.-G to be a U.S. citizen since birth, and order Defendants to issue S.M.-G a U.S. Passport.

## II.    THE COURT SHOULD GRANT PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT.

### A.    Defendants' Interpretation of Section 301(c) Is Wrong.

Defendants' Opposition and Cross-Motion turn on a single, flawed premise: that U.S.-citizen parents in a lawful marriage cannot confer U.S. citizenship to their child under Section 301(c) of the INA unless each of them has a "biological" or "blood" relationship with the child. Aside from the dispute over this extra-textual requirement, all of the requirements of Section 301(c), as well as their application to this case, are uncontroversial and undisputed. The parties agree that S.M.-G was born outside of the United States and that, at the time of S.M.-G's birth, her lawful parents—James Derek Mize and Jonathan D. Gregg—were (and still are) lawfully married U.S. citizens who resided in the United States. *See* Opp. at 9-10. The only dispute here is one of statutory interpretation.

Defendants fail to rebut Plaintiffs' arguments (and supporting case law)

establishing that Section 301(c) has no biological or "blood relationship" requirement. Defendants cannot dispute the obvious: that Defendants' asserted biological-relationship requirement is nowhere to be found in the plain language of Section 301(c). *See* MSJ at 11-12. Defendants also concede that, whereas Section 309 expressly requires a "blood relationship" between a non-marital child and the child's father, Section 301(c) does not. *See* Opp. at 14-18 (arguing that Section 301 "states a biological-relationship requirement implicitly rather than explicitly"). And while they cannot dispute that "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion," *Russello v. United States*, 464 U.S. 16, 23 (1983), Defendants try to downplay the significance of this crucial distinction between Sections 301 and 309 with unsupported and circular arguments. Notably, Defendants' Opposition does not address Plaintiffs' definitional arguments that Section 301's phrase "born of . . . parents" includes families like the Mize-Greggs, *see* MSJ at 22-23, even though Defendants' argument is premised on the assertion that that phrase refers to biology and only biology.

   ***First***, Defendants offer *no evidence* to support their contentions that the State Department's current interpretation of Section 301 to include a biological-

relationship requirement is "longstanding" or that Defendants' interpretation reflects Congress's intent. *See* Opp. at 17-18.[1] They offer no legislative history, administrative rule, agency ruling, memorandum, or any other evidence predating Congress's addition of a "blood relationship" requirement to Section 309 (and not to Section 301) to support this purportedly long-standing view. All of Defendants' evidence *post-dates* the 1986 amendments to the INA. *See* ECF No. 50-1 (submitting as evidence a blank recent CRBA Application Form, a 2012 memorandum, and a 2018 deposition transcript).

In fact, Defendants' proffered evidence actually *contradicts* their argument that Section 301 contains an implicit "blood relationship" requirement. Defendants submitted a 2012 memorandum documenting the State Department's consideration of whether it "can interpret the INA to allow U.S. citizen parents to transmit U.S. citizenship to their children born abroad through ART" and noting it did "not anticipate that [it] would seek any legislative changes." Ex. B (ECF No. 50-1) at 14-15. The memorandum does not state that Section 301 requires a biological or "blood relationship" between a child and both of her parents. To the contrary, the very exercise presented would have been impossible if Section 301 did contain such

---

[1] In their Opposition, as in their previously filed Motion to Dismiss (ECF No. 32-1), Defendants emphasize the concept of *jus sanguinis* citizenship to no avail. *See* Memo. in Supp. of Pltfs.' Opp. to Defs.' Mot. to Dismiss, Dkt. 35-1, at 9 n.2.

a requirement. Put simply, the biological relationship requirement is not part of Section 301, but a relatively recent policy preference of Defendants that is contrary to the text of the statute.

Unable to prove their own affirmative position, Defendants insist that Plaintiffs cannot *disprove* a counterfactual scenario. Defendants assert that if Congress had *not* intended for Section 301 to include a biological-relationship requirement, then Congress "would have taken the opportunity" to amend Section 301 to *affirmatively disclaim* that requirement at the same time Congress amended Section 309 to expressly require it. *See* Opp. at 17-18. Instead of identifying evidence of Congress's intentions with respect to Section 301, Defendants point to Congress's supposed failure to *remove* a (non-existent) biological-relationship requirement from Section 301 at the same time that Congress explicitly *added* such requirement to Section 309 (a requirement Defendants claim was already implicit in Section 309) as proof that Section 301 contains an implicit biological-relationship requirement. This argument assumes its own conclusion and defies the clear statutory text. There is *zero* evidence before the Court to suggest that this was Congress's intention.

