## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

JAMES DEREK MIZE, et al.,

*Plaintiffs*,

v.

MICHAEL R. POMPEO, et al.,

*Defendants*.

Civil Action No. 1:19-cv-3331-MLB

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION

Pursuant to LR 7.1(B) and this Court's June 8, 2020 Order, Plaintiffs, by and through their attorneys, hereby respectfully file this response in opposition to Defendants' motion to dismiss for lack of subject-matter jurisdiction, filed on June 5, 2020 (Doc. 63).

## INTRODUCTION

Following oral argument on Plaintiffs' motion for partial summary judgment and Defendants' motion to dismiss for failure to state a claim, Defendants now further move to dismiss Plaintiffs' Complaint with a last-ditch, misguided argument that somehow the case is moot. Defendants argue that because S.M.-G. is now a lawful permanent resident, she is now automatically a *naturalized* citizen pursuant

1

to 8 U.S.C. § 1431(a), and therefore Plaintiffs' claims for recognition of her *birthright* citizenship pursuant to Section 301(c) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1401(c), are now moot. In order for this case to be moot, however, the Court would have to accept Defendants' striking argument that *naturalized* citizenship and *birthright* citizenship are the same *in every respect*. That is neither the law nor reality.

Accordingly, and for the reasons set forth herein, the Court should deny Defendants' motion to dismiss for lack of subject-matter jurisdiction.

## FACTUAL AND PROCEDURAL BACKGROUND

On July 23, 2019, Plaintiffs filed a complaint for declaratory and injunctive relief based on Defendants' refusal to recognize Plaintiff S.M.-G. as a U.S. citizen since birth pursuant to Section 301(c). *See* Doc. 7 ("Compl."). The Complaint asserts claims under the INA, the Fifth Amendment to the United States Constitution, and the Administrative Procedure Act. *Id.*

As alleged in the Complaint, S.M.-G. is the daughter of two married United States citizens, James Derek Mize and Jonathan Gregg. Compl. ¶¶ 1, 12, 50, 57. She was born in England, via gestational surrogacy, in 2018. Compl. ¶¶ 2, 45. Because S.M.-G. was born abroad to married U.S. citizen parents, at least one of

2

whom has resided in the United States, S.M.-G. is a United States citizen since birth, pursuant to Section 301(c) of the INA.  Compl. ¶¶ 3, 64.

However, on April 24, 2019, the U.S. Department of State refused to recognize S.M.-G. as a citizen since birth because it deems her to have been "born out of wedlock" and Mr. Gregg, the parent with whom she has a biological relationship, had not resided long enough in the United States for S.M.-G. to obtain derivative citizenship pursuant to Section 309 of the INA.  Compl. ¶¶ 4, 6, 54. Defendants consider S.M.-G. to be "born out of wedlock" and not the marital child of Mr. Mize and Mr. Gregg because, according to Defendants, a child must have a biological relationship to *both* of her married parents in order for her to be considered their marital child.   Compl. ¶¶ 5, 28.   Defendants' biological relationship requirement, however, is not part of Section 301 of the INA.  Compl. ¶ 27.

Defendants' refusal to recognize S.M.-G.'s birthright citizenship pursuant to Section 301(c) harmed and continues to harm Plaintiffs, separate and apart from S.M.-G.'s ability to reside in America as a U.S. citizen.  As alleged in the Complaint, Defendants subjected and continue to subject the Mize-Gregg family to stigma, second-class citizenship, and unequal treatment by refusing to recognize S.M.-G. as the marital child of Mr. Mize and Mr. Gregg and, as such, entitled to birthright citizenship pursuant to Section 301(c).  Compl. ¶¶ 60, 75, 79, 86-88.  Likewise, as alleged in the Complaint, Defendants disregarded and continue to disregard the

3

marriage of Mr. Mize and Mr. Gregg by treating S.M.-G. as a non-marital child, and disregarded and continue to disregard the parent-child relationship between Mr. Mize and S.M.-G. for purposes of derivate citizenship pursuant to Section 301(c). Compl. ¶ 75.  Lastly, as also alleged in the Complaint, Defendants' refusal to recognize S.M.-G. as a natural-born U.S. citizen means that she is deprived of certain substantive rights, such as the ability to run for President, if she so chooses.  Compl. ¶ 59.

On November 4, 2019, Defendants' moved to dismiss Plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  *See* Doc. 32.  On January 17, 2020, Plaintiffs' moved for partial summary judgment on their INA claim brought under 8 U.S.C. § 1503.  *See* Doc. 44.  Briefing on the motions was completed on March 6, 2020.

