UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| James Derek Mize, et al.<br><br>   Plaintiffs,<br><br>v.<br><br>Michael R. Pompeo, in his official capacity as Secretary of State, et al.<br><br>   Defendants. | Case No. 19-cv-3331 |

**Reply Memorandum in Support of
Motion to Dismiss for Lack of
Subject-Matter Jurisdiction**

## I.   Introduction

If Plaintiffs' allegations are true, SM-G is now a U.S. citizen. Plaintiffs do not even try to argue that SM-G does not satisfy the citizenship requirements in 8 U.S.C. § 1431(a). SM-G's U.S. citizenship remedies all concrete, imminent injuries to Plaintiffs that are alleged in the Complaint, and so the case is moot. Plaintiffs' responses largely hinge on a flawed premise: that a case is not moot if Plaintiffs have not gotten the precise form of relief they sought (citizenship under 8 U.S.C. § 1401(c)), or if they would still prefer judicial resolution of the outstanding legal questions in this case. But the mootness inquiry focuses on concrete *injuries* and Plaintiffs have failed to

1

show that any remain.

If SM-G is now a U.S. citizen under section 1431(a), she has the right to permanently reside in the U.S., and she qualifies for a U.S. passport. Plaintiffs can no longer claim to be "concerned about their family being separated." Hr'g Tr., 28:21-22. There are no further concrete pre-existing or imminent injuries warranting judicial intervention. Plaintiffs' arguments for why the Court should allow this suit to continue lack merit.

*First*, Plaintiffs argue that there are differences between citizenship pursuant to section 1401(c) and citizenship pursuant to section 1431(a). But Plaintiffs do not allege that they are currently suffering, or will imminently suffer, any concrete *injury* based on these alleged differences. Any potential, future injuries that that SM-G may suffer from any differences between citizenship under section 1401(c) and section 1431(a) are purely speculative at this point, and do not give rise to Article III jurisdiction. Unsurprisingly, the D.C. Circuit rejected a nearly identical argument, and found that the district court lacked jurisdiction, in *Grauert v. Dulles*—a similar case where plaintiffs sought a declaration of citizenship at birth, even though they were already naturalized citizens.

Additionally, the alleged differences Plaintiffs identify between citizenship pursuant to section 1401(c) and citizenship pursuant to section 1431(a) are largely based on a misunderstanding of section 1431(a). Plaintiffs assume, incorrectly, that all

forms of naturalized citizenship are alike, and thus they cite to no sources specifically addressing section 1431(a). Importantly, Defendants are aware of no statutory provision (and Plaintiffs do not cite any) that would allow the government to denaturalize SM-G if she is a citizen pursuant to section 1431(a). Further, to the extent there are material differences between citizenship acquired through section 1401(c) and citizenship acquired through section 1431(a), none presents an imminent injury warranting judicial relief.

*Second*, Plaintiffs argue that they will still suffer a stigma based on Defendants' position concerning section 1401(c). But this stigma is based on a contortion of Defendants' legal position. Defendants require a biological relationship between a child and her parents before recognizing citizenship under section 1401(c), regardless of the parents' sexual orientation. This policy does not target same-sex couples. Indeed, Defendants have never contested the legitimacy of the marriage between James Mize and Jonathan Gregg, nor have Defendants denied that both of them are legal parents of SM-G. In any event, the alleged stigma is simply a "psychic harm" that the Supreme Court has repeatedly found insufficient for Article III jurisdiction.

*Third*, Plaintiffs argue that Mize and Gregg are considering expanding their family, and Defendants' position on section 1401(c) may influence their decision. But this alleged injury is neither certain nor imminent. Plaintiffs state only that Mize and Gregg are *considering* expanding their family, and Plaintiffs allege no facts describing

the circumstances in which Mize and Gregg intended any future child of theirs to be born. Thus it is unclear whether they will have another child, and equally unclear whether that child would have been born abroad and denied citizenship at birth. Further, Mize and Gregg may undertake family planning decisions whereby no similar dispute would arise, or their future child could pursue the same route to citizenship as SM-G—lawful permanent resident status, followed by citizenship through section 1431(a).

