

**U.S. Department of Justice**
Civil Division, Federal Programs Branch

---

Kuntal Cholera                                                                                          Tel.: (202) 305-8645
Trial Attorney                                                                                  E-mail: kuntal.cholera@usdoj.gov

August 10, 2020

Hon. Michael Brown
United States District Judge
Richard B. Russell Federal Building
75 Ted Turner Drive, SW
Atlanta, GA 30303

Re:Plaintiffs' August 3, 2020 Supplemental Letter (*Mize v. Pompeo*, 19-cv-3331).

Dear Judge Brown,

From the start, this case has been about Plaintiffs' claim that S.M.-G. is entitled to U.S. citizenship, which Plaintiffs alleged was necessary to remedy two purported injuries: (i) stigma, and (ii) the risk that S.M.-G. could not live in the United States with her family. *See* Defs.' 12(b)(1) Mot., at 3. The former is not a cognizable injury for the reasons set forth in Defendants' reply brief in support of the 12(b)(1) motion, and during the July 29, 2020 hearing. *See* Defs' 12(b)(1) Reply, at 12-14. The latter is no longer an issue: the parties agree that, assuming Plaintiffs' allegations are true, S.M.-G. is a U.S. citizen, and thus she may reside in the United States with her family.

In an effort to keep this case alive, Plaintiffs now attempt to reframe their injury: They say that what S.M.-G. needs is certainty that she can obtain a particular form of citizenship documentation, namely a passport. That argument fails for two reasons.

*First*, and most fundamentally, plaintiffs' asserted injury is entirely speculative. They have not attempted to apply for a passport since S.M.-G. became a citizen. And they point to no genuine basis to believe they would have trouble obtaining one if they were to apply. Contrary to Plaintiffs' assertion, they will *not* need a Certificate of Citizenship, a prior U.S. passport, or any other official citizenship documentation for S.M.-G.'s passport application. Instead, they will need only:

- Evidence that S.M.-G. satisfies the requirements of section 1431 of Title 8 of the U.S. Code, including proof of her (i) relationship to a U.S. citizen biological parent, (ii) lawful permanent resident status, and (iii) residence in the United States in the legal and physical custody of her U.S. citizen biological parent;

- Identification documents (and a photocopy thereof) for her U.S. citizen biological parent;

- A photo of S.M.-G.;

- A completed DS-11 application form; and

- Parental consent from Mize and Gregg for S.M.-G.'s passport application, which may be provided by both parents accompanying S.M.-G. when they submit her passport application.

All this is expressly stated on the State Department's website, obviating any concern about how the general documentation requirements stated on the DS-11 form would apply to a child who has acquired citizenship under § 1431. See *FAQ: Child Citizenship Act of 2000*, U.S. Department of State Bureau of Consular Affairs, https://travel.state.gov/content/travel/en/Intercountry-Adoption/adopt_ref/adoption-FAQs/child-citizenship-act-of-2000.html (accessed Aug. 6, 2020) (FAQ: "How Does the Child Get a Passport Under Section 230 of the Immigration and Nationality Act?");[1] Need a Passport:  Children Under 16, U.S. Department of State Bureau of Consular Affairs, https://travel.state.gov/content/travel/en/passports/need-passport/under-16.html (accessed Aug. 6, 2020) (Passport Requirement Guidance).  The website makes clear, in particular, that they would *not* need any of the forms of documentation ordinarily required for applicants born outside the United States, such as a previous passport, Certificate of Naturalization, Certificate of Citizenship, or Consular Report of Birth Abroad. Plaintiffs simply have no basis to suggest they will need counsel to accomplish this process, and most persons—including naturalized citizens—navigate through this process without counsel.

To the extent plaintiffs object to the cost of obtaining a passport, they would equally have needed to bear that cost had they prevailed on their claim under 8 U.S.C. § 1503; a judicial declaration of citizenship does not come with a passport attached. At any rate, the cost may be as low as $50 (for a U.S. passport card) or $115 (for a U.S. passport book). *See* Passport Requirement Guidance.

*Second*, if plaintiffs were nonetheless denied a passport for S.M.-G. "upon the ground that [she] is not a national of the United States," they would at *that* point have a live § 1503 claim to challenge the denial. The entirely speculative prospect that plaintiffs might have a live § 1503 claim in the future is not a basis to adjudicate their claim now.

Plaintiffs also contend that, even if they receive a U.S. passport for S.M.-G., a passport "would not give her the kind of generally-accepted proof of citizenship she will need throughout her life." *See* Pls.' Ltr., at 3-4. But plaintiffs identify no specific, imminent scenario where S.M.-G. would need formal documentation of citizenship and a passport would be deemed insufficient for that purpose. At any rate, federal law commands that "[a] passport," if issued for a period of maximum validity, "shall have the same force and effect as proof of United States citizenship as certificates of naturalization or of citizenship." 22 U.S.C. § 2705. Plaintiffs also argue that they will have to continually renew S.M.-G.'s passport, and pay the renewal fees. *See* Pls.' Ltr., at 4.

---

[1] Although this website references "adoption," the Child Citizenship Act is not limited to adoptive parent-child relationships. Thus, the content in this web site applies to the circumstance here.

But Plaintiffs will face these costs regardless of how the Court resolves the pending motions—and the same is true of any other U.S. citizen.[2]

                                          Respectfully submitted,

                                        /s/ Kuntal Cholera
                                        Kuntal V. Cholera

CC: All Counsel of record via ECF.

---

[2] Defendants' position does not "rely on something Plaintiffs *might* do in the future." Pls.' Ltr, at 2 (emphasis added). Plaintiffs have repeatedly suggested that they were planning to seek a U.S. passport for S.M.-G. and renew it as necessary. Plaintiffs have already sought a U.S. passport, and are seeking a passport here. *See* Pls.' Ltr., at 2. And during the May 26, 2020 hearing, Plaintiffs suggested that they expect SM-G will travel to the United Kingdom to visit Mr. Gregg's parents (S.M.-G.'s grandparents). *See* 5/26/20 Hr'g Tr. at 28:15-24. In any event, Plaintiffs did not raise this point—or really, the entire injury theory they promote here—in their Complaint or their brief in response to Defendants' 12(b)(1) motion.