Not only is there no evidence that the agency's current interpretation of Section 301 is a "longstanding" one, there is no evidence that Congress was aware

of Defendants' position when it amended the INA to add the "blood relationship" requirement to Section 309. Defendants' policy is apparently articulated only in the Foreign Affairs Manual ("FAM"), an internal State Department procedural guide that is not the result of agency adjudication or administrative rule making. "[I]t is generally inappropriate to apply the doctrine of legislative ratification without some evidence that Congress affirmatively sought to ratify the interpretation of a statute." *Bernardo ex rel. M & K Eng'g, Inc. v. Johnson*, 814 F.3d 481, 490 (1st Cir. 2016); *see also Am. Civil Liberties Union v. Clapper*, 785 F.3d 787, 819 (2d Cir. 2015); *Legal Envtl. Assistance Found., Inc. v. U.S. E.P.A.*, 118 F.3d 1467, 1477 (11th Cir. 1997) (rejecting the EPA's argument that Congress' amendment of a statute ratified the agency's interpretation of language in that statute where the EPA "made no showing that Congress was aware" of that interpretation). Here, too, Defendants' *ipse dixit* is insufficient. There is no basis to conclude that Congress was aware of, much less relied upon, Defendants' interpretation of Section 301 when it amended the INA in 1986. On this issue, Defendants' reliance on *Lorillard v. Pons*, 434 U.S. 575 (1978) is misplaced. *See* Opp. at 17. In that case, the courts found that Congress was actually aware of the agency interpretation at issue when it took subsequent legislative action. *Lorillard*, 434 U.S. at 870.

**Second**, Defendants have no compelling response to Plaintiffs' argument that

Section 309's explicit "blood relationship" requirement would be superfluous if the Section 301 provisions incorporated into Section 309—including Section 301(c)—already required a biological relationship. *See* MSJ at 13. Per Defendants, Section 309 incorporates a biological relationship requirement not once (the biological-relationship requirement purportedly implicit in the 1952 version of the provision), not twice (the biological-relationship requirement incorporated by reference through Section 301's purportedly implicit requirement), but three times (the explicit "blood relationship" requirement added in 1986). *See* Opp. at 16-17. But if that were true, Congress's amendment to add the "blood relationship" requirement would have been pointless. "It is 'a cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'" *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001)); *see also United States v. Velez*, 586 F.3d 875, 877 (11th Cir. 2009) ("[W]e must not read 'any provision, or even any word, of a statute so as to make it superfluous.'" (quoting *Medberry v. Crosby*, 351 F.3d 1049, 1060 (11th Cir.2003)).

Defendants' argument that Section 309's "blood relationship" requirement is not superfluous because it requires proof by clear and convincing evidence is unconvincing. Opp. at 18. For one, if Congress was simply setting forth the standard

8

for meeting a purportedly existing biological-relationship requirement when it amended Section 309, it would have referred to the antecedent requirement by saying "***the*** blood relationship between the person and the father is established by clear and convincing evidence," as opposed to the language it actually adopted: "***a*** blood relationship between the person and the father is established by clear and convincing evidence." For another, the argument falls apart when placed alongside Defendants' argument that *both* Section 301 and the *pre-amendment* version of Section 309 (which did *not* include an express reference to a "blood relationship" requirement) included the same implicit biological-relationship requirement. *See* Opp. at 16. Defendants cannot have it both ways. Either pre-amendment Section 309's implied "blood relationship" requirement was *duplicative* of Section 301's same purported requirement, which would render it superfluous by virtue of Section 309's incorporation of Section 301(c), or Section 301 had no such requirement to begin with (and, absent the type of express language added to Section 309, still has no such requirement today). Either result undermines Defendants' interpretation.