Defendants' refusal to recognize S.M.-G. as a U.S. citizen put the Mize-Gregg family in an untenable position even during the pendency of this litigation.  Because Defendants refused to recognize S.M.-G.'s birthright citizenship and her entry visa had expired on July 29, 2019, Mr. Mize and Mr. Gregg feared for S.M.-G.'s safety, security, and wellbeing while being present in the United States "out of status." Mize Decl. ¶¶ 9-10.  Moreover, not being recognized as a U.S. citizen meant that S.M.-G. was unable to travel abroad with her parents for fear of being denied reentry, and therefore unable to visit Mr. Gregg's elderly, ailing parents in the United

4

Kingdom.  Mize Decl. ¶¶ 11-12; *see also* Hr'g Tr. (Doc. 61) at 28:11-24.  As a result, notwithstanding their claims before this Court that S.M.-G. is a natural-born U.S. citizen, Mr. Mize and Mr. Gregg applied for lawful permanent residence for S.M.-G. in December 2019 out of an abundance of caution and in order to protect their young daughter.  Mize Decl. ¶¶ 13-14; *see also* Hr'g Tr. 28:9-11.  S.M.-G.'s pending application for lawful permanent residence gave her permission to reside in the United States with her parents, and thus served as a "stopgap" measure and part of a belt-and-suspenders approach that Mr. Mize and Mr. Gregg undertook to protect their daughter.  Mize Decl. ¶ 14 ("Although we should not have had to do any of this, we took the steps we thought were necessary to assure her safety and wellbeing while we continued to fight for recognition of her citizenship at birth."); *see also* Hr'g Tr. 28:11-14.

On April 27, 2020, in an unusually fast four-month processing time, U.S. Citizenship and Immigration Services ("USCIS") notified Mr. Mize and Mr. Gregg that S.M.-G.'s application for lawful permanent residence had been approved.  Mize Decl. ¶ 18, Ex. A; *see also* Hr'g Tr. at 29:4-11.  The *minimum* processing times at the various USCIS service centers for an application for lawful permanent residency by a U.S. citizen filing for a spouse, parent, or child under 21 averages out to 10.5 months.  *See* USCIS, Check Case Processing Times, https://egov.uscis.gov/ processing-times/ (last accessed June 19, 2020).

On May 26, 2020, the Court held a hearing on Defendants' motion to dismiss pursuant to Rule 12(b)(6) and Plaintiffs' motion for partial summary judgment. *See* Doc. 62. At the hearing, Defendants' counsel noted that the government had granted S.M.-G. lawful permanent residence, but suggested only that there "could be a path to citizenship now for S.M.-G. that doesn't depend on 1401." *See* Hr'g Tr. 53:18-54:7. On June 5, 2020, Defendants filed a motion to dismiss for lack of subject-matter jurisdiction, now arguing Plaintiffs' Complaint is moot because, according to Defendants, S.M.-G. is now a naturalized citizen.

## LEGAL STANDARD

A court "should dismiss a complaint under Rule 12(b)(1) only where it lacks jurisdiction over the subject matter of the dispute." *Hill v. Re*, 574 B.R. 322, 330 (N.D. Ga. 2017). "Factual attacks challenge subject matter jurisdiction in fact." *Tenet Healthsystem GB, Inc. v. Care Improvement Plus S. Cent. Ins. Co.*, 162 F. Supp. 3d 1307, 1310 (N.D. Ga. 2016), *aff'd*, 875 F.3d 584 (11th Cir. 2017). As such, "the Court may consider extrinsic evidence, such as testimony and affidavits," and "the plaintiff has the burden to prove that jurisdiction exists." *Id.* A claim that intervening events since a plaintiff commenced an action have rendered the plaintiff's case moot and thus deprived the court of subject matter jurisdiction is a

factual attack.  *See Thomas v. Branch Banking & Tr. Co.*, 32 F. Supp. 3d 1266, 1268

(N.D. Ga. 2014).

## ARGUMENT

A case becomes moot *only* "when the issues presented are no longer live or

the parties lack a legally cognizable interest in the outcome."  *Chafin v. Chafin*, 568

U.S. 165, 172 (2013) (quotations omitted); *see also Barillas v. Field Office Dir. for*

*ICE Miami Office of Enf't & Removal Operations*, 697 F. App'x 624, 625 (11th Cir.