*Fourth*, and finally, Plaintiffs argue that it is "legally impossible" for SM-G to be a citizen under section 1431(a) because SM-G is allegedly already a citizen under section 1401(c). But obviously, Plaintiffs brought suit because Defendants have *not* recognized section 1401(c) citizenship for SM-G. Thus, there is nothing "legally impossible" about the government recognizing that SM-G is a citizen under section 1431(a), and acknowledging that she has the rights to U.S. citizenship necessary to rectify any of the alleged, concrete injuries in the Complaint. For all the foregoing reasons, the Court should dismiss this action as moot.

## II.     Argument

"[A] case generally becomes moot and must be dismissed" when "the parties lack a legally cognizable interest in the outcome." *Flanigan's Enterprises, Inc. of Georgia v. City of Sandy Springs, Georgia*, 868 F.3d 1248, 1255 (11th Cir. 2017). A "legally cognizable interest" implies a cognizable, Article III injury; thus, if "the injury ceases

. . . then the case becomes moot." *Checker Cab Operators, Inc. v. Miami-Dade Cty.*, 899 F.3d 908, 915 (11th Cir. 2018); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 101–02 (1983) (for Article III jurisdiction, a plaintiff must "show that [she] has sustained or is immediately in danger of sustaining some direct injury;" "[a]bstract injury is not enough."); *ITT Rayonier Inc. v. United States*, 651 F.2d 343, 345 (5th Cir. 1981) (If the alleged injuries are "too speculative," they cannot "overcome mootness."). Contrary to Plaintiffs' assertion, a "legally cognizable interest" cannot simply be a preference for judicial resolution of a legal question. *See Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 470 (1982) ("The requirements of Art. III are not satisfied merely because a party requests a court of the [U.S.] to declare its legal rights."); *ITT Rayonier Inc*, 651 F.2d at 345 ("A court will find mootness even if the parties remain at odds over the particular issue they are litigating."). Nor can the "interest" be that Plaintiffs would prefer a different remedy. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998) ("Relief" unnecessary to "remedy the injury suffered cannot bootstrap a plaintiff into federal court."). There must be a cognizable Article III injury, and Plaintiffs "bear[] the burden of showing" that one exists. *See Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).

Here, if Plaintiffs' allegations are true, SM-G is a U.S. citizen, and has the immediate rights of citizenship which Plaintiffs claimed were necessary to rectify any concrete, imminent harms to Plaintiffs. *See, e.g.*, Compl. ¶ 7 (referring to "the rights

and privileges of U.S. citizenship, including most urgently the right to reside permanently in the [U.S.] with [SM-G's] U.S.-citizen parents."); *id.* ¶ 9 (referring to the right to "a passport"); Hr'g Tr., 28:21-22 (stressing the risk of family separation). A decision on the merits is no longer necessary to remedy any cognizable, Article III injury, and thus the Court should dismiss this case. Dismissal is especially appropriate here since the "exercise of the judicial power . . . . affects relationships between the coequal arms of the National Government," and courts should seek to avoid "head-on confrontations" with the Executive Branch. *Valley Forge*, 454 U.S. at 473-74. In response, Plaintiffs make four arguments, none of which has merit.

*Section 1401(c) vs. Section 1431(a).* Plaintiffs claim there is a difference between citizenship at birth under section 1401(c), and citizenship under section 1431(a). But Plaintiffs do not claim that they are currently suffering, or will imminently suffer, any concrete *injury* due these alleged differences. *See Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) ("A threatened injury must be 'certainly impending' to constitute" a cognizable injury). The alleged differences, in themselves, cannot give the Court jurisdiction over this matter.

The case *Grauert v. Dulles* is on point. 239 F.2d 60 (D.C. Cir. 1956). There, the plaintiffs "asked the District Court to declare them to be citizens of the United States by birth," whereas the government argued that "they are [already] citizens by naturalization." *Id.* at 61. The D.C. Circuit ultimately found that the district court

lacked jurisdiction to provide Plaintiffs with relief. The court reasoned that "plaintiffs" simply "do not want to risk the consequences of the differentiation between naturalized citizens and citizens by birth in the face of the existing negative determination by defendant" but "[n]o such consequences appear to have arisen, other than [the government's] refusal to give the plaintiffs certain birth certificates that might become useful, in the indefinite future, in circumstances that may never arise." *Id.* The same reasoning applies here: Plaintiffs simply "do not want to risk the consequences of the differentiation between naturalized citizens and citizens at birth," but "no such consequences appear to have arisen" and may only arise "in the indefinite future, in circumstances that may never arise."