***Third***, Defendants' assertion that Section 309 as originally enacted in 1952 included an implicit biological requirement does not aid them. Even if the original Section 309 included an implicit biological requirement in the case of a non-marital child, that in no way suggests that Section 301 includes the same implicit

requirement in the case of a marital child. Furthermore, the Defendants' reliance on *Marguet-Pillado* for this proposition is misplaced. While that court did review Section 309's biological relationship requirement, it concluded its analysis by noting that in contrast, "when a child is born during a marriage and at least one parent is a United States citizen, a blood relationship is *not* absolutely required." *United States v. Marguet-Pillado*, 560 F.3d 1078, 1083 (9th Cir. 2009) (emphasis added) (citing *Scales v. INS*, 232 F.3d 1159, 1166 (9th Cir. 2000), and *Solis-Espinoza v. Gonzales*, 401 F.3d 1090, 1093 (9th Cir. 2005)). Just as Section 309 has never included the "born . . . of parents" language Defendants rely upon, Section 301 has never included a biological relationship requirement.

**Fourth**, Defendants would have this Court believe that Congress quietly overturned the centuries-old common law presumption that every child born during their parents' marriage is the legal child of both spouses regardless of "blood" ties— but only for purposes of citizenship under Section 301. Defendants acknowledge that the presumption is, in fact, relevant to determining a child's legal parents, but observe that the common law presumption cannot identify a child's biological parents. Opp. at 20 (admitting that "the common law presumption of legitimacy" is a "substantive rule of law" that "may affect the determination of a child's legal 'parents' for purposes of §1401"). The question before the Court is not a medical

one, however, but a legal one—whether Mize and Gregg are S.M.-G's parents for purposes of Section 301—and biology is not determinative of legal parentage. *See* MSJ at 17-18 (citing cases establishing that the marital presumption applies even when it is undisputed that only one spouse is a biological parent, including when the spouses are of the same sex). Again, Defendants' circular argument fails.

*Fifth*, Defendants do not dispute that Congress intended for the INA to keep families together, and that Congress did so without regard for the sex or sexual orientation of the parents in those families. *See* MSJ at 14-15.

*Sixth*, Defendants cannot dispute that *every* federal court that has considered the argument that Section 301 requires a biological relationship—including the Ninth Circuit in 2000 and 2005, the Second Circuit in 2018, and the Central District of California just last year—has squarely rejected it. *Compare* MSJ at 18-21 *with* Opp. at 27-29 (discussing *Jaen v. Sessions*, 899 F.3d 182 (2d Cir. 2018); *Scales*, 232 F.3d 1159; *Solis-Espinoza*, 401 F.3d 1090; and *Dvash-Banks v. Dep't of State*, No. 2:18-cv-00523, 2019 WL 911799 (C.D. Cal. Feb. 21, 2019)). With no alternative, Defendants ask the Court to simply turn a blind eye to this uniform persuasive authority. *See* Opp. at 27, 29.

In the absence of any directly relevant supporting authority of their own, Defendants cite *dicta* in *Colaianni v. INS*, 490 F.3d 185 (2d. Cir. 2007), a Second

11

Circuit case involving an adopted child that pre-dated that court's holding in *Jaen* by more than a decade. *See* Opp. at 28. In *Colaianni*, the plaintiff's parents were not his legal or intended parents at the time of his birth; instead, Colaianni was born outside the United States and was then adopted by a married couple after he immigrated as a child. 490 F.3d at 186-87. The court reasoned that Colaianni could not acquire citizenship "at birth" because when he was born abroad, he was not the child of either parent, and his subsequent adoption did not retroactively confer citizenship upon birth. *Id*. at 187. *Colaianni* said nothing at all about whether a child born through surrogacy to her married parents must be biologically related to both of them in order to acquire citizenship under Section 301(c)—and, if it had, that *dicta* would be irrelevant in light of the same court's specific holding in *Jaen* that "the INA incorporates the common law meaning of 'parent' into [Section 301(g)], such that a child born into a lawful marriage is the lawful child of those parents, regardless of the existence or nonexistence of any biological link." *Jaen,* 899 F.3d at 185.