2017).  In other words, a plaintiff need merely "demonstrate that she possesses a

legally cognizable interest, or personal stake, in the outcome of the action."  *Genesis*

*Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71 (2013) (quotations omitted).  Thus, a

case is moot "only when it is impossible for a court to grant any effectual relief

whatever to the prevailing party."  *Chafin*, 568 U.S. at 172 (quotations omitted).  "As

long as the parties have a concrete interest, however small, in the outcome of the

litigation, the case is not moot."  *Id.* (quotations omitted).

Here, two key questions lie at the heart of this case, neither of which is

resolved by S.M.-G.'s lawful permanent residence and purported automatic

naturalization.  The first is whether S.M.-G. is and has always been a United States

citizen since the time of her birth.  The answer:  yes.  The second is whether it is

lawful for Defendants to treat the marital children of same-sex couples as children

"born out of wedlock" because they lack a biological relationship to both their

parents.  The answer:  no.  The purported automatic naturalization of S.M.-G.,
pursuant to 8 U.S.C. § 1431(a), resolves neither of these issues and does not provide
the effectual relief Plaintiffs need.  That is to say, "[t]his dispute is still very much
alive."  *Chafin*, 568 U.S. at 173; *see also Entines v. United States of Am.*, 160 F.
Supp. 3d 208, 212 (D.D.C. 2016) (holding that plaintiff had "standing to request a
declaratory judgment that the Constitution entitled him to birthright citizenship, and
th[e] case [was] not 'moot based upon his naturalization as a U.S. citizen'").

First, the Plaintiffs have a concrete and legally cognizable interest in having
S.M.-G. recognized as a United States citizen since birth.  There are key and
substantial differences between naturalized citizenship and citizenship at birth.
While a U.S. citizen since birth has always been an American, a naturalized citizen
is, by definition, an immigrant.  Indeed, the Supreme Court has described
naturalization as "the act of adopting a foreigner, and clothing him with the
privileges of a native citizen."  *Boyd v. Nebraska ex rel. Thayer*, 143 U.S. 135, 162
(1892).  This difference in status is significant, in legal and practical terms, and
means that Defendants' mootness argument fails.  *See Elk v. Wilkins*, 112 U.S. 94,
101 (1884) ("The distinction between citizenship by birth and citizenship by
naturalization is clearly marked in the provisions of the constitution[.]"); *id.* at 109
("To be a citizen of the United States is a political privilege which no one, not born
to, can assume without its consent in some form."); *Miller v. Albright*, 523 U.S. 420,

481 (1998) (Breyer, J., dissenting) ("In sum, the statutes that automatically transfer American citizenship from parent to child 'at birth' differ significantly from those that confer citizenship on those who originally owed loyalty to a different nation."); *Entines*, 160 F. Supp. 3d at 212.

One of the substantial differences between naturalized citizenship and birthright citizenship is the ability of S.M.-G. to aspire to and, if she so chooses, the legal right to run for the presidency. *See* U.S. Const. art. II, § 1 ("No Person except a natural born Citizen … shall be eligible to the Office of President …"). This is not a trivial issue. *See* Paul Clement & Neal Katyal, *On the Meaning of "Natural Born Citizen*," 128 Harv. L. Rev. F. 161 (2015) (discussing the debate about whether the late U.S. Senator John McCain and U.S. Senator Ted Cruz were natural born citizens eligible to run for President). It is common among American children to say, "When I grow up, I want to be President." True, few children will grow up to run for the presidency, much less actually become President of the United States, but such aspiration undoubtedly starts many a young person on a lifetime of learning, achievement, and service, and the deprivation of the right to do so constitutes actual harm.

An additional substantial difference is that naturalized citizens may have their citizenship revoked in ways natural-born citizens cannot. *See*, *e.g.*, 8 U.S.C. § 1451. Under current law, a naturalized citizen can be denaturalized if the government

discovers that there were material errors, omissions, or concealed facts on their naturalization application (or in S.M.-G.'s case, application for lawful permanent residence).  *Id.*  A naturalized citizen can also be denaturalized if they refuse to testify to Congress or are discovered to be a member of certain organizations.  *Id.* Moreover, naturalization is a discretionary act and the Attorney General retains the power "to correct, reopen, alter, modify, or vacate an order naturalizing [a] person." 8 U.S.C. § 1451(h).  Put simply, S.M.-G.'s status as a U.S. citizen is vulnerable because of the differences between naturalized citizenship and birthright citizenship.