Plaintiffs cite to *Entines v. U.S.*, which is distinguishable. 160 F.Supp.3d 208 (D.D.C. 2016). There, the plaintiff—a naturalized U.S. citizen who was born in the Philippines—claimed that his father "acquired US native-born citizenship" when his father joined the "US Armed Forces" during World War II. The plaintiff thus claimed that he "derivatively obtained his father's 'inherently war-earned' citizenship status at the time of birth," and critically, he claimed he was "entitled to Veterans, Social Security concurrent benefits" due to his father's U.S. citizenship and service during the War. *Id.* at 211. The court found that the plaintiff's claim for a declaration of plaintiff's at-birth citizenship was not moot since this declaration would implicitly resolve whether his *father* was a U.S. citizen, and would thus "allegedly entitle

7

[plaintiff] to various types of retroactive monetary relief." *Id.* at 212. Here, by contrast, there is no allegation of monetary harm that could be redressed by a favorable decision, or any other current or imminent harm related to a conferral of citizenship by naturalization on SM-G, as opposed to citizenship at birth. Accordingly, the alleged differences between these two bases for citizenship, in themselves, do not give the Court jurisdiction over this case.

In any event, the alleged differences between citizenship under section 1401(c) and citizenship under section 1431(a) are overstated, and to the extent there is any material difference, it is insufficient for Article III jurisdiction. As a threshold matter, Plaintiffs misunderstand the nature of citizenship under section 1431(a). Plaintiffs' arguments assume, incorrectly, that all forms of naturalized citizenship are the same. But different types of naturalized citizenship carry different requirements, and are often subject to different restrictions. For example, a typical "naturalized citizen" applies for citizenship, and then ultimately secures a Naturalization Certificate upon taking an oath (*e.g.*, at a naturalization ceremony in district court). *See* 8 U.S.C. § 1421. Those who secure citizenship through this process are subject to special denaturalization provisions. *See* 8 U.S.C. § 1451. Section 1431(a), by contrast, does not require an application, or any formal order. It confers citizenship "automatically" on those who satisfy its requirements. Importantly, so long as SM-G meets the section 1431(a) requirements, Defendants are aware of no statutory provision which would

8

allow the government to later deprive SM-G of her citizenship acquired under section 1431(a). Accordingly, the specific, alleged differences Plaintiffs identify between citizenship acquired under section 1401(c) and citizenship acquired under section 1431(a) are not as great as Plaintiffs suggest.

For example, Plaintiffs claim that SM-G may lose her citizenship acquired under section 1431(a). The denaturalization provision Plaintiffs cite to, however, applies to those who have undergone naturalization proceedings, and were naturalized by a formal *order*. *See, e.g.*, 8 U.S.C. § 1451(a) (allowing U.S. attorneys to bring suit "for the purpose of revoking and setting aside the *order* admitting" a "person to citizenship" under certain circumstances (emphasis added)); *id.* § 1451(h) ("the Attorney General" may "correct, reopen, alter, modify, or vacate *an order* naturalizing the person." (emphasis added)). This does not apply to those who acquired citizenship under section 1431(a)—for them, there is no naturalization "order" to revoke. They are "automatically" U.S. citizens once they satisfy the enumerated requirements. 8 U.S.C. § 1431(a). Thus, Plaintiffs refer to no statutory provision that would allow the government to denaturalize SM-G once she meets the requirements of section 1431(a), and Defendants are aware of none.

Plaintiffs also claim that naturalized citizens, unlike citizens at birth, may be subject to future legislative or policy changes which may "limit naturalization." Resp. Br., at 12. But this is entirely speculative, and Plaintiffs do not explain how a future