## B.    Defendants' Interpretation Does Not Warrant Deference.

As in their Motion to Dismiss (ECF No. 32-1 at 21-25), Defendants insist that the undisputed evidence and uniform authority supporting Plaintiffs' interpretation of Section 301 should be cast aside in the name of *Skidmore* deference. *See* Opp. at 21-27. However, agency "rulings, interpretations and opinions" are "not

controlling," and any weight given to an agency's interpretations "in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, [and] its consistency with earlier and later pronouncements." *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944). Where, as here, Defendants' interpretation is not grounded in the statutory text, lacks evidentiary support, is contrary to directly on point case law, and is grounded in little more than *ipse dixit* and circular reasoning, it is not entitled to deference.

Crucially, an agency's statutory interpretation lacking the force of law is entitled to *Skidmore* deference only to the extent it is persuasive. *Buckner v. Florida Habilitation Network, Inc.*, 489 F.3d 1151, 1155 (11th Cir. 2007) (quoting *Skidmore*, 323 U.S. at 140). The State Department's policy is not a persuasive—or even permissible—interpretation of Section 301 for all of the reasons discussed above. Congress unambiguously omitted any biological relationship requirement from Section 301, and Defendants cannot read one in.

The government's arguments for *Skidmore* deference fail for several additional reasons. Defendants' claim that the FAM reflects a longstanding interpretation of Section 301 is unsupported by any evidence, as discussed above. Plaintiffs explained in opposition to Defendants' pending motion to dismiss (ECF No. 35-1 at 10-12), the FAM itself does not purport to interpret Section 301, and

provides no citation or explanation for its assertion that the law "always contemplated the existence of a blood relationship between the child and the parent(s) through whom citizenship is claimed." 8 FAM § 301.4-1(D)(1); *see Scales*, 232 F.3d at 1165-66. The State Department's shifting interpretations undercut any claim that the interpretation of Section 301 underlying the challenged policy is "longstanding." For example, the *Dvash-Banks* court noted that the State Department had changed its interpretation of Section 301 as recently as 2014 when it redefined born "in wedlock" and adopted a limited policy deeming certain gestational mothers who are a legal but not genetic parent of a child nevertheless to have a "biological" relationship with the child. 2019 WL 911799 at *5.

Defendants' other rationales for *Skidmore* deference fare no better. First, there is no issue of fraud in this case. There is no doubt that S.M.-G. is the legal child of Mize and Gregg, or that they brought her into the world through an ART process that used Gregg's genetic material and an anonymously donated egg. *See* Defs. Response to Pls.' Statement of Undisputed Material Facts (ECF No. 50-2) at 2-4 (Defendants admit all material facts regarding the circumstances of S.M.-G's birth, and that both Mize and Gregg are S.M.-G's legal parents).

Defendants' assertion that documentation of a parent-child relationship is potentially subject to fraud is belied by the State Department's routine reliance on

documentary evidence of parentage. The FAM lists birth certificates, marriage licenses, and affidavits—as well as "entry/exit stamps in passports, airline/hotel receipts, travel orders, etc."—as types of evidence that may be relevant to a showing of paternity, and only lists DNA tests last. 8 FAM § 304.1-4; *see also* 8 FAM § 304.2-1(c) (directing that due to "the expense, complexity, and logistical delays inherent in parentage testing, genetic testing should be used only if other credible proof does not establish" parentage). In any case, reliable DNA testing—which Defendants' invoke as a "powerful way to [verify 'biological relationships' and therefore] address concerns about fraud" (Opp. at 23)—was not available when the INA was passed in 1952,[2] nor when Defendants adopted their allegedly "longstanding interpretation" of Section 301.[3] Whatever the value of genetic testing may be in some cases where a parent/child relationship is in genuine doubt, a blanket rule requiring all same-sex couples to be biologically related to their own children is

---

[2] *See, e.g.,* Jill Adams, *Paternity testing: blood types and DNA,* NATURE EDUCATION 1(1):146 (2008) ("The process of DNA fingerprinting was developed by Alec Jeffreys in 1984, and it first became available for paternity testing in 1988.").

[3] Although Congress has amended the INA numerous times, the language of Section 301(c) is identical to Section 301(a)(3) as originally adopted in 1952. *See* Immigration and Nationality Act, Pub. L. No. 82-414, § 301(a)(3), 66 Stat. 163 (1952); *see also* Pub. L. No. 95-432, sec. 3, 92 Stat 1046 (1978).

neither lawful nor required to prevent fraud.[4]

Defendants argue that the biological relationship requirement is necessary to prevent fraud because of cases like *Sabra v. Pompeo*, Case No. 19-cv-2990 (D.D.C.). *See* Opp. at 23-24. But the State Department has admitted under oath that the challenged policy was not adopted to prevent or deter fraud, Ex. W, JR137 (317:2-8), which forecloses this assertion. And in any event, *Sabra*, a pending case in which no merits decision has been made, is clearly and easily distinguishable. In *Sabra*, the State Department contests the validity of the parent-child relationship. That is not the case here.