Furthermore, the federal government treats naturalized citizens and natural-born citizens differently in a number of circumstances.  For example, the ability to obtain national security clearances and obtain certain forms of governmental employment has been and is affected by a person's naturalized status.  *See*, *e.g.*, *Tiwari v. Mattis*, 363 F. Supp. 3d 1154, 1160 (W.D. Wash. 2019) (challenging Department of Defense policy that made it harder for naturalized service members to obtain security clearance); *Huynh v. Carlucci*, 679 F. Supp. 61 (D.D.C. 1988) (challenging Department of Defense regulation automatically denying security clearance to naturalized citizens); *Faruki v. Rogers*, 349 F. Supp. 723, 726 (D.D.C. 1972) (challenging statute that made it more difficult for naturalized citizens born abroad to join the Foreign Service than it was for native-born citizens); *see also* U.S. Dep't of State, *Dual Citizenship – Security Clearance Implications* (June 1, 2007),

https://careers.state.gov/wp-content/uploads/2016/02/Dual-Citizenship.pdf (emphasizing that naturalization is grounds for additional scrutiny for purposes of granting security clearance); Am. Univ. Career Ctr., *Security Clearance Fact Sheet* (Feb. 2017), https://news.clearancejobs.com/2017/05/24/new-dual-citizenship-guideline-security-clearance-eligibility/ ("Students who are naturalized American citizens and who have emigrated from certain countries … may have to wait longer than normal for completion of the process."). Similarly, efforts to limit the governmental benefits available to naturalized citizens have been previously introduced in Congress. *See* Melinda L. Seymore, *The Presidency and the Meaning of Citizenship*, 2005 BYU L. Rev. 927, 931 n.23 (2005) (noting bills to eliminate eligibility for benefit programs including food stamps, Supplemental Security Income, Aid to Families with Dependent Children, and Medicaid for recently naturalized citizens have been previously introduced in Congress).

And given recent history, the discretionary character of naturalization, and the specter of congressional changes to the naturalization regime, naturalized citizens in the United States currently live under a cloud of uncertainty. Indeed, "[n]aturalized citizens' sense of security has been fundamentally shaken by policy developments in the last five years." Cassandra Burke Robertson & Irina D. Manta, *(Un)civil Denaturalization*, 94 N.Y.U. L. Rev. 402, 402 (2019); *see also* Zoe Samudzi, *Naturalized Citizens Like My Mother Now Live In Fear of Status Reversal*, Teen

Vogue (Jan. 15, 2019), https://www.teenvogue.com/story/naturalized-citizens-live-in-fear-of-status-reversal.  Just a few months ago, the U.S. Department of Justice created a new section solely dedicated to bringing denaturalization cases.  *See* Press Release, U.S. Dep't of Justice, *The Department of Justice Creates Section Dedicated to Denaturalization Cases* (Feb. 26, 2020), https://www.justice.gov/opa/pr/department-justice-creates-section-dedicated-denaturalization-cases.  In addition, the current administration has proposed a number of changes to immigration laws and regulations in order to limit naturalization.  *See*, *e.g.*, Karen J. Greenberg, *Trump Wants to Take Away Your Citizenship*, The Nation (Mar. 21, 2019), https://www.thenation.com/article/archive/trump-wants-to-take-your-citizenship-denaturalization/.  As such, it is unsurprising that naturalized citizens live under a cloud of fear and anxiety, or that Mr. Mize and Mr. Gregg fear for S.M.-G.'s safety and security, and their ability to remain together as a family in the United States.  *See* Mize Decl. ¶ 10.

In addition, S.M.-G. may be subjected to government-imposed stigma if Defendants' attempted end-run around this Court's jurisdiction were upheld.  Some scholars have found that naturalized U.S. citizens are stigmatized in a way that U.S. citizens since birth are not.  *See* Melinda L. Seymore, *The Presidency and the Meaning of Citizenship*, 2005 BYU L. Rev. 927, 931 (2005); Randall Kennedy, *A Natural Aristocracy?*, 12 Const. Comment. 175, 176 (1995).  That the government

seeks to impose this burden on the children born abroad of married, same-sex, U.S.-citizen couples renders it all the more potent and suspect. *Obergefell v. Hodges*, 135 S. Ct. 2584, 2601-02 (2015).  Accepting Defendants' position that this case is moot would force S.M.-G. to bear a stigma, however wrong it is, that she otherwise would not carry as a birthright citizen.