9

limit on naturalization could retroactively affect SM-G (who is *already* a naturalized citizen, assuming Plaintiffs' allegations are true). Additionally, this alleged risk applies equally to citizenship under section 1401(c). Plaintiffs appear to conflate "citizenship at birth" and *Constitutional* "birthright citizenship." Although section 1401(c) confers citizenship at birth, it is still only a *statutory* grant of citizenship, and is thus subject to legislative modifications (and limitations), just like any other statutory grant of citizenship (including section 1431(a)). *See Rogers v. Bellei*, 401 U.S. 815, 816-827 (1971) (finding that Congress could institute circumstances in which a citizen under section 1401 "shall lose [her] citizenship" because, in part, "[she] simply is not a Fourteenth-Amendment[] citizen."). Although parties often describe citizenship under section 1401 as "birthright citizenship," as if it is entirely distinct from "naturalized citizenship," this is a matter of semantics; indeed, the Supreme Court used to refer to *all* non-Constitutional grants of citizenship as forms of "naturalized citizenship." *U.S. v. Wong Kim Ark*, 169 U.S. 649, 702-03 ("[C]itizenship by birth is established by the mere fact of birth under the circumstances defined in the constitution . . . [a] person born out of the jurisdiction of the [U.S.] can only become a citizen by being naturalized.").

Plaintiffs then claim that naturalized citizens may be subject to differential treatment; *e.g.*, if they seek a national security clearance. Even assuming, *arguendo*, this is true, obviously there is no allegation here that SM-G will imminently be subject to

10

any of these forms of differential treatment, and thus any claim based on this alleged differential treatment is not ripe. Plaintiffs also do not explain how the sorts of security concerns that might plausibly arise for a person who was previously a citizen of another country, and gains U.S. citizenship as an adult, would apply to a child of U.S. citizens who automatically acquired U.S. citizenship at a young age.

Finally, Plaintiffs claim that only a citizen at birth may run for President. But again, it is purely speculative that SM-G will suffer any injury as a consequence of that distinction. A claim based on this theory is not ripe until, for example, SM-G does ultimately seek a run for President, or otherwise suffers a concrete, imminent harm based on her inability to run for President. The Court should not enter the extraordinary relief of an injunction against the Executive Branch based solely on the abstract possibility that any given child will aspire to and actually run for President; even Plaintiffs acknowledge that "few children will grow up to run for the presidency, much less actually become President." Resp. Br., at 9. Accordingly, none of the alleged differences between citizenship pursuant to section 1401(c) and citizenship pursuant to section 1431(a) poses a risk of imminent injury. Citizenship acquired under section 1431(a) addresses any and all of Plaintiffs' concrete harms, and thus the case is moot.

*Stigma.* Plaintiffs claim that they will still suffer stigma from Defendants' position that SM-G does not qualify for citizenship under section 1401(c). This claim of stigma, however, is based on a mischaracterization of the Defendants' legal

11

position. Contrary to Plaintiffs' assertion, SM-G was not denied citizenship under section 1401(c) because of her parents' sexual orientation. *See* SJ Resp., ECF No. 50, at 34-36. Nor have Defendants ever denied that *(i)* Mize and Gregg are lawfully married, and *(ii)* both are legal parents of SM-G. Defendants only argued that, to qualify for citizenship under section 1401(c), a child must be biologically related to married parents—a requirement that applies equally to the children of opposite-sex couples.

Furthermore, this alleged stigma is not a cognizable Article III injury. Plaintiffs are essentially arguing that a declaration of SM-G's entitlement to citizenship under section 1401(c) could remedy certain psychic harms Plaintiffs have allegedly suffered due to Defendants' legal position concerning section 1401(c). But "although a [plaintiff] may derive great comfort" from a judicial decree, "that psychic satisfaction is not an acceptable Article III remedy because it does not redress a cognizable Article III injury." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998); *see also Valley Forge*, 454 U.S. at 485-86 ("[T]he psychological consequence presumably produced" by conduct one takes issue with "is not injury sufficient to" satisfy Article III, regardless of "the intensity of the litigant's fervor."). Defendants "have no doubt that" Plaintiffs "would enjoy seeing this Court vindicate their cause as a worthy one," and [t]hey may truly believe that this purely psychic satisfaction would serve as an effective remedy for their complained-of injuries," but absent a "practical effect" on the parties, the Court is "without jurisdiction to give them that satisfaction." *Flanigan's*

*Enterprises*, 868 F.3d at 1268. Absent a concrete, cognizable injury, Plaintiffs cannot simply seek a declaration of their rights. *See Valley Forge*, 454 U.S. at 470 ("The requirements of Art. III are not satisfied merely because a party requests a court of the [U.S.] to declare its legal rights.").