Second, Defendants' purported concern about having to rely on a multitude of foreign parentage laws goes nowhere. The INA recognizes the validity of parent-child relationships established under foreign law. For example, Congress specifically defined "child" for purposes of the same Title that includes Sections 301 and 309 as including a child whose parentage was established under the law of either the child's or the father's residence or domicile "whether in the United States or elsewhere." 8 U.S.C. § 1101(c)(1); *see also* 8 U.S.C. § 1101(b)(1)(C) (also

---

[4] Undermining Defendant's argument is their limited, rare exception treating a gestational mother who is the legal but not genetic parent of a child to have a "biological" relationship. In this circumstance, DNA testing would not prove a "biological" relationship.

recognizing parentage established under foreign law). Defendants' suggestion that recognition of legal but non-biological parent-child relationships is a radical idea ignores the plain text of the INA.

### C. Constitutional Avoidance Counsels Against Adopting Defendants' Constitutionally Problematic Interpretation of Section 301(c).

Defendants largely fail to engage with Plaintiffs' argument that the Court should resolve any purported ambiguity in Section 301(c) by rejecting a biological-relationship requirement in order to avoid the significant due process and equal protection concerns raised by Defendants' construction of the statute. *See* MSJ at 27-38.

Defendants merely repeat their statutory interpretation and insist that Plaintiffs' constitutional arguments "are simply wrong." Opp. at 30-37. But the constitutional avoidance canon has two key features: one, to avoid rendering constitutional rulings unless absolutely necessary, *see Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring), and two, to construe a statute, "if fairly possible, so as to avoid not only the conclusion that it is unconstitutional but also grave doubts upon that score." *Rust v. Sullivan*, 500 U.S. 173, 191 (1991) (quotation omitted). Thus, the Court need not determine who is right or wrong on the Constitution when it can construe Section 301(c) to sidestep the inquiry entirely.

Plaintiffs' construction of Section 301(c) statute is "fairly possible," and its adoption allows the Court to avoid the significant constitutional questions raised by Defendants' interpretation. *Jennings v. Rodriguez*, 138 S. Ct. 830, 842 (2018). Thus, the Court can "adequately dispose[] of the controversy" without deciding "particularly [] complicated constitutional question[s]," *In re Under Seal*, 749 F.3d 276, 293 (4th Cir. 2014) (quotation omitted), by ruling that Section 301(c) does not require a biological relationship between married U.S.-citizen parents and their children.

In asking the Court to disregard the constitutional concerns raised by their interpretation of Section 301(c), Defendants fail to overcome Plaintiffs' showing that under Defendants' interpretation of Section 301(c), Defendants' policy would violate Plaintiffs' fundamental and equal rights. Supreme Court precedent, including *United States v. Windsor*, 570 U.S. 744 (2013), *Obergefell v. Hodges,* 135 S. Ct. 2584 (2015), and *Pavan v. Smith*, 137 S. Ct. 2075 (2017), mandates the equal treatment of same-sex couples' marriages and equal access for *all* married U.S. citizens—regardless of sex or sexual orientation—to the full "constellation of benefits" attendant to marriage, *Obergefell*, 135 S. Ct. at 2601. *See* MSJ at 30-31. These decisions establish that the discriminatory denial of legal benefits and protections to married same-sex couples violates both due process and equal

protection. *Id.*; *Pavan*, 137 S. Ct. at 2077-78.