Thus, S.M.-G. has a continued, legally cognizable interest in being recognized as a birthright citizen.  As noted above and below, being deemed a naturalized citizen forecloses certain future possibilities for her, complicates others, and creates unnecessary and harmful uncertainty and stigma about both her citizenship and her family of origin.  The difference between birthright citizenship and naturalized citizenship is more than sufficient such that a clear, actual, and concrete controversy exists to be conclusively determined by this Court. *See Gagliardi v. TJCV Land Tr.*, 889 F.3d 728, 735 (11th Cir. 2018) (summarizing mootness case law in the context of declaratory judgment actions).

Second, Defendants' motion to dismiss is premised on a legal impossibility. Defendants argue S.M.-G. is automatically a naturalized U.S. citizen pursuant to 8 U.S.C. § 1431(a).  To be sure, Defendants' argument is entirely based on the presumption that S.M.-G. is now recognized as a U.S. citizen. *See* Doc. 63 at 3 ("assuming"); *id.* at 5 (same); Hrg. Tr. 53:23-25 (stating "it *could be* that S.M.-G. is entitled to citizenship now" "under Section 1431(a)" (emphasis added)).  But a

13

natural-born U.S. citizen, *i.e.*, a citizen since birth, cannot become a U.S. citizen (again) through naturalization. *See Miller*, 523 U.S. at 480 (Breyer, J., dissenting) ("Congress does not believe that … citizenship [at birth] involves 'naturalization.'"). Indeed, "[t]he term 'naturalization' means the conferring of nationality of a state upon a person *after birth*, by any means whatsoever." 8 U.S.C. § 1101(a)(23) (emphasis added). And, as the Supreme Court has recognized, a legal nullity cannot moot a case. *See Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 670 (2016). Here, Defendants' continued refusal to recognize S.M.-G. as a natural-born U.S. citizen is not mooted by the USCIS's purported grant of permanent residence to her. S.M.-G.'s "interest in the lawsuit remains just what it was before. And so too does the court's ability to grant her relief." *Id.* at 670 (quoting *Genesis Healthcare*, 569 U.S. at 79 (Kagan, J., dissenting)).

Third, the purported automatic naturalization of S.M.-G. does not remedy the stigma and dignitary harms inflicted on Plaintiffs. While Defendants appear to acknowledge the harm they are continuing to inflict upon the family, they bat it away as insignificant. *See* Doc. 63 at 6. At the same time, Defendants still refuse to treat S.M.-G. as the marital child of Mr. Mize and Mr. Gregg for purposes of citizenship, and continue to deny the parent-child relationship between Mr. Mize and S.M.-G. for purposes of derivative citizenship. This continued and unaddressed refusal should counsel the Court to reject Defendants' mootness argument.

The Supreme Court's opinion in *Stanley v. Illinois*, 405 U.S. 645, 648 (1972), is instructive.  Mr. Stanley challenged a state law declaring his children to be wards of the state after the death of their mother, presumptively deeming him an unfit parent solely because he had not been married to their mother.  *Id.* at 646.  The State argued that the availability of other routes for Mr. Stanley to regain custody of his children obviated the need to address the illegality of the dependency proceedings that deprived him of their custody in the first place, but the Supreme Court squarely rejected any such suggestion, noting the need to address the harms experienced by both Mr. Stanley and his children. *Id.* at 647.  Like Mr. Stanley, Mr. Mize is "treated not as a parent but as a stranger to his child[]."  *Id.* at 648.  Just as adoption or guardianship proceedings were not an alternative remedy to the harm Mr. Stanley suffered, here, the purported automatic naturalization of S.M.-G. does not erase or negate the harms caused by Defendants' unlawful and continued refusal to treat S.M.-G. as the marital child of Mr. Mize and Mr. Gregg and to recognize the parent-child relationship between Mr. Mize and S.M.-G.  "This Court has not [] embraced the general proposition that a wrong may be done if it can be undone."  *Id.*  at 647.

Finally, Mr. Mize and Mr. Gregg are currently considering expanding their family, and their concerns about whether another child of theirs born abroad would be recognized as a U.S. citizen at birth is affecting their family planning.  Mize Decl. ¶ 20; *cf. Cook v. Bennett*, 792 F.3d 1294, 1300 (11th Cir. 2015) (finding that case

was not moot because it was "not absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur" (quotation omitted)).   Stated differently, the purported automatic naturalization of S.M.-G. does not provide complete and effectual relief to Plaintiffs, as to either their statutory claims or their constitutional claims.