Plaintiffs compare this case to *Stanley v. Illinois*, which is entirely inapplicable. 405 U.S. 645 (1972). There, the plaintiff was denied custody of his children upon their mother's death since, under Illinois law, "the children of unwed fathers become wards of the State upon the death of the mother." *Id.* at 646. The plaintiff challenged the law, and the Court concluded that it could consider the case even though "[the plaintiff] might be able to regain custody of his children as a guardian or through adoption proceedings." *Id.* at 647. Obviously, that case is not analogous to the situation here. First, in *Stanley*, guardianship and adoption proceedings were only *potential* avenues for relief, and since the plaintiff had not yet successfully availed himself of either, he was still "suffer[ing] from the deprivation of his children." *Id.* He was therefore still suffering an Article III injury. Here, of course, naturalized citizenship is not just a "potential avenue"; based on Plaintiffs' allegations, SM-G *is already* a naturalized citizen, and thus she is *not* suffering any concrete injury due to a lack of U.S. citizenship. The case at bar could only be comparable to *Stanley* if SM-G were *not* already a naturalized citizen, and Defendants were simply arguing that Plaintiffs *could* pursue naturalized citizenship. Second, *Stanley* never indicated that

"stigma" alone would have given the plaintiff standing to pursue his claim. The Court based its conclusion on a pre-existing, concrete harm: denial of custody over the plaintiff's children. Plaintiffs allege no similar, concrete harm here.

Accordingly, the alleged "stigma" is based on an incorrect understanding of Defendants' legal position, and otherwise cannot constitute an Article III injury sufficient to give the Court jurisdiction over the case.

*Family-planning.* Plaintiffs claim that Mize and Gregg are "considering expanding their family," and DOS's current position on section 1401(c) will influence their decision. But this alleged injury is neither certain nor imminent. Plaintiffs allege only that Mize and Gregg are "considering" expanding their family, and Plaintiffs do not allege that they intended for their future child to be born abroad (or when).

Plaintiffs also do not specify whether they intended for their next child to be biologically related to Gregg or Mize. This is critical since, if the child is biologically related to Mize, the child may qualify for citizenship, at birth, under 8 U.S.C. § 1409(a). Section 1409(a) allows a child born abroad to secure U.S. citizenship through a biological relationship with a U.S. citizen father if certain requirements are met. Plaintiffs note that SM-G did not qualify for citizenship under section 1409(a) since "her biological [father], Mr. Gregg, had not lived in the [U.S.] long enough prior to [SM-G's] birth to meet" the applicable "five-year residency requirement," Compl. ¶ 6. However, it appears that that Mize *would* satisfy this residency requirement. *See*

Compl. ¶ 10 (alleging that Mize was "was born and raised in the Jackson, Mississippi area."). Thus, it is entirely speculative that Mize and Gregg will soon have another child, and equally speculative and that any potential, future child they may have would fail to acquire U.S. citizenship at birth.

Additionally, even if Mize and Gregg have a child that does not qualify for citizenship under sections 1401 or 1409, the child may still pursue U.S. citizenship using the precise route as SM-G: securing lawful permanent resident status, and then citizenship under section 1431(a).

*Legal impossibility.* Plaintiffs also argue that it is "legally impossible" for SM-G to qualify for citizenship pursuant to section 1431(a), because she is allegedly a citizen already under section 1401(c). But that clearly is wrong. The whole point of Plaintiffs' lawsuit is that Defendants currently do *not* recognize SM-G as a citizen under section 1401(c). Thus, even by Plaintiffs' logic, there is nothing legally preventing Defendants from recognizing SM-G as a citizen under section 1431(a), and thus acknowledging that she has all the rights that accompany citizenship under section 1431(a). This remedies all of the cognizable harms that Plaintiffs sought to address through their requested relief (recognition of citizenship under section 1401(c)).

## III. Conclusion.

For these reasons, the Court should grant Defendants' Motion to Dismiss Plaintiffs' Complaint for lack of subject matter jurisdiction.

DATED: July 2, 2020                                  Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

ANTHONY COPPOLINO
Deputy Branch Director

*/s/* Kuntal Cholera
KUNTAL CHOLERA
Trial Attorney
United States Department of
Justice Civil Division, Federal
Programs Branch 1100 L, NW
Washington, DC 20005
Tel.: (202) 305-8645
Fax: (202) 616-8470
Email: kuntal.cholera@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 2, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all users receiving ECF notices for this case.

*/s/* Kuntal Cholera

Kuntal V. Cholera
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005

Attorney for Defendants