Defendants try to evade these clear principles by mischaracterizing the fundamental rights at issue. Defendants set up a strawman argument, resting their position on Plaintiffs' purported failure to "set forth the basis for [Plaintiffs'] conclusion that there is a fundamental right to citizenship at birth for children lacking a biological relationship to a qualifying U.S. citizen parent . . . ." Opp. at 32. But that it not what Plaintiffs are asserting. Rather, Plaintiffs argue that if the Court were to adopt Defendants' interpretation of Section 301(c), then Defendants' policy plainly would infringe on Plaintiffs' constitutionally protected equal access to the full "constellation of benefits" attendant to their lawful marriage, regardless of their sex or sexual orientation. Section 301(c) grants birthright citizenship to children born abroad to married U.S.-citizen couples who satisfy certain preconditions, none of which concern the means by which their child came into the world. Congress linked derivative citizenship under Section 301(c) to marriage, thus making it part of the "constellation of benefits" of marriage guaranteed to same-sex couples on equal terms by *Windsor*, *Obergefell*, and *Pavan*. *See* MSJ at 30-32 (citing *Obergefell*, 135 S. Ct. at 2601; *Pavan*, 137 S. Ct. at 2077); *see also Henderson v. Box*, 947 F.3d 482, 487 (7th Cir. 2020) ("after *Obergefell* and *Pavan*, a state cannot presume that a husband is the father of a child born in wedlock, while denying an equivalent

presumption to parents in same-sex marriages"). The same is true here.[5]

Defendants' policy also infringes Plaintiffs' right to form and be a family. MSJ at 32-34 (citing *Obergefell*, 135 S. Ct. at 2600). Defendants' blithe dismissal of these protected interests cannot overcome that their policy disregards the marital, legal, and familial bonds of Plaintiffs' family and denies them a critical marital right.

With respect to Plaintiffs' equal protection arguments, Defendants argue that under their interpretation, the Government's policy applies equally to all marriages, and therefore, it would not violate the equal protection guarantee. *See* Opp. at 34-37. This misses the point. *How* Defendants apply the policy in practical terms is a fact question for another day. Plaintiffs' argument here is that, if the Court were to accept Defendants' statutory interpretation, then Defendants' policy *itself* would treat same-sex couples' marriages as "second-class marriages for purposes of federal law." *Windsor*, 570 U.S. at 771. In other words, because Defendants' policy treats the marital children of same-sex couples as presumptively born out of wedlock, and because Congress linked derivative citizenship under Section 301 to marriage, Defendants' policy would impose a constitutionally intolerable inequality. Tellingly,

---

[5] Defendants' argument that they did not disregard or refuse to recognize Mize and Gregg's marriage because they accepted a copy of their marriage certificate is facetious at best. Opp. at 30-31. Treating their marriage as legally irrelevant to S.M-G.'s citizenship, and their denial of a critical protection linked to marriage, is the action that disregarded and disrespected Mize and Gregg's marriage.

Defendants do not argue that the government could *expressly* exclude married same-sex couples and their children from the scope of Section 301. Defendants' contention, however, is no less constitutionally problematic. Under Defendants' asserted statutory interpretation and corresponding policy, it would be *impossible* for a married same-sex couple like Mize and Gregg to ever have a child who qualifies for U.S. citizenship under Section 301. In short, accepting Defendants' interpretation would require the court to consider a policy that unconstitutionally (and intentionally)[6] deprives virtually all married same-sex couples of one of the benefits of marriage.

Further evidencing the constitutional concerns that would be raised by Defendants' asserted interpretation of Section 301(c), Defendants do not even try to argue that their policy's interference with Plaintiffs' constitutionally protected rights would survive strict scrutiny. *See* Opp. at 36 (asserting only that "the Department's interpretation is 'rationally related to legitimate government interests'"). Nor could they. Defendants' silence effectively concedes that if any form of heightened scrutiny applies, their policy would be found unconstitutional. While Defendants

---

[6] Any doubts about Defendants' intentional discrimination are removed by the 2012 memorandum they introduced into evidence in which the State Department noted its consideration of "how this would impact children born through ART overseas to same-sex couples," but nevertheless reaffirmed its policy. Ex. B (ECF No. 50-1) at 14-15.

insist that laws that discriminate based on sexual orientation should not be subject to heightened scrutiny, they cite no legal authority for that proposition. *See id.* Rather, Defendants fail to address any of the case law Plaintiffs cited on the topic. *See* MSJ at 36-37. Defendants also fail to refute Plaintiffs' argument that their interpretation would unconstitutionally penalize children like S.M.-G for the circumstances of their birth. *Id.* at 37-38.