The fundamental legal question in this case is:  has S.M.-G. been a United States citizen since birth?  As such, "the challenged governmental activity in the present case … has not evaporated or disappeared." *Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115, 122 (1974).  To the contrary, "its continuing and brooding presence" "casts what may well be a substantial adverse effect on the interests of the petitioning parties."   *Id.*   The only way to resolve the fundamental legal question here is through a declaration by this Court.   *Cf. Gonzalez Boisson v. Pompeo*, No. CV 19-2105 (JDB), 2020 WL 2043889, at *6 (D.D.C. Apr. 28, 2020).[1]

The requested relief in this case is not just a declaration that S.M.-G. is a United States citizen, but that the Court (1) declare that S.M.-G. is and has always been a *natural-born* United States citizen pursuant to  Section 301(c), Compl. at 31,

---

[1] In their motion, Defendants suggest "Plaintiffs could apply for documentation, such as a passport, reflecting SM-G's citizenship."  Doc. 63 at 1.  Of course, as Defendants later admit, *id.* at 5, a passport for S.M.-G. "has no bearing on whether she is actually a citizen."  *Gonzalez Boisson*, 2020 WL 2043889, at *6.  Only a declaration from this Court can now confirm that S.M.-G. is a natural-born U.S. citizen.

¶ A, and (2) declare and set aside Defendants' extra-textual biological relationship requirement as unlawful because it is contrary to the INA and it violates the constitutional rights of Plaintiffs, Compl. at 32, ¶¶ C-D.

## CONCLUSION

Because Defendants still refuse to recognize S.M.-G. as a natural born United States citizen, there is an actual case and controversy for this Court to decide *and* the Court can (and should) grant effectual relief to remedy Plaintiffs' claims.  Plaintiffs therefore respectfully request that the Court deny Defendants' motion to dismiss for lack of subject-matter jurisdiction.

Dated this 19th day of June, 2020.

Respectfully submitted,

_/s/ Omar Gonzalez-Pagan_

Susan Baker Manning*
Eleanor Pelta*
MORGAN LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone: (202) 739-3000
susan.manning@morganlewis.com
eleanor.pelta@morganlewis.com

Omar Gonzalez-Pagan*
Karen L. Loewy*
LAMBDA LEGAL DEFENSE AND
    EDUCATION FUND, INC.
120 Wall Street, 19th Floor
New York, New York 10005
Telephone: (212) 809-8585
Facsimile: (212) 809-0055
ogonzalez-pagan@lambdalegal.org
kloewy@lambdalegal.org

John A. Polito*
Christie P. Bahna*
MORGAN LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco, California 94105
Telephone: (415) 442-1000
john.polito@morganlewis.com
christie.bahna@morganlewis.com

Tara L. Borelli (Bar No. 265084)
LAMBDA LEGAL DEFENSE AND
    EDUCATION FUND, INC
Southern Regional Office
730 Peachtree Street NE, Suite 640
Atlanta, Georgia 30308
Telephone: (404) 897-1880
tborelli@lambdalegal.org

Jacquelynne M. Hamilton*
MORGAN LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, Pennsylvania 19103
Telephone: (215) 963-5000
jacquelynne.hamilton@morganlewis.com

Aaron C. Morris*
IMMIGRATION EQUALITY
40 Exchange Place, Suite 1300
New York, New York 10005-2744
Telephone: (212) 714-2904
amorris@immigrationequality.org

  *Admitted _pro hac vice_

Attorneys for Plaintiffs

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

JAMES DEREK MIZE, et al.,

*Plaintiffs*,

v.

MICHAEL R. POMPEO, et al.,

*Defendants.*

Civil Action No. 1:19-cv-3331-MLB

**CERTIFICATE OF SERVICE AND COMPLIANCE**

I hereby certify that the foregoing Response in Opposition to Defendants' Motion to Dismiss was filed electronically using the Court's CM/ECF system, which provides electronic notice of the filing to all counsel of record. Parties may access this filing through the Court's electronic filing system.

I further certify that the foregoing was prepared in compliance with LR 5.1 because it is typed in Times New Roman (14 point) font, and its top margin is not less than one and one-half (1½) inches and left margin is not less than one (1) inch.

Dated this 19th day of June, 2020.

*/s/ Omar Gonzalez-Pagan*
Omar Gonzalez-Pagan