Regardless of the applicable level of scrutiny, Defendants' asserted interest in ensuring a biological relationship between a citizenship-conferring parent and their child born abroad would lack merit. Defendants concede that, as of 2014, the government considers a *non-genetic* gestational mother of a child to be "biologically related" to the child if—and only if—she is the child's legal parent, even though the language of the INA did not change. *See* ECF No. 50-2 (Defs.' Response to Pls.' Statement of Undisputed Material Facts) at 19-21. The State Department's decision to redefine what it means to have a biological relationship (or "blood relationship" as in Section 309) does not alter its generally applicable rule—and for men, its absolute rule—that a child has a legally significant relationship with their parent only if they are related *genetically*. *See* Ex. W at JR126 (173:19-25, 174:1-5); *see also* 8 FAM § 301.4-1(D)(1)(c). To the extent Defendants argue a distinction between a "blood relationship" requirement and a "biological-relationship"

requirement—namely, the treatment of non-genetic gestational mothers—such argument *undermines* their assertion about the equivalence of Sections 301 and 309. Defendants cannot have it both ways; Plaintiffs either prevail on statutory grounds, or Defendants' interpretation necessarily raises constitutional concerns.

## III.   THE COURT SHOULD DENY DEFENDANTS' CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendants assert—almost as an afterthought—that the Court should not only deny Plaintiffs' motion, but should grant summary judgment in Defendants' favor. But Defendants concede the facts that support *Plaintiffs'* motion for summary judgment, and Defendants have no answer for the uniform, federal case law that squarely rejects Defendants' argument that Section 301 requires a biological relationship. *Compare* MSJ at 18-21 *with* Opp. at 27-29. In short, neither the facts nor the law supports Defendants' cross-motion.

## IV.   CONCLUSION

Accordingly, the Court should grant Plaintiffs' Motion for Partial Summary Judgment and deny Defendants' Cross-Motion for Partial Summary Judgment.

Dated: March 6, 2020

**Susan Baker Manning***
**Eleanor Pelta***
MORGAN LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone: (202) 739-3000
susan.manning@morganlewis.com
eleanor.pelta@morganlewis.com

**John A. Polito***
**Christie P. Bahna***
MORGAN LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco, California 94105
Telephone: (415) 442-1000
john.polito@morganlewis.com
christie.bahana@morganlewis.com

**Jacquelynne M. Hamilton***
MORGAN LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, Pennsylvania 19103
Telephone: (215) 963-5000
jacquelynne.hamilton@morganlewis.com

*Admitted *pro hac vice*

Respectfully submitted,

By: /s/ Tara Borelli
**Tara Borelli**
Attorney Bar No. 265084
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
Southern Regional Office
730 Peachtree Street NE, Suite 640
Atlanta, Georgia 30308
Telephone: (404) 897-1880
tborelli@lambdalegal.org

/s/ Omar Gonzalez-Pagan
**Omar Gonzalez-Pagan***
**Karen Loewy***
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
120 Wall Street, 19th Floor
New York, New York 10005
Telephone: (212) 809-8585
Facsimile: (212) 809-0055
kloewy@lambdalegal.org
ogonzalez-pagan@lambdalegal.org

**Aaron C. Morris***
IMMIGRATION EQUALITY
40 Exchange Place, Suite 1300
New York, New York 10005-2744
Telephone: (212) 714-2904
amorris@immigrationequality.org

*Attorneys for Plaintiffs*

24

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JAMES DEREK MIZE, et al.,

       *Plaintiffs,*

    v.

MICHAEL R. POMPEO, et al.,

       *Defendants.*

Civil Action No. 1:19-cv-3331-MLB

## CERTIFICATE OF SERVICE AND COMPLIANCE

I hereby certify that the foregoing reply brief was filed electronically using the Court's CM/ECF system, which provides electronic notice of the filing to all counsel of record. Parties may access this filing through the Court's electronic filing system.

I further certify that the foregoing was prepared in compliance with LR 5.1 because it is typed in Times New Roman (14 point) font, and its top margin is not less than one and one-half (1 ½) inches and left margin is not less than one (1) inch.

*/s/ Omar Gonzalez-Pagan*
Omar Gonzalez-Pagan
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
120 Wall Street, 19th Floor
New York, New York 10005
ogonzalez-pagan@lambdalegal.org

25